# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **THE NOCO COMPANY,** | ) | CASE NO. 1:20-cv-02322 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | **EMERGENCY HEARING** |
| **AUKEY TECHNOLOGY CO. LTD., et al.,** | ) | **REQUESTED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF THE NOCO COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a) and 15 U.S.C. § 1116(a), Plaintiff The NOCO Company ("*NOCO*") moves the Court to enter a preliminary injunction against Defendants Aukey Technology Co., Ltd. ("*Aukey*"), Shenzhenshi Jaingyun Shangmaoyouxiangongsi ("*HuiMing*"), and Wodeshijikeji Shenzhen Youxiangongsi ("*WorldUS*") (together, the "*Defendants*") for their unscrupulous acts that have irreparably harmed NOCO.

NOCO has learned that Defendants are coercing employees of Amazon.com, Inc. ("*Amazon*") in China and India to repeatedly remove NOCO products from key portions of the United States e-commerce platform known as the Amazon Marketplace. As a result, Defendants are manipulating Amazon's award of its Best Seller Badge (the "*Badge*"), ensuring that it is placed on their products and removed from NOCO's products. This significantly detracts from NOCO's sales and leads to an unmerited increase in Defendant's sales.

NOCO files this Motion for Preliminary Injunction now because, despite filing suit on October 13, 2020, NOCO products were removed from the Browse Nodes and lost the Badge on "Black Friday" and the Thanksgiving Weekend—the most notorious and voluminous e-commerce sales period of the calendar year. As the Holiday Season continues, the Court should take immediate action to prevent Defendants from further misleading consumers and harming NOCO's sales.

Accordingly, NOCO respectfully requests that the Court enter a preliminary injunction forbidding Defendants from, *inter alia*, selling their products on the Amazon Marketplace and illegally manipulating the Amazon Marketplace. NOCO asks that that preliminary injunctive relief be granted as set forth in the accompanying Memorandum in Support.

In support of this Motion, NOCO has filed with this Court:

(a) The Affidavit of Jonathan Lewis Nook, Chief Visionary Officer, The NOCO Company; and
(b) The accompanying Memorandum in Support of Motion for Preliminary Injunction.

NOCO further requests an emergency hearing and that no bond be required prior to the granting of any injunctive relief.

The undersigned hereby certifies, pursuant to Fed. R. Civ. P. 65(a)(1), that he corresponded with Aukey's General Counsel, Bo Wu, and Aukey's United States Counsel, Pete Curtin to apprise them of the filing of this lawsuit and the fact that NOCO would be seeking a preliminary injunction. In order to prevent further damage, NOCO seeks immediate relief from this Court.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*
JON J. PINNEY (0072761)
JONATHON W. GROZA (0083985)
JUSTINE LARA KONICKI (0086277)
KYLE D. STROUP (0099118)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jwg@kjk.com;
 jlk@kjk.com; kds@kjk.com

*Counsel for Plaintiff The NOCO Company*

## MEMORANDUM IN SUPPORT

**I.     INTRODUCTION**

Instead of fairly competing with NOCO, Defendants are conspiring with each other and coercing Amazon employees in China and India to simply remove NOCO listings from key portions of the Amazon Marketplace and gain an unfair advantage in the jump starter market.

NOCO is the premier seller of jump starters and other portable power devices for vehicles on the Amazon Marketplace. Defendants are Chinese e-commerce businesses that market and sell jump starters on the Amazon Marketplace. (ECF # 1 "***Compl***." at ¶ 8). Aukey holds the registered trademark to "Tacklife" and allows HuiMing and WorldUS (the "***3P Defendants***") to sell Tacklife products on the Amazon Marketplace, through their individual Amazon Marketplace storefronts,[1] for Aukey's profit. *Id.*

Unable to best NOCO through fair competition, Defendants are resorting to repeated efforts to illegally manipulate the Amazon Marketplace. As a result, NOCO is forced to bring this action against Defendants for altering, *inter alia*: (i) which product receives the Badge; (ii) Amazon's algorithms to trigger safety takedowns of NOCO's products, which were premised on untrue and false representations that NOCO's products were unsafe or dangerous; and (iii) Amazon's product review and rating features in order to decrease NOCO's product ranking. (Compl. at ¶ 2). NOCO requests a preliminary injunction to remove Defendants from the Amazon Marketplace and

---

[1] An Amazon Marketplace storefront is a unique webpage within the Amazon Marketplace that exclusively lists the 3P seller's products for sale.

{K0815850.8}

prevent Defendants from further unlawfully manipulating NOCO's products on the Amazon Marketplace.[2]

## II. BACKGROUND FACTS

### A. Amazon's Best Seller Badge and Browse Nodes Feature.

Amazon uses Browse Nodes ("**Browse Nodes**") to categorize items for sale and enable consumers to narrow searches and readily find top-selling products. (Compl. at ¶¶ 41-52). For example, NOCO products are placed into Browse Nodes such as "Jump Starters," "Automotive Performance Batteries & Accessories," and "Automotive Replacement Batteries & Accessories." (*See* Affidavit of Jonathan Lewis Nook, attached as **Exhibit A** at ¶ 10).

Amazon awards a "Badge" to the best-selling product in each Browse Node. *See* Nick Heethuis, *How to Get the Amazon #1 Best Seller Badge*, FORBES (Apr. 23, 2020), https://www.forbes.com/sites/theyec/2020/04/23/how-to-get-the-amazon-1-best-seller-badge/amp/ ("The Amazon #1 Best Seller badge icon means a product has the highest number of sales in that specific category."). If a product receives a Badge, the product experiences a significant increase in sales. *Id.* ("Items that are listed as '#1 Best Seller' are more likely to be viewed by online shoppers, which can translate to huge profits.").

Because NOCO is the premier retailer of jump starters on the Amazon Marketplace and consistently outsells its competitors, NOCO products often receive the Badge for each of their respective Browse Nodes. (Ex. A at ¶ 9).

---

[2] Because of the rampant Amazon Marketplace manipulation, NOCO initiated a related lawsuit in January 2020, styled *The NOCO Company v. Shenzhen Valuelink E-Commerce Co., Ltd., et al.,* U.S. District Court, N.D. Ohio, Case No. 1:20-cv-00049 (the "***Amazon Litigation***"), against Aukey and ten additional named defendants.

{K0815850.8}                                    2

### B. Defendants Continually Remove NOCO Products from the Browse Nodes and Harm NOCO.

Unable to compete fairly with NOCO, Defendants are coercing Amazon employees to systematically cause NOCO products to be removed from Browse Nodes without authorization, making NOCO products ineligible to receive the Badge and clearing the way for Aukey's "Tacklife" products receive the Badge instead. (*Id.* at ¶¶ 11, 16). Only when a NOCO product is returned to the Browse Node is it eligible again to receive the Badge. (*Id.* at ¶ 11). Defendants' removal of NOCO's products results in a significant increase in sales to Defendants and a decrease in sales to NOCO. *See* Heethuis, *supra*.

This brazen misconduct is designed to harm NOCO and deceive consumers, who are falsely led to believe that Defendants' products are best-sellers and legitimate recipients of the Badge. After NOCO products are illegally removed from Browse Nodes, consumers can no longer locate NOCO products and purchase Defendants' products instead, causing NOCO to lose additional sales and suffer decreases in Amazon sales rankings.

### C. NOCO Discovers Browse Node Manipulation and Requests that Amazon Investigate.

In early 2020, after months of declining sales on the Amazon Marketplace, NOCO began to investigate and soon discovered that its products were repeatedly losing the Badge after being removed illegally from Browse Nodes. (*See* Exh. A at ¶¶ 7-8). NOCO brought this to Amazon's attention and requested an investigation. (*Id.* at ¶ 12).

At NOCO's request, Amazon began investigating the removal of NOCO products from the Browse Nodes. (*Id.* at ¶¶ 12-13). Initially, Amazon could not determine what

{K0815850.8} 3

entity was removing the products and could only retroactively return NOCO products into the Browse Nodes after Defendants had already stolen the Badge and decreased NOCO's sales. (*Id.* at ¶ 15).

### D. Amazon Notifies NOCO that Defendants are Manipulating the Amazon Marketplace, Similar to Other Criminal Actors.[3]

Amazon's investigation subsequently revealed that Defendants are unlawfully manipulating NOCO products from the Browse Nodes. (*Id.* at ¶ 13). Amazon informed NOCO that, at the request of the 3P Defendants, Amazon's own internal seller teams were altering the Browse Nodes to remove NOCO products and that Amazon requested its internal seller teams to stop this misconduct. (*Id.* at ¶¶ 13-14). Defendants and Amazon's internal seller teams refused to comply with Amazon's request and Defendants continued to manipulate the Amazon Marketplace. (*Id.* at ¶ 15).

Defendants' misconduct is similar to that outlined in a recently-filed criminal indictment filed by the Department of Justice alleging that four individuals bribed Amazon employees to manipulate the Amazon Marketplace. *See United States v. Ephraim Rosenberg, et al.,* Case No. CR20-151 RAJ, U.S. District Court, W.D. of Washington (the "***Indictment***"). The Indictment alleges that outside actors—such as Defendants—and their agents, bribed Amazon employees to gain an unfair advantage on the Amazon Marketplace by manipulating: (i) competitors' product listings; (ii) Amazon's algorithms; and (iii) Amazon seller accounts. Here, Defendants are also coercing Amazon employees to alter NOCO's product listings to remove NOCO products from Browse Nodes.

---

[3] At the requested hearing, NOCO will demonstrate that Amazon investigated and determined that Defendants are actively and continually manipulating the Browse Nodes in order to harm NOCO.

{K0815850.8} 4

After Amazon notified NOCO that Defendants were responsible for removing NOCO from the Browse Nodes, NOCO asked Amazon to take action to remove Defendants' "Tacklife" products from the Amazon Marketplace. (*Id.* at ¶¶ 18-19). But Amazon declined to take any action, and Defendants continue to manipulate the Amazon Marketplace, with the removal of NOCO products from the Browse Nodes as recently as November and December 2020. (*Id.* at ¶¶ 20-22). Specifically, NOCO products were removed from the Browse Nodes on "Black Friday" and the Thanksgiving Weekend—the most notorious and voluminous e-commerce sales period of the calendar year. (*Id.*). As the Holiday Season continues, the Court should take immediate action to prevent Defendants from further misleading consumers and harming NOCO's sales. As such, Defendants should be prohibited from selling Tacklife products on the Amazon Marketplace and further coercing Amazon employees to manipulate the Amazon Marketplace.

### III. LAW AND ARGUMENT

#### A. The Court is Authorized to Issue a Preliminary Injunction Over Defendants.

As an initial matter, the Court has authority to grant NOCO's requested injunctive relief. NOCO is in the process of effecting service of Defendants pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "**Hague Convention**"), but the Hague Convention specifically allows for interim relief in urgent cases while service is pending under the Hague Convention. *See* Hague Convention, Art. 15 ("Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures."). Where service has yet to be perfected, a foreign defendant may

be enjoined if the moving party has exercised good faith in seeking a preliminary injunction hearing and the danger of irreparable injury exists. *See Midmark Corp. v. Janak Healthcare Private Ltd.,* No. 3:14-cv-088, 2014 U.S. Dist. LEXIS 52652, at *3-5 (S.D. Ohio Apr. 16, 2014) (entering a preliminary injunction pending service of process under the Hague Convention where the defendants had actual notice of the action and received all of the filings); *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.,* Case No. 2:11-cv-00742, 2011 U.S. Dist. LEXIS 105725, at *2-4 (E.D. Wis. Sept. 19, 2011) (extending a temporary restraining order until plaintiffs effected service under the Hague Convention where plaintiffs advised defendant's New York counsel of the proceeding and defendant indicated he did not wish to participate in the temporary restraining order proceedings).

Here, NOCO is in the process of effecting service pursuant to the Hague Convention and has notified Defendants of the lawsuit. After filing the Complaint, NOCO emailed Aukey's General Counsel, Bo Wu, who previously corresponded with NOCO in the Amazon Litigation. Aukey's United States counsel, Pete Curtin, then reached out to NOCO counsel and requested service pursuant to the Hague Convention. Mr. Curtin also offered to verify the address of HuiMing and WorldUS for Hague Convention service. After NOCO counsel requested verification, Mr. Curtin informed counsel for NOCO that the best address for the HuiMing and WorldUS is the same address as Aukey's. NOCO then engaged a third-party legal services business to aid in the translation of the Complaint into Mandarin and service pursuant to the Hague Convention.

In addition, as more fully set forth herein, NOCO has demonstrated that urgent relief is required. On at least two occasions, Amazon requested its employees stop removing NOCO products from the Browse Nodes at Defendants' requests. Defendants and Amazon's employees ignored Amazon's requests and refused to comply. As recently as the Thanksgiving Holiday weekend, including "Black Friday," Defendants coerced Amazon employees to remove NOCO from the Browse Nodes, significantly impacting NOCO's sales. (*See* Exh. A at ¶¶ 21-22). Defendants have engaged in an ongoing pattern of manipulating the Amazon Marketplace. As a result, NOCO has been harmed significantly and will continue to lose sales absent injunctive relief.

### B. Legal Standard for a Fed. R. Civ. P. 65 Request for Preliminary Injunction.

Fed. R. Civ.P. 65 provides for the issuance of injunctions. In deciding whether to grant injunctive relief under Fed. R. Civ. P. 65, courts examine the following factors:

1. Whether there is a substantial likelihood that the plaintiff will prevail on the merits;

2. Whether the plaintiff will suffer irreparable injury if the injunction is not granted;

3. Whether third parties will be unjustifiably harmed if the injunction is granted; and

4. Whether the public interest will be served by the injunction.

*City of Pontiac Retired Emples. Assn. v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). However, no one factor is dispositive. *See In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). The four factors must be balanced with the "flexibility which traditionally has characterized the law of equity." *Friendship Materials Inc., v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). Here, however, all four factors support granting the preliminary injunction.

### C. There is a High Likelihood of Success on the Merits of NOCO's Claims.

NOCO is highly likely to succeed on the merits here. At this stage, while NOCO need not prove its case in full, it must show "more than a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Sys.,* 119 F.3d 393, 402 (6th Cir.1997). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)). Here, NOCO has a strong likelihood of success on the merits of each of its claims for: (1) violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (ii) violations of Ohio's Deceptive Trade Practices Act, codified at O.R.C. § 4165.02; (iii) tortious interference with business relationships; and (iv) common law civil conspiracy.

#### 1. Defendants Violated the Lanham Act and the Ohio Deceptive Trade Practices Act

NOCO is very likely to succeed on its claims for violations of the Lanham Act and Ohio Deceptive Trade Practices Act. An Ohio Deceptive Trade Practices Act claim for false advertising is substantially similar to a Lanham Act claim. *Her, Inc. v. RE/MAX First Choice*, Case No. 2:06-cv-492, 2008 U.S. Dist. LEXIS 40164, at *24-25 (S.D. Ohio May 2, 2008). Defendants have manipulated the Amazon Marketplace by making false and misleading statements about NOCO products that deceive consumers as they make their purchasing decisions, which results in lost sales to NOCO.

To prevail on a false advertising claim, a plaintiff must establish that: "(1) the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely

{K0815850.8} 8

influence a deceived consumers' purchasing decisions; (4) the advertisements were introduced into interstate commerce; (5) there is some causal link between the challenged statements and harm to the plaintiff." *Vita-Mix Corp. v. Tristar Prods.,* Case No. 1:07-cv-275, 2008 U.S. Dist. LEXIS 143319, at *7 (N.D. Ohio Sept. 30, 2008) (citing *Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 689 (6th Cir. 2007)). Further, "[w]here statements are literally false, a violation may be established without evidence that the statements actually misled consumers. Actual deception is presumed." *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 698-99 (6th Cir. 2003). "Under the lower injunctive relief standard, although a plaintiff 'need not present consumer surveys or testimony demonstrating actual deception, it must present evidence of some sort demonstrating that consumers were misled.'" *Vita-Mix Corp.,* 2008 U.S. Dist. LEXIS 143319, at *8 (quoting *American Council of Cert. Podiatric Phys. & Surgeons v. American Bd. of Podiatric Surgery, Inc.,* 185 F.3d 606, 614 (6th Cir. 1999)).

Here, Defendants make blatantly false claims about NOCO products by illegally removing NOCO products from the Browse Nodes without authorization. Defendants falsely represent to consumers that NOCO products are not of the type specified. For example, NOCO properly lists its signature GB40 jump starter in the "Jump Starters," "Automotive Performance Batteries & Accessories," and "Automotive Replacement Batteries & Accessories" Browse Nodes. (Exh. A at ¶ 10). Amazon permits NOCO to list its jump starters in those Browse Nodes. (*Id.*). When NOCO products are removed from those Browse Nodes, however, consumers are misled into believing that NOCO jump starters are not actually within those Browse Nodes.

Moreover, because Defendants' products receive the Badge when NOCO products are removed from the Browse Nodes, Defendants cause a false statement to be made to the consumer. Tacklife products do not fairly earn the Badge the way that NOCO's products do, *i.e.* from high sales volume. Defendants cannot fairly compete on the Amazon Marketplace with NOCO and must resort to conspiring to illegally remove NOCO's products. These false statements impact consumers' purchasing decisions. Consumers purchase products on the Amazon Marketplace based, in part, on the Badge. *See* Nick Heethuis, *supra.* Defendants experience an increase in sales when they have the Badge. Likewise, when NOCO does not have the Badge, NOCO loses sales. (*See* Exh. A at ¶ 26).

Finally, Defendants misrepresentations are occurring in interstate commerce, given that the Amazon Marketplace exists on the internet. *See Grubbs v. Sheakley Group, Inc.,* 807 F.3d 785, 803 (6th Cir. 2015) (finding that emails sent satisfy the interstate commerce requirement for false advertising claims). Accordingly, NOCO will likely succeed on the merits of its Lanham Act and Ohio Deceptive Trade Practices Act claims.

### 2. Defendants have Improperly Interfered with NOCO's Business Relationships.

NOCO also has a strong likelihood of success on the merits of its claim for tortious interference with business relationships. In Ohio, to succeed on a tortious interference with business relationships claim, a plaintiff must show: (i) the existence of a business relationship; (ii) the defendant's knowledge of the relationship; (iii) the defendant causes, without privilege, a third-party to not enter into or continue business with another; and (iv) damages. *See Havensure, L.L.C. v. Prudential Ins. Co. of Am.*,

595 F.3d 312, 315 (6th Cir. 2010); *A & B-Abell Elecator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14 (1995); *Red Roof Franchising, LLC v. Riverside Macon Grp., LLC,* Case No. 2:18-cv-16, 2020 U.S. Dist. LEXIS 84997, at *20 (S.D. Ohio May 14, 2020).

Here, NOCO has a business relationship with Amazon and its consumers. NOCO and Amazon are subject to certain policies and agreements. NOCO also enters into business relationships with consumers when it sells NOCO products. Defendants know of NOCO's business relationship with Amazon because they are in a similar relationship with Amazon and subject to similar agreements and policies. Likewise, Defendants are also in a similar relationship with consumers as Defendants sell products to consumers.

Defendants mislead consumers and interfere with NOCO's business relationships by causing consumers not to purchase NOCO products. Defendants' actions also harm NOCO's relationship with Amazon, as its algorithms consider sales volume and other performance metrics, such as who receives the Badge and other Amazon accolades. *See* Nick Heethuis, *supra.*

In addition, Defendants' interference is not privileged conduct. A court considers seven factors when determining if a defendant's conduct is privileged: (i) the nature of the actor's conduct; (ii) the actor's motive; (iii) the interests of the other with which the actor's conduct interferes; (iv) the interests sought to be advanced by the actor; (v) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (vi) the proximity or remoteness of the actor's conduct to the interference; and (vii) the relations between the parties. *See Havensure, LLC,* 595 F.3d

at 315-16 (citing *Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St. 3d 171 (1999); Restatement (Second) of Torts § 767).

Here, Defendants conduct is clearly not privileged. NOCO and Defendants compete on the Amazon Marketplace for jump starter sales, and Defendants are blatantly violating prohibitions on false advertising in order to gain an edge on the Amazon Marketplace and intentionally misleading consumers so as to increase their sales and decrease NOCO's. There is a substantial likelihood that NOCO will succeed on the merits of its tortious interference claim.

### 3. Defendants have Conspired to Harm NOCO.

NOCO also has a substantial likelihood of succeeding on its claim for civil conspiracy. To succeed on a claim for civil conspiracy under Ohio law, the plaintiff must show: "(i) a malicious combination; (ii) of two or more persons; (iii) resulting injury to person or property; and (iv) the existence of an unlawful act independent from the actual conspiracy." *Rosy Blue, NV v. Lane*, 767 F. Supp. 2d 860, 868 (S.D. Ohio 2011) (citing *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. 2000)).

Here, HuiMing and WorldUS are 3P Sellers of Aukey's products on the Amazon Marketplace. Defendants are associated entities, sharing the same address for purposes of Hague Convention service. Defendants' malicious acts, namely the removal of NOCO products from Browse Nodes, which are separate from their association, cause NOCO to lose sales on the Amazon Marketplace. Accordingly, NOCO will likely succeed on its claim for civil conspiracy.

### B. NOCO has Suffered and Will Continue to Suffer Immediate and Irreparable Injury in the Absence of a Preliminary Injunction.

As a result of Defendants' Amazon Marketplace manipulation, NOCO has suffered immediate and irreparable injury, and NOCO will continue to suffer such injury unless the Court grants preliminary injunctive relief.

Irreparable harm must be both certain and immediate. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). But once the falsity of a defendant's statements is established, irreparable harm should be presumed. *See Telxon Corp. v. Symbol Techs., Inc.,* 961 F. Supp. 1113, 1123 (N.D. Ohio 1996) (citing *McNeilab, Inc. v. American Home Prods. Corp.,* 848 F.2d 34, 38 (2d Cir. 1988); *Honeywell, Inc. v. Control Solutions, Inc.,* Case No. 3:94-cv-7358, 1994 U.S. Dist. LEXIS 20461, at *11 (N.D. Ohio Sept. 7, 1994). Courts in the Sixth Circuit consider a business's reputation when evaluating irreparable harm. *See Wynn Oil Co. v. American Way Service Corp. II,* 943 F.2d 595, 607-08 (6th Cir. 1991).

Here, NOCO will continue to suffer irreparable injury to its sales and reputation without an injunction. Defendants continue to conspire to illegally remove NOCO's products from the Browse Nodes and have done so as recently as the Thanksgiving holiday weekend. Defendants' statements are also demonstrably false, as Tacklife-branded products are not fairly awarded the Badge, and NOCO's products are rightfully within the Browse Nodes. Further, NOCO's reputation as a top seller of jump starters on the Amazon Marketplace is harmed when it does not receive the Badge when NOCO products should rightfully receive the Badge. Indeed, NOCO products typically receive the Badge for each Browse Node because they are among the best-selling jump starters on the Amazon Marketplace. (*See* Exh. A at ¶ 9). But the illegal

removal of NOCO products from the Browse Nodes alters consumers' perception of NOCO products. If a preliminary injunction is not granted, NOCO will be irreparably harmed.

### C. Granting a Temporary Restraining Order and Preliminary Injunction Will Not Unjustifiably Harm Third Parties.

NOCO also satisfies the third factor necessary to show entitlement to a preliminary injunction, as no third party will be unjustifiably harmed by the requested relief. Under this third factor, courts must consider whether relief would cause unjustifiable harm to others, and if so, whether that harm outweighs the harm to the movant. *See Prosonic Corp. v. Stafford*, 539 F.Supp.2d 999, 1008 (S.D. Ohio 2008). Here, no third party is at risk of being harmed by NOCO's preliminary injunction. NOCO's request is made in an attempt to mitigate the irreparable harm caused by Defendants' Amazon Marketplace misconduct. Forbidding Defendants from engaging in this misconduct prevents harm to other Amazon Marketplace sellers, to Amazon, and to consumers. A preliminary injunction will not impact any third party and is designed to allow NOCO to sell on the Amazon Marketplace without interference from Defendants.

### D. The Public Interest Will Be Served by the Preliminary Injunction.

Finally, issuance of NOCO's requested preliminary injunction is in the public's interest. "There is a clear public interest in forestalling consumer deception and confusion." *Northeast Cable TV, LLC v. DIRECTV, LLC,* Case No. 4:18-cv-2559, 2019 U.S. Dist. LEXIS 67896, at *43 (N.D. Ohio Apr. 22, 2019); *see also Telxon Corp.,* 961 F. Supp. at 1123 ("It is clear to this Court that the public should be protected from false and misleading statements. Requiring [defendant] to stop making such statements will do no harm to [defendant]. On the other hand, the public will benefit.").

Here, by entering an injunction, this Court has an opportunity to discourage unfair and unethical trade practices, such as false advertising. Defendants are manipulating the Amazon Marketplace with the specific goal of misleading consumers into purchasing their products and not NOCO's products. In order to protect the public from Defendants, the Court should grant NOCO's request for injunctive relief.

## III.  CONCLUSION

As set forth above, NOCO requests that the Court issue an order granting NOCO preliminary injunctive relief ordering Defendants' to stop their sales of Tacklife products on the Amazon Marketplace and illegal conspiracy to manipulate the Amazon Marketplace. NOCO has met each of the factors necessary for establishing its right to injunctive relief under Fed. R. Civ. P. 65 and 15 U.S.C. § 1116(a).

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*
JON J. PINNEY (0072761)
JONATHON W. GROZA (0083985)
JUSTINE LARA KONICKI (0086277)
KYLE D. STROUP (0099118)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jwg@kjk.com;
    jlk@kjk.com; kds@kjk.com

*Counsel for Plaintiff The NOCO Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed electronically via the Court's electronic docketing system on December 4, 2020. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Jon J. Pinney*
Jon J Pinney

*Counsel for Plaintiff The NOCO Company*
