## IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| THE NOCO COMPANY, | ) | CASE NO.  1:20-CV-02322-SO |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | |
| | ) | |
| AUKEY TECHNOLOGY CO., LTD., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' BRIEF IN OPPOSITION TO
## NOCO'S MOTION FOR PRELIMINARY INJUNCTION

NOCO has presented no admissible evidence of misconduct by Defendants ("Aukey") to support its Motion for Preliminary Injunction, and its actions belie any claim of irreparable harm. More than seven weeks after filing the Complaint, and months after NOCO claims the problems began, NOCO seeks this extraordinary remedy based solely on a hearsay affidavit from an interested witness. (*See* ECF 5, *passim*.) NOCO's evidence of misconduct consists of its "Chief Visionary Officer" and co-owner, Jonathan Nook, recounting an implausible tale of conspiracy and intrigue based on alleged communications with unnamed third parties in "Amazon." (*See* ECF 5-1, *passim*.) Even on matters wholly within its knowledge, NOCO presents little probative evidence — few details of the alleged misconduct or injury — and no evidence of ***irreparable*** harm. (*See id.*) NOCO provides little substance for Aukey to oppose or the Court to evaluate.

For example, the Nook Affidavit provides no names; no specific dates; no list of the NOCO products Amazon moved from one Browse Node to another and when, or which Browse Nodes were involved; no explanation of how NOCO believes those transfers violated Amazon policies; and no description or calculation of harm to NOCO beyond unspecified lost sales (even though

NOCO's products remained listed on and available through the Amazon Marketplace). The basic outline of NOCO's hearsay tale is also inherently difficult to credit, beginning with the twin premises that: (a) Aukey could somehow "coerce" Amazon (one of the world's largest and most powerful companies) or Amazon employees in multiple countries to violate Amazon policy, and (b) Amazon investigated and found misconduct but cannot or will not control its employees or act against Aukey. NOCO has not shown it merits any relief.

The equities also strongly favor Aukey, both due to the weakness of NOCO's presentation and because the requested relief is truly remarkable, overreaching, and unconnected to the alleged injury. NOCO does not just seek to enjoin misconduct. NOCO has asked this Court to bar Aukey from selling any TACKLIFE® products through the Amazon Marketplace. (ECF 5, 2.) But, as NOCO well knows, Aukey sells hundreds of TACKLIFE-branded products through Amazon — the vast majority unrelated to this case and not competing with any NOCO product. (Ex. 1, ¶¶17-18.) NOCO never explains how a sweeping prohibition against lawful commercial activity would redress NOCO's claimed injury, because it would not. Finally, NOCO claims that it need post no bond as surety for an injunction sweeping hundreds of products from the Amazon Marketplace and costing Aukey over one hundred million dollars in yearly sales.[1]

NOCO's motion is unfounded and unsupported; the Court should promptly reject it.

## I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND.

### A.  Procedural History

1.  NOCO filed the Complaint on October 13, 2020. (ECF 1.)

2.  On November 2, 2020, NOCO moved to reassign the case. (ECF 4.)

---

[1] If the Court is inclined to grant any injunctive relief, Defendants request an opportunity to be heard on the appropriate bond. *See* Fed. R. Civ. P. 65(c).

3.      On December 4, 2020, NOCO filed its Motion for Preliminary Injunction. (ECF 5.)

4.      On December 8, 2020, the Court granted NOCO's Motion to Reassign. (ECF 9.)

5.      On December 8, 2020, NOCO filed a Motion for Expedited Discovery. (ECF 10.)

**B.  NOCO's Alleged Timeline**

6.      In early 2020 NOCO noticed declining sales and discovered certain NOCO products were no longer Amazon "Best-Sellers." (ECF 5-1, ¶¶ 7-9). NOCO also realized that some products were not always listed in the Amazon Browse Nodes it had chosen. (ECF 5-1, ¶¶ 10-12.)

7.      NOCO was allegedly informed by "Amazon" that Amazon personnel had moved certain NOCO products from certain Amazon Browse Nodes. (ECF 5-1, ¶ 13.)

8.      Before October 2020, NOCO was allegedly informed by "Amazon" that Amazon personnel had made those changes at Aukey's requests. (ECF 5-1, ¶¶ 17, 21.)

9.      Before October 2020, NOCO requested that Amazon remove all TACKLIFE products from the Amazon Marketplace. (ECF 5-1, ¶¶ 18-19, 21.)

10.     Amazon allegedly told NOCO that its Abuse Team would review the situation and determine whether any corrective action was appropriate. NOCO believes Amazon has not acted against Aukey. (ECF 5-1, ¶ 20.)

11.     Amazon allegedly removed certain NOCO products from Amazon Browse Nodes NOCO had chosen in October, late November, and early December 2020. (ECF 5-1, ¶¶ 21-23.)

12.     Amazon has allegedly removed NOCO products from the Amazon Browse Nodes NOCO had chosen on ten occasions between May 2020 and December 2020. (ECF 5-1, ¶ 24.)

3

### C.  The Aukey Technology Company, Ltd.

13.     The Aukey Technology Company was founded over a decade ago, and has built a thriving, profitable business, a valuable international brand, and a reputation for reliable consumer electronics and mobile tech accessories. *See* https://www.aukey.com/about-us.

14.     Aukey has expanded its business far beyond its original roots. Aukey operates internationally through a network of distribution partners in more than fifty countries. (*Id.*) Aukey sells a wide array of portable power products, chargers, audio, and cable products through its online store at https://www.aukey.com, and sells through e-commerce platforms around the world including many Amazon national websites.

15.     Unlike NOCO, which focuses on jump-starters and battery chargers, Aukey sells a much broader range of products, including through Amazon, many under its registered trademark TACKLIFE® and the associated brand. (*See* Ex. 1, ¶¶ 17-18.)

16.     Aukey is a privately held company, and its finances and sales figures are confidential. But Amazon is a major sales channel for Aukey. (*See id.*, ¶¶ 17-19.)

### D.  Aukey's TACKLIFE Brand

17.     The TACKLIFE mark has been listed on the Principal Registry of the U.S. Patent and Trademark Office for years (original Reg. No.  4913016). The PTO's TESS database shows multiple registrations for TACKLIFE covering a wide range of products. (Ex. 2, ¶ 4 & Ex. A.)

18.     Searching the Amazon US website for "TACKLIFE" produces pages of search results, including a wide variety of hand tools and power tools, ladders, jump-starters, chargers, refrigerators, snow blowers, hose reels, and a fire pit. (*Id.*, ¶ 5 & Ex. B.) The vast majority of TACKLIFE products do not compete with NOCO products. (Ex. 1, ¶ 17.)

4

### E. **Relevant Amazon Policies and the Amazon-Aukey Relationship**

19.     Amazon has established and enforces policies regulating its Sellers' conduct, including policies about the products and their listings (including proper Browse Node selection), intellectual property protection, and others. (*See* Ex. 1, ¶¶ 10-16.)

20.     Aukey has never "coerced" Amazon or Amazon employees. (*Id.*, ¶¶ 5-6.)

21.     Aukey has never conspired with Amazon or its employees. (*Id.*, ¶ 7.)

22.     Aukey communicates with Amazon employees through ordinary commercial channels established by Amazon as part of the business relationship. (*Id.*, ¶¶ 5, 7.)

23.     Aukey has heard nothing about this alleged Amazon investigation. (*Id.*, ¶ 21.)

## II.     THE COURT SHOULD NOT ALTER THE STATUS QUO BEFORE SERVICE OF PROCESS, AND NOCO'S UNSUPPORTED FILING JUSTIFIES NO RELIEF, MUCH LESS THE EXTRAORDINARY RELIEF NOCO SEEKS.

NOCO has a litigious nature and the track record to prove it. NOCO has filed more than three hundred lawsuits in this district alone over the past four years. (*See* Ex. 2, ¶ 6 & Ex. C.) Keeping multiple law firms well-employed, NOCO seems to use the courtroom as a weapon against any who draw its ire. This year — after noticing its sales decline — NOCO lashed out with another veritable tsunami of litigation alleging patent infringement or unfair competition by dozens of competitors, foreign and domestic. Most cases were filed in this district, including one patent infringement suit and three separate Lanham Act unfair competition cases against Aukey.

As NOCO's motion notes, one of those cases is before this Court as *The NOCO Company v. Shenzhen Valuelink E-Commerce Co. Ltd., et al.,* No. 1:20-cv-00049-SO, in which NOCO alleges a vast conspiracy against it by eleven named competitors and scores of unnamed John Does in a sprawling Complaint. But this time, NOCO has gone too far, and well beyond the limits of fair advocacy, by filing this motion based on an incredible hearsay tale, supported by no admissible

evidence of misconduct, relying on a strained legal theory, and seeking an order banning the sale of hundreds of products through a critical sales channel for years to come. NOCO's timing and conduct belie its claims of irreparable harm, and the requested relief reveals NOCO's motivation.

### A. The Court's Authority to Issue a Preliminary Injunction at this Stage is Questionable, and NOCO's Flimsy Evidence Provides No Basis for Relief.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Brothers, Inc. v. Michetti Pipe Stringing,* 526 U.S. 344, 347, 119 S. Ct. 1322, 1325 (1999). Under this "bedrock principle" of our law, "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Id.,* 119 S. Ct. at 1327 (citations omitted). Courts do not have personal jurisdiction over a defendant absent service of process. Notice alone does not suffice. *See Omni Capital Intl., Ltd v. Rudolph Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S. Ct. 404, 409 (1987).

Court have consistently held that preliminary injunctions should not issue before service of process. *See, e.g., Cross v. Mnuchin,* No. 1:19-cv-02664-JDB-jay, 2019 WL 7756070, *1 (W.D. Tenn. Oct. 13, 2019) (deferring hearing and ruling until after service of process); *Easterling v. Rice*, No. 2:19-cv-469-JMH, 2019 WL 1338712, *1 (S.D. Ohio Mar. 25, 2019) ("Because none of the defendants had been properly served with process, the Court lacks personal jurisdiction over them and cannot grant the injunctive relief..."); *Doe v. Tenn.,* No. 3:18-cv-0471, 2018 WL 5313087, *4 (M.D. Tenn. Oct. 26, 2018) ("[S]ince service of process has not been accomplished, a preliminary injunction cannot be issued."); *Koetje v. Norton,* No. 13–cv–12739, 2013 WL 8475802, *2 (E.D. Mich. Oct. 23, 2013) (stating that even if Defendants had notice, an injunction could not issue before service of process).

Aukey did not waive service of process, and NOCO claims to have begun the procedures for service under the Hague Convention.[2] (*See* ECF 5, 6.) NOCO argues that the Hague Convention permits the Court to issue a preliminary injunction before service of process. (ECF 5, 5-6.) But NOCO cites limited precedent, inapposite to these facts. The court in *Midmark* granted a preliminary injunction pending completion of Hague Convention service "***to preserve the status quo ante*** while the Court addresses Plaintiff's petition to compel arbitration." *Midmark Corp. v. Janak Healthcare Private Ltd.,* No. 3:14–cv–088, 2014 WL 1513009 at *1 (S.D. Ohio April 16, 2014) (emphasis added). *Midmark* noted that "[o]ther courts have recognized the power ***to order maintenance of the status quo*** pending service of process under the Hague Convention." *Id.* at *2 (emphasis added) (citing *H–D Michigan, LLC v. Hellenic Duty Free Shops S.A.,* 2011 WL 4368418, *1 (E.D. Wis. 2011)). But NOCO does not seek to preserve the status quo. Instead, it seeks to upend the status quo in a remarkable and possibly unprecedented manner.

It is also telling that the sole authority cited in *Midmark* (and the only other case NOCO cites) extended a Temporary Restraining Order. The standards for issuing a TRO and a preliminary injunction are similar, but their duration is a critical difference. *See* Fed. R. Civ. P. 65. The Hague Convention (Article 15) reference to a court's power to order "in case of urgency, any provisional or protective measures" before service may be better understood as referring to the availability of a limited-duration TRO rather than an injunction intended to last throughout the litigation.

---

[2] NOCO's e-mails to undersigned counsel and Aukey's General Counsel in China were not proper service upon Aukey. As to Mr. Wu, "service by email directly upon defendants located in China 'bypass[es] the means of service set forth in the Convention' and is therefore inconsistent with Rule 4." *Magma Holding, Inc., v. Ka Tat "Karter" Au Yeung*, Case No. 2:20-cv-00406, 2020 WL 5877821, *4 (D. Nev. Oct. 2, 2020) (quoting *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co., Ltd.*, --- F.Supp.3d ---, 2020 WL 5036085, *5 (N.D. Cal. Aug. 19, 2020)). And when counsel spoke hours before the filing, we had no authority to represent Aukey beyond providing proper addresses for Hague Convention service. Neither those emails nor the limited-purpose appearance to oppose this motion eliminate the need for lawful service of process.

NOCO's purpose may have been to circumvent the Hague Convention and force Aukey to oppose a filing seeking such extreme relief. The Court should not reward such gamesmanship. But regardless of NOCO's motives, the Court's personal jurisdiction over Aukey and authority to issue a preliminary injunction at this stage are at least questionable. And, as described below, NOCO has not met the standards required to obtain any preliminary injunction against Aukey, much less to bar sales of hundreds of Aukey products through Amazon.

**B. NOCO Has Shown No Likelihood of Success on the Merits and No Evidence of Irreparable Harm, and the Other Factors Also Weigh Against its Injunction.**

A preliminary injunction "is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 376 (2008) (citation omitted). A court should grant this "extraordinary and drastic" remedy only if "the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S. Ct. 1865, 1867 (1997) (emphasis original) (noting the "requirement for substantial proof" is "much higher" for plaintiffs seeking a preliminary injunction than defendants seeking summary judgment). *See Overstreet v. Lexington–Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir.2002) (circumstances must "clearly demand" an injunction). NOCO makes no such showing.

In *Winter,* the Supreme Court reiterated the familiar four-factor test this court must apply to evaluate the merits of NOCO's motion:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. at 374. The Sixth Circuit has articulated this standard in various ways. Some cases repeat the *Winter* formulation verbatim. *See, e.g., Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020); *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 923

8

(6th Cir. 2020). Other panels have used a slightly different formulation, framing the third factor as "whether issuance of a preliminary injunction would cause substantial harm to others." *See, e.g., Memphis A. Philip Randolph Inst. v. Hargett,* 978 F.3d 378, 385 (6th Cir. 2020); *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). But none of these cases purport to depart from the controlling Supreme Court precedent.

NOCO's motion incorrectly describes the third factor as "[w]hether ***third parties*** will be ***unjustifiably*** harmed if the injunction is granted" (emphasis added). (ECF 5 at 7.) But those words "third parties" and "unjustifiably" do not appear in that factor, not even in the case NOCO cites. *See Schimmel*, 751 F.3d at 430. In the second line of Sixth Circuit cases, the word "others" refers to all those "other" than the movant. So, to properly "balance the hardships" the court must consider the potential harm to Aukey from the requested injunction. *See, e.g., Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) (discussing merger of "the harm to the opposing party and the public interest factors"); *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp. (SMART)*, 698 F.3d 885, 896 (6th Cir. 2012) (discussing harm to the opposing party).

## 1. *NOCO Has Shown No Likelihood of Success on the Merits Because It Presents No Admissible Evidence of Misconduct – Just Bare, Unsourced Assertions.*

NOCO argues that its motion shows a strong likelihood of success on the merits, but this is wrong as a matter of fact and law. (*See* ECF 5 at 9-12.) First, NOCO presents no admissible evidence of misconduct by Aukey, just hearsay allegations from Mr. Nook spun into baseless accusations and bare legal conclusions. Second, while any facts underlying NOCO's claims remain unclear, NOCO appears to seek to criminalize[3] routine private commercial speech.

---

[3] This is no exaggeration. NOCO characterizes Aukey as a "Criminal Actor" when analogizing its claims to an unrelated bribery case in the news. (ECF 5, 4.) NOCO has no rational basis for such libel.

NOCO repeatedly accuses Aukey of "coercing" Amazon employees, but that accusation is not credible. The power disparity between Amazon and any Seller is too vast to contemplate such coercion. Put simply, Aukey needs Amazon immeasurably more than Amazon needs Aukey. This power disparity also renders incredible NOCO's claim that Amazon found misconduct but chose not to sanction Aukey (or rogue Amazon employees). Even the Nook Affidavit does not claim coercion. Mr. Nook claims he was told Aukey "request[ed]" Amazon's actions. (ECF 5-1, ¶17.)

NOCO's motion also ignores four inescapable facts: (a) Amazon and its employees control the Amazon Marketplace; (b) Amazon has established policies governing how Sellers may list products; (c) Amazon polices its Marketplace to enforce those policies and has established channels for Sellers and customers to communicate about listings; and (d) if anyone removed or transferred NOCO product listings, it was Amazon. In sum, NOCO seeks to attribute Amazon's alleged actions to Aukey (without support), to claim Amazon's actions were wrongful (without explanation) and harmed NOCO (with no details), and to then impose liability on Aukey.

Beyond the lack of evidence, NOCO's theory of liability is weak. Even assuming the truth of some basic outline of facts underlying NOCO's claims (stripped of venom and hyperbole), NOCO seeks to impose liability under the Lanham Act and a similar Ohio law based on ten separate "requests" NOCO claims Aukey personnel made privately to Amazon employees over the eight months from May to December 2020. (ECF 5-1, ¶¶ 17, 24.) NOCO has not shown it will likely succeed in proving liability under that theory.

To prove Lanham Act false advertising (and the Ohio state law claim) NOCO must prove:

1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the

10

advertisements were introduced into interstate commerce; 5) there is some causal
link between the challenged statements and harm to the plaintiff.

*Grubbs v. Sheakley Grp., Inc.,* 807 F.3d 785, 798 (6th Cir. 2015). NOCO has presented little or no

evidence as to multiple elements — including the substance of Aukey's alleged statements to

Amazon, their alleged falsity, deceptiveness, or harm. But NOCO's own allegations show that any

statements about NOCO products were made privately to Amazon employees; they were not made

to consumers or "introduced into interstate commerce." Such isolated private statements cannot

form the basis for a Lanham Act false advertising claim.

"[S]tatements need not have appeared in a format resembling traditional advertising" to

create liability. *Id.* But the alleged false statements must still be "commercial advertising or

promotion" under the Lanham Act.  *See* 15 U.S.C. §1125(a)(1)(B). To constitute "commercial

advertising or promotion," the statements must be "(1) commercial speech; (2) for the purpose of

influencing customers to buy the defendant's goods or services; (3) that is disseminated either

widely enough to the relevant purchasing public to constitute advertising or promotion within that

industry or to a substantial portion of the plaintiff's or defendant's existing customer or client

base." *Grubbs*, 807 F.3d at 801. The dissemination requirement exists to avoid the danger of

"rendering too much commercial speech actionable as false advertising." *Id.* A few alleged

complaints to Amazon employees, scattered over months, do not meet the requirements for

commercial advertising or promotion; NOCO has made no "clear showing" otherwise.

NOCO itself has argued, even after filing this motion, that complaints to Amazon are "a

matter of Amazon's business relationships with the companies that sell on the platform" and

should not be actionable. After suing Aukey for alleged patent infringement, *see The NOCO*

*Company v. The Aukey Technology Co., Ltd.*, No. 1:20-cv-00174 (N.D. Ohio), NOCO has

repeatedly complained to Amazon in various countries that TACKLIFE jump-starters infringe its patent(s). In response to charges that NOCO's actions were inappropriate because the infringement dispute was pending in this court and the U.S. Patent Office recently instituted an *Inter Partes* Review of NOCO's patent, NOCO asserted its right to continue to complain:

1. Amazon's IP complaint process and its Utility Patent Neutral Evaluation ("UPNE") are two different things: The former is a procedure in which Amazon permits a seller to file a complaint with Amazon alleging that competing products sold on Amazon infringe its IP rights. … ***NOCO will not commit to cease filing complaints against those jump starters under the Amazon seller IP complaint process.*** If sellers of Carku-manufactured starters feel they need to seek injunctive relief or other relief, that's their choice but it's hard to imagine they could prevail as ***the Amazon IP complaint process is a matter of Amazon's business relationships with the companies that sell on the platform***.

(Ex. 2, ¶ 7 & Ex. D - Email from M. Garvin to P. Curtin, dated 12/05/2020 (emphasis added).)

NOCO may argue for liability based on the award of Amazon "Best Seller" badges, but that cannot save its motion. Those "Best Seller" badges are an alleged downstream consequence of alleged statement(s) made by Aukey, heard and accepted by Amazon, which Amazon allegedly wrongfully acted upon, taking unspecified actions as to unspecified NOCO products for unknown reasons, which allegedly influenced consumer choices, which allegedly lead to a decline in NOCO sales and an increase in Aukey sales, which allegedly lead to the award of the Badge to unnamed TACKLIFE products rather than to unnamed NOCO products (and not third party products), which further harmed NOCO. NOCO has presented little (if any) evidence supporting any step in this attenuated theory and has shown no likelihood of proving it.

### 2. *NOCO Has Shown Little Evidence of Harm and No Evidence of Irreparable Harm.*

NOCO's motion and the Nook Affidavit proffer no evidence NOCO has suffered or will continue to suffer irreparable injury absent an injunction. The Nook Affidavit claims NOCO has lost unspecified sales and revenue (ECF 5-1, ¶¶25-26), and NOCO's motion also mentions lost

sales. But harm quantifiable in dollar terms is not "irreparable" harm. *See Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.,* 716 F.3d 952, 955, 957 (6th Cir. 2013).

NOCO's conduct also weigh against a finding of irreparable harm.  NOCO did not seek an injunction when it filed the Complaint in mid-October, even though, according to Mr. Nook, the problems had been ongoing for months and Amazon had already told NOCO that it would not or could not stop them. (*See* ECF 5-1, ¶¶18-20.) Instead, after filing the Complaint, NOCO filed a Motion to Reassign. (ECF 4.) NOCO then waited seven more weeks to seek "emergency" relief (ECF 5), and four days later filed a motion seeking unspecified discovery (ECF 9) which would cause further delay. A plaintiff's delay may show that the absence of an injunction would not cause irreparable harm.  *See NAACO Indus., Inc v. Applica, Inc.,* No. 1:06-CV-3002, 2006 WL 3762090 (N.D. Ohio Dec. 20, 2006) (delay of over a month was "convincing evidence" of no irreparable injury). NOCO's delays here similarly undercut its claims.

NOCO relies primarily on the presumption of irreparable harm arising from proof of false advertising. (ECF 5, 13-14.) But that presumption is not available to NOCO given its lack of evidence and its weak showing on likelihood of success. Moreover, the irreparable harm must be "both certain and immediate, rather than speculative or theoretical." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Conclusory allegations or speculative claims do not suffice. *See, e.g., GrafTech Int'l Holdings, Inc. v. SANGRAF Int'l, Inc.,* No. 1:14-CV-02658, 2015 WL 471778, at *4 (N.D. Ohio Feb. 4, 2015) (rejecting claims of irreparable harm from future lost goodwill because "[plaintiff] has not adequately established the links in this chain."). NOCO's unsupported conclusory allegations do not meet its burden.

13

### 3.  The Balance of Hardships Also Weighs Against NOCO.

NOCO applies a nonexistent legal standard when arguing the third factor of this analysis –
focusing on "unjustifiable" harm to "third parties." (ECF 5, 14.)  The Court can thus safely ignore
NOCO's argument, which NOCO crafted to ignore the hardship to Aukey from its requested
injunction. NOCO also ignored the actual relief it requested, pretending the injunction would only
"forbid [] Defendants … misconduct." (*Id.*) NOCO never mentions its accompanying demand that
the Court order Aukey not to sell TACKLIFE products through Amazon.

On this record, the "balance of the hardships" overwhelmingly favors Aukey and weighs
against granting the relief NOCO seeks. As discussed above, NOCO has made no convincing
showing that is suffering irreparable harm in the absence of an injunction, and certainly not the
"clear showing" the law requires. By contrast, Aukey would be tremendously harmed by the
sweeping injunction NOCO seeks in terms of lost sales, lost revenue (more than $100 million
yearly), and lost business opportunities. (*See* Ex. 1, ¶¶17-18.) That injunction would also cause
significant job losses at Aukey and its co-defendants. (*See id.*, ¶¶ 17 & 19.) There would also be
knock-on effects harming Aukey's third party suppliers. (*Id.*, ¶ 19.) The same applies, to a lesser
extent, to an injunction banning the sale of products competing with NOCO (which themselves
total many millions of dollars in yearly sales)  And nothing in this record justifies an injunction
limiting Aukey's ability to communicate with Amazon in the ordinary course of its business.

### 4.  The Public Interest Does Not Support NOCO's Requested Relief.

This case does not directly involve constitutional rights, or civil liberties, or vital medical
supplies, so the public interest factor may seem to be neutral in this dispute between competitors.
But NOCO's motion deeply implicates the public interest, which weighs against its requested
injunction because: (a) the public has a strong interest in not allowing litigants to abuse the legal

process by filing unsupported motions for competitive advantage; and (b) the public interest would be harmed by a sweeping injunction reducing competition in the market for portable jump-starters.

NOCO cannot explain how banning Aukey from selling on Amazon – either all TACKLIFE products or just competing products -- would redress NOCO's alleged injury, because it would not. So, the Court cannot properly grant such relief. Here, as in a recent post-election case: "Plaintiffs fail to understand the relationship between right and remedy. Though every injury must have its proper redress, a court may not prescribe a remedy unhinged from the underlying right being asserted." *Donald J. Trump for President, Inc. v. Boockvar*, --- F.Supp.3d ---, 2020 WL 6821992, \*12 (M.D. Pa. Nov. 21, 2020).

NOCO essentially asks the Court to eliminate a strong competitor. The Court should not.

## III.  <u>CONCLUSION</u>

NOCO's motion has not come close to making the clear showing required to justify the extraordinary remedy of a preliminary injunction. NOCO's procedural posture is suspect, and it presents an implausible hearsay tale of wrongdoing supported by no admissible evidence, and no evidence NOCO would suffer irreparable harm without an injunction. The equities decidedly favor Aukey, and the public interest would be best served by denying NOCO's motion given NOCO's failure to show a likelihood of success on the merits, lack of irreparable harm, and the devastating effects of the bizarre, sweeping injunction NOCO seeks.

For all the reasons set forth above, and for good cause shown, Aukey respectfully urges the Court to deny NOCO's Motion for Preliminary Injunction.

Respectfully submitted,

/s/ *Jay R. Campbell*
Jay R. Campbell (0041293)
David A. Bernstein (0093955)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216.592.5000
Facsimile:    216.592.5009
E-mail:        jay.campbell@tuckerellis.com
               david.bernstein@tuckerellis.com


/s/ Peter J. Curtin
Peter J. Curtin (*pro hac vice*)
Yichen Cao, Ph.D.
Yu Di
Diego F. Freire
**ARCH & LAKE LLP**
203 North LaSalle Street, Suite 2100
Chicago, IL 60601
(312) 558-1369
(312) 614-1873 (fax)
pete_curtin@archlakelaw.com

*Counsel for Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2020 a copy of the foregoing Defendants' Brief in Opposition to NOCO's Motion for Preliminary Injunction  was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Jay R. Campbell*
Jay R. Campbell (0041293)

*Attorney for Defendants*

</div>