# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| THE NOCO COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>AUKEY TECHNOLOGY CO., LTD., et al.,<br><br>        Defendants. | Case No. 20-cv-02322-SO<br><br>**Judge Solomon Oliver, Jr** |

## DECLARATION OF SHI, WENYU IN SUPPORT OF DEFENDANTS' OPPOSITION TO NOCO'S PRELIMINARY INJUNCTION MOTION

1. I, Shi, Wenyu, am more than twenty-one years of age, am competent to present this Declaration, and have personal knowledge of the acts set forth herein. I could and would testify competently under oath to the matters set forth herein if called upon to do so.

2. This declaration is submitted in support of Defendants' Opposition to NOCO's Preliminary Injunction Motion. In this motion, I refer to the Aukey Technology Co., Ltd. and its related co-defendants collectively as "Aukey."

3. I am an executive operation manager at the Aukey Technology Co., Ltd. with more than six years working at the company. I have a background in sales and marketing.

4. Aukey does not fully understand NOCO allegations in its Motion for Preliminary Injunction, including those allegations regarding the NOCO Browse Node listings and Mr. Nook's allegations in his Affidavit in support of the Motion for Preliminary Injunction, since NOCO's and Mr. Nook's allegations are very vague and unreasonably general. Even so, we respond to those allegations as well and thoroughly as possible.

5. I understand that NOCO's Motion for a Preliminary Injunction alleges that Aukey are "coercing" or have coerced Amazon's employees. Upon information and belief, after a reasonable investigation, we deny such allegations and state that Aukey is not now and has not been "coercing" Amazon employees. Our communications with Amazon and its employees are ordinary business communications through regularly established commercial channels. Furthermore, Aukey has no power over Amazon or Amazon's employees, because Aukey is just one of millions of sellers on the Amazon Marketplace, and Amazon is one of the largest and wealthiest companies in the world. If anything, the opposite power dynamic exists, because Amazon controls the product listing on its websites, which are a major sales channel for Aukey. Aukey cannot compel or coerce Amazon or its employees to do anything they do not want to do.

6. Furthermore, NOCO's allegation of coercion is baseless and incomprehensible to anyone who understands Amazon and how that company operates.  For example, over the past twelve months, NOCO has filed many complaints with Amazon globally, often in an abusive manner, against Aukey's Amazon listings and its regular business operations on Amazon. Some of those complaints by NOCO have resulted in the de-listing of certain Aukey products by the Amazon site (i.e. removal from the site) and a significant disruption of Aukey's normal business operations.  NOCO cannot, in good faith, deny these facts. Depending on the established internal procedures of the national Amazon marketplace -- and thus for most of these complaints and consequent de-listings -- Amazon either did not allow Aukey to respond to NOCO's complaints before acting, or simply ignored Aukey's response.  If Aukey had the power to coerce Amazon and/or its employees, Aukey would likely have exercised that power to influence Amazon's decision making and prevent Amazon's delisting of Aukey's products based upon NOCO's abusive complaints. Amazon makes its own decisions.

731295402.1

7. I understand that, in its Motion for a Preliminary Injunction, NOCO alleges in effect that Aukey is conspiring with Amazon and Amazon's employees to harm NOCO. Upon information and belief, after a reasonable investigation, we deny such allegations and state that Aukey is not now conspiring and has not conspired with Amazon or its employees against NOCO. Our communications with Amazon are ordinary business communications through regularly established commercial channels. As with NOCO's coercion allegations set forth above, NOCO's allegation of conspiracy is baseless and incomprehensible. Why would Amazon, a company likely several thousand times bigger than either Aukey or NOCO, ever conspire with Aukey, one regular Seller with Amazon, against NOCO, another regular Seller with Amazon?

8. I understand that, in its Motion for a Preliminary Injunction, NOCO refers to allegations in NOCO's Complaint (or perhaps in one of the several Complaints NOCO has filed against Aukey) that Aukey has filed false complaints with Amazon regarding alleged safety issues with NOCO products. Upon information and belief, after a reasonable investigation, we deny such allegations and state that Aukey has never filed a complaint with Amazon about any alleged safety issues involving NOCO products. We do not understand the basis for NOCO's allegations.

9. I am familiar with Amazon's Marketplace policies and processes for listing products because I am involved in supervising Aukey's products on Amazon's Marketplace.

10. Amazon's Marketplace is an e-commerce platform operated by Amazon that enables third-party Sellers to sell new or used products on a fixed-price online marketplace alongside Amazon's regular offerings. Amazon's Marketplace policies are incorporated into and is part of the agreements between Amazon and all Sellers. According to the Seller's agreements, Sellers must comply with all applicable laws and regulations. The Amazon policies include general policies, intellectual property policies, product and listing requirements, and several other policies.

11. Amazon, under its policies, would remove a product from the Amazon Marketplace based on reported complaints of safety problems or intellectual property infringement. Aukey understands that this is not the topic of NOCO's pending motion.

12. I provide herewith my understanding of Amazon's Browse Node policy. Amazon's Browse Nodes are Amazon's method of organizing the products on sale on their Marketplace. They include a hierarchy of "nodes" to organize its items for sale. Each node represents a collection of items for sale, such as Harry Potter books, and not the items themselves. Product Advertising API calls the nodes, browse nodes, because customers can browse through the nodes to find the collection of items that interests them. They work by using different levels of the hierarchical tree of nodes that can be used to catalog and find items. The nodes progress from general to specific. For example, a top-level browse node might be Shoes, with "Athletic Shoes" being a sub-node for sneakers. Attached as Exhibit A is a true and correct copy of the public version of Amazon policies applicable to Browse Nodes as available to the Sellers. Amazon may (and likely does) have additional internal procedures and enforcement policies which are not available to those outside the company.

13. Amazon's Best Seller Badge award is awarded by Amazon to the product that has the highest number of sales in a specific Browse Node. The award is updated hourly and is based on sales velocity and sales history of a product within the specific Browse Node.

14. Based on my experience, some companies have intentionally listed their products either under inaccurate Browse Nodes or under multiple Browse Nodes in an effort to boost their sales, for reasons I will describe. Often, products listed under a correct Browse Node in accordance with Amazon's policy will face intense competition from similar products listed under the same Node.  (For instance, hypothetically a boat engine should be listed under Browse Node

4

731295402.1

"Boating>Engines," which would be deemed a correct Node listing.) However, this fierce competition provides an incentive for a Seller to avoid that head-on competition by listing its product under an inaccurate Browse Node – where the competition will be much less intense (if any) because there will be no other boat engines in that Node. (For example, the same boat engine mentioned above could be intentionally listed by the Seller under an inaccurate Browse Node "Boating>Accessories" instead of "Boating>Engines.") That inaccurate Node listing gives the product a disproportional competitive edge on other boat engines, since there are no competing products listed under the same Node – so that boat engine is more likely to obtain an Amazon "Best Seller" badge in the inaccurate Node (which will then boost sales). A similar issue can arise when a Seller lists a product in more than one Browse Node – by definition there can only be one correct Browse Nodes -- and listings in multiple Browse Nodes violate express Amazon policy. On information and belief, ordinary consumers rarely or never pay attention to the Browse Node under which a product of interest is listed. Instead, the consumer will simply search a product type/name as a key word and scan the search results – often being drawn to the "Best Seller" badge when deciding which brand to buy, assuming it is recommended or suggested by Amazon.

15. Based on my experience over the past 2-3 years, Amazon has become more aware of problems with some Sellers manipulating the selection of the Browse Nodes for product listings and has begun to enforce its Browse Node policies more strictly. Amazon, when enforcing its policies, will move a product listing from an improper Browse Node to a proper Browse Node. The criteria for a proper listing are determined by Amazon policy and include evaluation of the accuracy of the Browse Node listing and whether there are Multiple Browse Listings (i.e., as mentioned above a Seller may only list a given product in one Browse Node at a time). Amazon determines whether its criteria have been met, and Amazon decides when and how to move a

product to a proper Browse Node, and how to deal with a product listed in multiple Browse Nodes (presumably leaving only the listing in the correct Browse Node). Defendants have no ability to move any other Sellers' product from the Browse Node in which the Seller has placed it.

16. Amazon's process for moving a product to a proper Browse Node includes review of product listings by Amazon bots and review by Browse Node Specialists making changes if they don't agree with the current Browse Node assignment. Amazon permits customers and other Sellers to register complaints against an inaccurate Browse Node listing. The Seller also has the ability to contact Amazon about Amazon's action regarding a complaint or Amazon's decision to move the product to a proper Browse Node.

17. I understand that NOCO is asking the Court for all Tacklife products to be removed from Amazon (US) for the duration of the litigation. I understand that the duration of the litigation can be about two years. The impact of Tacklife products being removed from Amazon for two years would be catastrophic to Aukey, its employees, its suppliers, and its customers. Aukey sells approximately six hundred different Tacklife products on Amazon (US) with an annual revenue of approximately $100,000,000. Of those different Tacklife products on Amazon, only about one dozen products directly compete with NOCO, including "T" series models of jump-starters sold on Amazon.

18. Most of Tacklife products sold on Amazon do not compete with NOCO and are not remotely relevant to this litigation. The loss of revenue to Aukey from Tacklife products being removed from Amazon (US) can be conservatively estimated at $100,000,000 per year. It would be very difficult to replace the sales numbers from Tacklife products sold on Amazon through alternate sales channels like eBay, Alibaba, and other online websites because of Amazon's size, reach, popularity, customer loyalty, and overall sales potential.

19. Additionally, the level of disruption to Aukey workforce and supply chain would also be catastrophic since approximately six hundred different products would not be sold if not listed on Amazon's Marketplace. The disruption would most likely include approximately 25-50% of Aukey's jobs lost and perhaps even closing the two co-defendants who run the Amazon stores. Not to mention the impact this would have on some of Aukey's suppliers, which would mean sales loss, job losses, and possibly shutting down because Aukey is such a significant partner.

20. Of course, Aukey does not believe the injunction NOCO requests would be proper. But more importantly we do not understand how such an order could be justified when Aukey has done nothing improper or outside the ordinary course of a Seller's relationship with Amazon, and NOCO has provided no evidence to show otherwise.

21. I understand that NOCO's Motion for a Preliminary Injunction alleges that Amazon has investigated the alleged Aukey's manipulation of NOCO products from the Browse Nodes. Upon information and belief, after a reasonable investigation, we deny such allegations of manipulation and state that Aukey is unaware of any Amazon's investigation(s) on Aukey's activity.

I declare under the penalty of perjury that the foregoing is true and correct.

This the 18th day of December, 2020.

史浈玉 Shi Wenyu
_____
Shi, Wenyu