IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **THE NOCO COMPANY,** | CASE NO. 1:20-cv-02322 |
| Plaintiff, | |
| -v- | JUDGE SOLOMON OLIVER, JR. |
| **AUKEY TECHNOLOGY CO., LTD., et al.,** | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' EXHIBIT 1 TO THE OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff The NOCO Company ("*NOCO*") submits this Reply Brief in Support of its Motion for Preliminary Injunction (ECF # 5) (the "*Motion*") and requests that the Court strike Exhibit 1 to the Opposition to NOCO's Motion for Preliminary Injunction (ECF # 11) (the "*Opposition*") filed by Defendants Aukey Technology Co., Ltd., Shenzhenshi Jaingyun Shangmaoyouxiangongsi, and Wodeshijikeji Shenzhen Youxiangongsi's (together, the "*Defendants*").

In response to NOCO's Motion, Defendants rely on a single declaration from an Aukey employee (ECF # 11-1) (the "*Declaration*") that is primarily based "upon information and belief" and lacks any evidentiary value. Notably, the Declaration does not contain any denials to refute that Defendants participated in the removal of NOCO's products from Amazon.com, Inc.'s ("*Amazon*") Browse Nodes. Instead, the Declaration contains vague and qualified averments that are primarily legal

conclusions. NOCO has demonstrated that its products were repeatedly removed from the Browse Nodes, Aukey has admitted as much through its Declaration that it was involved, and the Court has legal authority to issue a preliminary injunction even before service of process is effected in China. The Court should therefore strike the Declaration and issue a preliminary injunction[1] prohibiting Defendants from continuing to manipulate the Amazon Marketplace and removing their "Tacklife" products from the Amazon Marketplace.

### I. The Court Should Strike the Declaration for Lack of Evidentiary Value.

The Court should not consider the Declaration in ruling on the Motion because it is bereft of any factual averments to refute NOCO's claims. The declarant, Shi Wenyu ("**Shi**"), did not declare any authority to bind or investigate Aukey, avers only a series of conclusory legal statements based solely upon Shi's "information and belief," and fails to deny the allegations central to the Motion.

District courts may exclude sworn statements when considering injunctive relief. *See Muzquiz v. W.A. Foote Mem. Hosp.*, 70 F.3d 422, 428 (6th Cir. 1995) (finding that it was not abuse of discretion to exclude proffered testimony that was "not probative" and "irrelevant"); *Fid. Brokerage Servs. LLC v. Clemens*, No. 2:13-CV-239, 2013 U.S. Dist. LEXIS 157526, at *12-13 (E.D. Tenn. Nov. 4, 2013); *Goodwin v. Illinois Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 439-440 (7th Cir. 2005).

---

[1] As discussed, *infra* at 10-11, to the extent that the Court deems a temporary restraining order is more appropriate than a preliminary injunction at this stage, NOCO respectfully requests that the Court enter a temporary restraining order preventing Defendants from selling "Tacklife" products on and manipulating the Amazon Marketplace.

For numerous reasons, the Declaration proffered here lacks evidentiary value and should not be considered by the Court in ruling upon NOCO's Motion.

***First***, the Declaration is founded upon "information and belief," *i.e.*, unsubstantiated speculation. Courts routinely exclude or ignore evidence based upon "information and belief." *See, e.g.*, *Country Fare LLC v. Lucerne Farms*, No. 3:11cv722, 2011 U.S. Dist. LEXIS 61064, at *26 (D. Conn. June 7, 2011) (granting preliminary injunction in a trademark infringement action where opposing declaration was "made on unidentified and unsubstantiated information and belief and not on [the declarant's] personal knowledge."); *see also Koorsen Fire & Sec., Inc. v. Westerfield*, No. 1:17-cv-845, 2018 U.S. Dist. LEXIS 203766, at *21 (S.D. Ohio May 21, 2018) (evidence based on information and belief, and not personal knowledge, was insufficient); *Biomin Am. Lesaffre Yeast Corp.*, 2:20-cv-02109, 2020 U.S. Dist. LEXIS 54647, at *11 (D. Kan. Mar. 30, 2020) (proffered evidence was "just conclusory statements preceded by the qualifier 'on information and belief.'"). Likewise, the Court here should refuse to consider the Shi's conclusory, speculative statements offered merely "upon information and belief." Shi uses this legal phrase no less than five different times, (ECF # 11-1 ("***Decl.***") ¶¶ 5, 7, 8, 14, and 21), including to speculate about the conduct of "ordinary consumers,"[2] (*Id.* ¶ 14) and to state that an unknown person—not Shi—conducted a "reasonable investigation" at some point, and that, as a result, Defendants deny wrongdoing. (*Id.* ¶¶ 5, 7, 8, and 21). This is directly contrary to the very purpose of a declaration, which is to provide the declarant's personal knowledge.

---

[2] "On information and belief, ordinary consumers rarely or never pay attention to the Browse Node under which a product is listed." *Id.* ¶ 14.

3

***Second***, with respect to key assertions, the Declaration fails to identify who is providing testimony and on what authority. Shi interchangeably refers to herself/himself as "Aukey," "I," and "we" in the Declaration, making it impossible to determine whether Shi or one or more of the Defendants are offering testimony.³ As an "executive operation manager" with Defendant Aukey, with "a background in sales and marketing," (*Id.* at ¶ 3), there is no evidence that Shi has the ability to bind or speak for any of the Defendants, and it is unclear how Shi has personal knowledge about Defendants' actions or exactly who conducted the supposedly "reasonable investigation" that purports to exonerate Defendants (*Id.* at ¶ 5).⁴

***Third***, the Declaration is more "an adversarial memorandum than a bona fide declaration." *FTC v. Vantage Point Servs., LLC*, No. 15-CV-0065, 15-CV-0065, 2015 U.S. Dist. LEXIS 63940, at *7 fn 5 (W.D.N.Y. May 15, 2015) (granting a preliminary injunction where opposing declaration was not based on personal knowledge). Rather than attempting to contest NOCO's factual assertions based on personal knowledge, Shi offers conjecture and argumentative, conclusory legal argument from a low to mid-level employee of Defendant Aukey. For example, the Declaration:

- makes assertions about Aukey's understandings and beliefs, as opposed to the Declarant's (¶¶ 4, 21);
- concludes that NOCO's allegations are "baseless and incomprehensible to anyone who understands Amazon" (¶ 6);

---

³ For example, in paragraph 3, Shi states "I am an executive operation manager." In paragraph 4, Shi states that "Aukey does not fully understand NOCO['s] allegations," and then ends with "[e]ven so, we respond." In paragraph 5, Shi uses both "I" and "we".
⁴ The Declaration does not reference any relationship between Shi and the other defendants.

4

- poses a rhetorical question as to why Amazon would ever conspire with Aukey (¶ 7);[5]

- speculates, without offering any support, about the possibility that anonymous third parties are intentionally listing products under inaccurate Browse Nodes (¶ 14);

- speculates, without offering any support, that Amazon has an internal Browse Node complaint process (¶¶ 14-16); and

- claims Aukey would lose between 25-50% of its workforce and that the two co-defendants would be shut down if the injunction is granted. (¶ 19).

Indeed, the Declaration is notable for what it fails to state. It does not deny that Defendants contacted Amazon to remove NOCO products from the Browse Nodes. It does not deny that anyone at Amazon contacted Defendants about removing NOCO products from the Browse Nodes. It does not aver that Defendants had no role in changing NOCO's Browse Node designations. It does not state that Defendants were unaware of the changes to NOCO products in the Browse Nodes. It does not dispute that Defendants directly benefit from removing NOCO products from the Browse Nodes, as illustrated by NOCO's allegations that Defendants' "Tacklife" products received the Best Seller Badge. These glaring admissions by omission only serve to validate NOCO's claims.

In sum, the Court should strike the Declaration because, shorn of its unfounded speculation, legal arguments, and misdirection offered "upon information and belief," it actually contains no relevant evidence—nothing that is probative on the conduct of Defendants at issue here.

---

[5] Shi, and by extension, Defendants, completely misconstrue the nature of the relationship between Defendants and Amazon alleged by NOCO. Defendants are not alleging that Mr. Bezos himself removed NOCO from the Browse Nodes but rather low-level Amazon employees, as occurred in *United States v. Rosenberg, et al.,* Case No. CR20-151 RAJ (W.D. Wash. Sept. 16, 2020).

## II. NOCO Products Were Removed from the Browse Nodes.

Despite Defendants' attempts to distract this Court, it is plain that they are manipulating the Amazon Marketplace to their benefit and NOCO's detriment. Indeed, removing NOCO products from the Browse Nodes is just one way Defendants are tilting the playing field in their favor.

As an initial matter, the Court can consider the evidence NOCO set forth in the Motion and accompanying affidavit of NOCO co-owner and Chief Visionary Officer, Jonathan Nook (ECF # 5-1). Even if this affidavit contained hearsay, as Defendants wrongly assert, courts can rely upon such evidence when deciding a preliminary injunction. *See Mullins v. City of New York,* 626 F.3d 47, 52 (2nd Cir. 2010) ("The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage."); *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (a "district court may rely on otherwise inadmissible evidence, including hearsay" in deciding a motion for preliminary injunction); *Fleet Aerospace Corp. v. Holderman,* 637 F. Supp. 742, 746 (S.D. Ohio June 11, 1986) (vacated, remanded, and affirmed on other grounds) (distinguishing the admissibility standards at the Fed. R. Civ. P. 65 stage from the summary judgment stage and ultimately allowing consideration of an affidavit); *FTC v. Nat'l Testing Servs., LLC*, Case No. 3:05-0613, 2005 U.S. Dist. LEXIS 46485, at *5-6 (M.D. Tenn. Aug. 18, 2005). Further, the affidavit does not contain any hearsay evidence as Jonathan Nook made the statements based upon his personal knowledge and understandings—unlike Shi in the Declaration—of his conversations with Amazon employees related to the removal of NOCO products from the Browse Nodes.

NOCO already has evidence persuasively demonstrating Defendants' manipulation of the Browse Nodes and the removal of NOCO products. NOCO products were removed from the Browse Nodes in at least June, July, August, September, November, and December 2020.[6] After NOCO products were removed from the Browse Nodes and lost the Best Seller Badge, NOCO would either alert Amazon or Amazon would alert NOCO, and Amazon would reassign the NOCO products to their originally designated Browse Nodes. (*See* Supplemental Declaration of Jonathan Nook, attached as **Exhibit A**, at ¶¶ 6-9).[7] At that point, however, Defendants' already accomplished their objective—stealing the Best Seller Badge from NOCO to boost Defendants' sales and harm NOCO's reputation and sales. (*Id.* at ¶¶ 8-9).

This sequence of events has occurred multiple times over the past six months, requiring both Amazon and NOCO to devote resources to monitoring the Browse Nodes. (*Id.* at ¶¶ 5, 12). After Defendants' initial onslaught of Browse Node manipulation, Amazon created a gating mechanism that prevented Amazon seller teams located in China from changing the Browse Nodes. (*Id.* at ¶ 12). With the gating mechanism in place, Defendants sought out Amazon seller teams in India. (*Id.* at ¶ 13). NOCO understands that Defendants then continued to manipulate NOCO products' Browse Nodes using the seller teams in India. (*Id.* at ¶ 14).

Amazon's actions demonstrate that the removal and replacement of NOCO products into the Browse Nodes occurred in anything but the ordinary course of

---

[6] Indeed, since filing the Motion, NOCO products have remained in their designated Browse Nodes for the longest amount of time since NOCO filed its Complaint on October 13, 2020.

[7] NOCO intends to marshal additional supporting documents at a future hearing regarding the Motion.

7

business. Amazon—one of the world's largest companies—devoted considerable attention to correcting Defendants' manipulation. (*Id.* at ¶¶ 8-9, 12-13). Amazon continually placed NOCO products back into the designated Browse Nodes after their removal and created a sophisticated gating mechanism to prevent the removal of NOCO products from the Browse Nodes. (*Id.*). While Defendants—upon "information and belief"—deny coercing and conspiring with Amazon and suggest they would be unable to coerce Amazon employees, they do not deny that they had knowledge of the events detailed in the Motion or the Affidavit, nor do they deny requesting that Amazon employees remove NOCO products from the Browse Nodes.

While limited expedited discovery would substantiate NOCO's assertions in the Motion, the Court can consider the evidence NOCO has already put forth. That evidence, combined with Defendants' failure to provide any evidence to the contrary, warrants granting NOCO's request for injunctive relief. Accordingly, NOCO requests that the Court issue an injunction preventing Defendants from selling "Tacklife" products on and further manipulating the Amazon Marketplace.

**III.    The Court has the Authority to Issue a Preliminary Injunction.**

Finally, Defendants' claim that the Motion should be denied on a technicality—that they have yet to receive service under the Hague Convention—is meritless. This District already recognized that "the Hague Convention does allow interim relief" pending service. *Noco Co. v. Liu Chang*, No. 1:18-cv-2561, 2019 U.S. Dist. LEXIS 83085, at *9, fn 23 (N.D. Ohio May 16, 2019).

NOCO learned of Defendants' addresses from Defendants' counsel and is attempting service in China, a process that can take six months or longer, which

8

includes translation of the Complaint into Mandarin. *Id.* at *2 fn 5. NOCO seeks interim injunctive relief specifically because Defendants' misconduct has worsened since NOCO instituted this action. Defendants expressly refused to waive service and waiting six months or more to stop Defendants from manipulating the Amazon Marketplace will cause NOCO irreparable harm.

Courts routinely issue injunctions before Hague Convention service is effective because failing to do so would incentivize misconduct by foreign defendants. In *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012), the Seventh Circuit upheld a series of injunctive orders: (i) a 14-day temporary restraining order issued prior to Hague Convention service; (ii) an indefinite TRO extension to allow for the perfection of Hague Convention; (iii) another TRO extension post-service to allow the parties to conduct expedited discovery for a preliminary injunction hearing; and (iv) a superseding preliminary injunction. When the *H-D Michigan* defendant appealed for lack of Hague Convention service, the Seventh Circuit declared the argument "preposterous" and ruled that it would have "the unfortunate effect of immunizing most foreign defendants from needed emergency injunctive relief."

There "is a reason Rule 65 allows emergency injunctive relief before service of process." *Id.*; *see also Midmark Corp. v. Janak Healthcare Private Ltd.*, No. 3:14-cv-088, 2014 U.S. Dist. LEXIS 52652, at *29 (S.D. Ohio Apr. 16, 2014) (converting TRO into preliminary injunction where foreign defendants did not have service under the Hague Convention); *Almetals, Inc. v. Wickeder GMBH*, No. 08-10109, 2008 U.S. Dist. LEXIS 17183, at *12 (E.D. Mich. Mar. 6, 2008) (extending TRO to indeterminate date after foreign corporation refused to waive service to prevent Fed. R. Civ. P. 65 from becoming

9

"inoperable against foreign Defendants."); *Samsung Elec. Co. v. Early Bird Sav.*, No. 13-cv-3105, 2014 U.S. Dist. LEXIS 10545 (S.D. Cal. Jan. 27, 2014) (extending TRO against defending Chinese corporations for several months to permit Hague Convention service); *Samsung Elec. Co. v. Early Bird Sav.*, No. 13-cv-3105, 2015 U.S. Dist. LEXIS 102088 (S.D. Cal. Aug. 3, 2015) (extending the same TRO to nearly two years after original issuing date to permit alternative service); *Backjoy Orthotics, LLC v. Forvic Int'l Inc.*, No. 6:14-cv-249, 2017 U.S. Dist. LEXIS 111359, at *4-5 (M.D. Fla. June 12, 2017) (noting that court granted and then extended TRO pending Hague Convention service, and then converted TRO into preliminary injunction).

It makes no difference that these cases involve TROs, as both preliminary injunctions and TROs are issued under the same standard. *See Recon Nat. Res., LLC v. Cook,* No. 5:20-cv-0733, 2020 U.S. Dist. LEXIS 65251, at *3-4 (N.D. Ohio Apr. 14, 2020). Neither TROs nor preliminary injunctions require service of process, and Defendants have received notice sufficient for either form of injunctive relief.[8] Also, while TROs have temporal limitations, they may be extended to indeterminate lengths or converted without substantive change into preliminary injunctions. *See id*. To the extent the Court is concerned about this distinction, however, NOCO respectfully requests that this Court award, as an alternative, the same injunctive relief in the form of a temporary restraining order pending Hague Convention service and a hearing on the merits.

---

[8] TROs may be issued without any notice to the opposing party. Fed. R. Civ. P. 65(b). Preliminary injunctions require only notice, *see* Fed. R. Civ. P. 65(a), which "implies 'a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.'" *Midmark*, 2014 U.S. Dist. LEXIS 52652 at *3 (quoting *Amelkin v. McClure*, 1996 U.S. App. LEXIS 1414, at *17 (6th Cir. 1996)).

For the foregoing reasons, and the reasons set forth in NOCO's Motion for Preliminary Injunction, NOCO respectfully requests that this Court enter a preliminary injunction to prohibit Defendants from manipulating the Amazon Marketplace and selling "Tacklife" products on the Amazon Marketplace. NOCO also requests that the Court strike the Declaration (ECF # 11-1) from the record as it offers no evidentiary value.

        Respectfully Submitted,

        **KOHRMAN JACKSON & KRANTZ LLP**

        */s/ Jon J. Pinney*
        JON J. PINNEY (0072761)
        JONATHON W. GROZA (0083985)
        JUSTINE LARA KONICKI (0086277)
        KYLE D. STROUP (0099118)
        One Cleveland Center, 29th Floor
        1375 East Ninth Street
        Cleveland, Ohio 44114-1793
        Telephone: (216) 696-8700
        Facsimile: (216) 621-6536
        Email: jjp@kjk.com; jwg@kjk.com;
               jlk@kjk.com; kds@kjk.com

        *Counsel for Plaintiff The NOCO Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Plaintiff The NOCO Company's Reply in Support of its Motion for Preliminary Injunction and Plaintiff's Motion to Strike Defendants' Exhibit 1 to the Opposition to Motion for Preliminary Injunction has been filed electronically on this 31st day of December, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties not receiving service through the Court's electronic filing system will be served by mail at the following addresses:

Aukey Technology Co., Ltd.
Room 102
Building P09
Huanan Dianzi Trading Center Plaza
Shenzhen 518111 China

Shenzhenshi Jiangyun Shangmaoyouxiangongsi
Room 913, Block B, World Financial Center
Heping Road, Nanhu Street
Luohu District
Shenzhen, Guangdong, 518111 China

Wodeshijikeji Shenzhen Youxiangongsi
Longgangqu Bujijiedao Buzhonglu 12 Hao
Meidulanhuating Czuo 8B
Shenzhen, Guangdong 518114 China

/s/ Jon J. Pinney
Jon J. Pinney