IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| THE NOCO COMPANY, | ) CASE NO.  1:20-CV-02322-SO |
| Plaintiff, | ) JUDGE SOLOMON OLIVER |
| v. | ) |
| AUKEY TECHNOLOGY CO., LTD., et al., | ) |
| Defendants. | ) |

**DEFENDANTS' BRIEF IN OPPOSITION TO
NOCO'S MOTION TO STRIKE THE SHI DECLARATION**

The Court should deny NOCO's Motion to Strike the Declaration of Shi Wenyu (ECF 14) because NOCO's arguments are factually unsupported and legally unsound.

- **First**, NOCO's motion mischaracterizes the Shi Declaration (ECF 11-1) by claiming it lacks foundation and presents no relevant factual testimony. Sections I.D. below lists just some of the relevant facts and subjects addressed in the declaration.

- **Second**, Ms. Shi's declaration was primarily based on her personal knowledge, as stated therein and clarified by the Supplemental Shi Declaration (attached as Exhibit 1). The initial declaration presented her background and experience succinctly but Exhibit 1 provides more context and clarifies the foundation for the testimony. On the few occasions when Ms. Shi made statements based "upon information and belief," she did so either based on her years of experience overseeing Aukey's Amazon sales, or as an official representative of the Defendants.

- **Third**, NOCO never articulates a coherent legal standard, but seems to ask the Court to apply the Rule 56 standard for summary judgment affidavits to the Shi Declaration,

1

even though its own cases state that standard does not apply here. No case NOCO cites supports striking this witness statement from the record under any standard, and much less so at the preliminary injunction stage.

If the Shi Declaration includes some statements of opinion as well as statements of fact, the Court can evaluate the entire Declaration and assign each statement the weight it deserves.

NOCO spends half of its "Reply" brief attacking the Shi Declaration while never engaging on the merits of its preliminary injunction analysis or substantively responding to Aukey's criticism of its proofs. (ECF 14, 2-5 & *passim*.) NOCO's primary purpose may have been to divert attention from the weaknesses of its own Nook Declaration (ECF 5-1) and the new Supplemental Nook Declaration (ECF 14-1).[1] NOCO's motion to strike has also added at least three weeks of briefing to this process which, combined with its request for an extension of time, further undercuts NOCO's claim of irreparable harm requiring injunctive relief. The Court should not be diverted or distracted by NOCO's tactics and should deny NOCO's Motion to Strike.

**I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND.**

**A. Procedural History**

1. NOCO filed the Complaint on October 13, 2020. (ECF 1.)

2. On November 2, 2020, NOCO moved to reassign the case. (ECF 4.)

3. On December 4, 2020, NOCO filed its Motion for Preliminary Injunction. (ECF 5.)

---

[1] As Aukey's opposition brief describes (ECF 11, 1-3), the Nook Declaration is nearly 100% non-specific hearsay, and the Supplemental Nook Declaration adds yet another set of hearsay claims. NOCO argues the Nook Declaration "does not contain any hearsay evidence as Jonathan Nook made the statements **based on his personal knowledge and understandings . . . of his conversations with Amazon employees** related to the removal of NOCO products from the Browse Nodes." (ECF 14, 6 (emphasis added).) NOCO's claim cannot survive even a passing glance at the Federal Rules of Evidence because NOCO offers Mr. Nook's testimony for the truth of alleged out of court statements by anonymous Amazon employees. *See* Fed. R. Evid. 801(c); *see also* Fed. R. Evid. 802-804.

4. On December 8, 2020, the Court granted NOCO's Motion to Reassign. (ECF 9.)

5. On December 8, 2020, NOCO filed its Motion for Expedited Discovery. (ECF 10.)

6. On December 18, 2020, Aukey filed Defendants' Brief in Opposition to NOCO's Motion for Preliminary Injunction, with exhibits. (ECF 11.)

7. On December 22, 2020, Aukey filed Defendants' Brief in Opposition to NOVO's Motion for Expedited Discovery, with exhibits. (ECF 12.)

8. On December 23, 2020, NOCO filed a Motion for Extension of Time to file its reply briefs. (ECF 13.)

9. On December 31, 2020, NOCO filed its Reply in Support of Plaintiff's Motion for Preliminary Injunction and Motion to Strike Defendants' Exhibit 1. (ECF 14.) NOCO's filing included a Supplemental Declaration of Jonathan Nook. (ECF 14-1.)

10. On December 31, 2020, NOCO filed its Reply in Support of Plaintiff's Motion for Expedited Discovery. (ECF 15.)

11. NOCO has never contacted the undersigned counsel or the Court to seek an expedited briefing schedule or hearing on any of its (now three) pending motions.

B. **NOCO's Alleged Timeline**

12. In early 2020 NOCO noticed declining sales and discovered certain NOCO products were no longer Amazon "Best-Sellers." (ECF 5-1, ¶¶ 7-9). NOCO also realized that some products were not always listed in the Amazon Browse Nodes it had chosen. (ECF 5-1, ¶¶ 10-12.)

13. NOCO was allegedly informed by "Amazon" that Amazon personnel had moved certain NOCO products from certain Amazon Browse Nodes. (ECF 5-1, ¶ 13.)

14. Before October 2020, NOCO was allegedly informed by "Amazon" that Amazon personnel had made those changes at Aukey's requests. (ECF 5-1, ¶¶ 17, 21.)

3

15. Before October 2020, NOCO requested that Amazon remove all TACKLIFE products from the Amazon Marketplace. (ECF 5-1, ¶¶ 18-19, 21.)

16. Amazon allegedly told NOCO that its Abuse Team would review the situation and determine whether any corrective action was appropriate. NOCO believes Amazon has not acted against Aukey. (ECF 5-1, ¶ 20.)

17. Amazon allegedly reassigned certain NOCO products from Amazon Browse Nodes NOCO had chosen in October, late November, and early December 2020. (ECF 5-1, ¶¶ 21-23.)

18. Amazon allegedly reassigned NOCO products from the Amazon Browse Nodes NOCO had chosen on ten occasions between May 2020 and December 2020. (ECF 5-1, ¶ 24.)

**C. The Aukey Technology Company, Ltd.**

19. The Aukey Technology Company was founded over a decade ago, and has built a thriving, profitable business, a valuable international brand, and a reputation for reliable consumer electronics and mobile tech accessories. *See* https://www.aukey.com/about-us.

20. Aukey has expanded its business far beyond its original roots. Aukey operates internationally through a network of distribution partners in more than fifty countries. (*Id.*) Aukey sells a wide array of portable power products, chargers, audio, and cable products through its online store at https://www.aukey.com, and sells through e-commerce platforms around the world including many Amazon national websites.

21. Unlike NOCO, which focuses on jump-starters and battery chargers, Aukey sells a much broader range of products, including through Amazon, many under its registered trademark TACKLIFE® and the associated brand. (*See* ECF 11-1, ¶¶ 17-18.)

### D. The Shi Declaration I: Amazon Policies and the Amazon-Aukey Relationship

22. Amazon has established and enforces policies regulating its Sellers' conduct, including policies about the products and their listings (including proper Browse Node selection), intellectual property protection, and others. (*Id.*, ¶¶ 10-16.)

23. Aukey has never "coerced" Amazon or Amazon employees. (*Id.*, ¶¶ 5-6.)

24. Aukey has never conspired with Amazon or its employees. (*Id.*, ¶ 7.)

25. Aukey communicates with Amazon employees through ordinary commercial channels established by Amazon as part of the business relationship. (*Id.*, ¶¶ 5, 7.)

26. Aukey has heard nothing about the alleged Amazon investigation; there have been no communications between Aukey and Amazon related to NOCO's allegations. (*Id.*, ¶ 21.)

27. The Aukey Technology Company, Ltd. is privately-held, and its finances and exact sales figures are confidential. But Amazon is a major sales channel for Aukey. (*See id.*, ¶¶ 17-19.)

28. There are roughly 600 TACKLIFE-branded products sold through the Amazon (US) Marketplace, of which about a dozen compete with NOCO. (*Id.,* ¶ 17.)

29. The Aukey Technology Co., Ltd.'s revenue from the sales of TACKLIFE products through Amazon exceeds $100,000,000 per year, and the abrupt loss of the Amazon (US) Marketplace as a sales channel for TACKLIFE, with the corresponding lost revenue, would have a devastating effect on Aukey, its employees, and third-party suppliers. (*See id.,* ¶¶ 18-19.)

### E. The Supplemental Shi Declaration – Detailed Background on Shi Wenyu

30. Ms. Shi Weyu provided the initial Shi Declaration as a corporate representative of the Aukey Technology Co., Ltd. and its related co-defendants. (Exhibit 1 – Supplemental Declaration of Shi Wenyu, dated 01/14/21, ¶ 3.)

31. The factual statements in both Shi Declarations are based on Ms. Shi's personal knowledge and experience. (*Id.,* ¶¶ 3, 5.)

32. Ms. Shi was among the original managers who established Aukey's Amazon's sales operations and has worked with Aukey's Amazon sales for years. As a Senior Operations Manager (Amazon Operations), she now supervises the Aukey Technology Co., Ltd.'s global operations for automotive parts and accessories (including jump-starters) under its TACKLIFE brand – including their sales through the Amazon Marketplace. Her duties and responsibilities include frequent contact with Amazon on topics including Amazon Seller Policies and any complaints or disputes related to TACKLIFE automotive products. (*See id.,* ¶¶ 6-12.)

## II. NOCO MISCHARACTERIZES THE SHI DECLARATION, AND NO CASE NOCO CITES SUPPORTS STRIKING IT FROM THE RECORD.

NOCO's Motion to Strike presents a barrage of assertions and mischaracterizations regarding the Shi Declaration along with citations to cases pulled from various procedural contexts and applying various analyses and legal standards – none of which support striking or refusing to consider the declaration. (*See* ECF 14, 2-5.) NOCO did not clearly articulate an applicable legal standard, but instead asks the Court to exercise its discretion to "strike" or simply ignore ("refuse to consider") the Shi Declaration as allegedly lacking "evidentiary value." (*See id.,* 2.) But while the Court has the discretion to admit or exclude evidence, NOCO provides no convincing reason for the Court to exclude the Shi Declaration.

### 1. Statements of fact in the Shi Declaration are based upon Shi Wenyu's personal knowledge and professional experience.

As the initial Shi Declaration states, and the Supplemental Shi Declaration clarifies and expands upon, the Shi Declaration serves two functions. First, Ms. Shi provides factual testimony based on her personal knowledge and professional experience on topics including Amazon's Seller

Policies, Aukey's TACKLIFE products and sales on Amazon, Aukey's communications with Amazon, and the potential impact of NOCO's requested injunction. (*See* ECF 11-1, ¶¶ 1, 3, 5, 9-16, 17-19; Ex. 1, ¶¶ 1, 3, 5.) Ms. Shi repeatedly stated that she made such statements based on her personal knowledge and experience. (*See* ECF 11-1, ¶¶ 1, 3, 9, 12 & 14.) The Supplemental Shi Declaration establishes beyond reasonable dispute that Ms. Shi has the personal knowledge and experience required to lay a foundation for her testimony. (*See* Ex. 1, ¶¶ 4, 6-12.) NOCO's desire to avoid these topics does not make them irrelevant.

### 2. But when Ms. Shi uses "Aukey" or "we" she speaks on behalf of Defendants.

Second, Ms. Shi also provided her Declaration on behalf of the Defendants ("Aukey") and speaks as a corporate representative of Aukey regarding certain issues beyond the personal knowledge of any single witness. (*Id.*, ¶¶ 3, 5.) These include Aukey's communications with Amazon, the potential impact on Aukey and its suppliers of NOCO's requested injunction, and Aukey's corporate denials of NOCO's unsupported allegations of "coercion" of, "conspiracy" with, and "manipulation" of Amazon. (*See* ECF 11-1, ¶¶ 5, 7-8, 17-19, 21; Ex. 1, ¶¶ 3, 5.)

In sum, there is nothing wrong with or unclear about Ms. Shi's testimony. That testimony is relevant to disputed issues in the case, and the Supplemental Shi Declaration alleviates any concerns regarding foundation and agency. (*See* Ex. 1, *passim.*)

### 3. NOCO cites no cases suggesting the Court should exclude the Shi Declaration.

NOCO first cites two appellate cases for the unremarkable principle that courts may exclude witness statements.[2] (ECF 14, 2.) However, in both of those cases the trial court had excluded proffered testimony based on Federal Rule of Evidence 403 after concluding that its

---

[2] NOCO's citation to *Fidelity Brokerage Services LLC v. Clemens,* No. 2:13-cv-239, 2013 WL 5936671 (E.D. Tenn. Nov. 4, 2013) may be an error. That opinion does not discuss excluding evidence. *Id., passim.*

7

probative value was outweighed by prejudice, confusion, or waste of time. *See Goodman v. Ill. Dept. of Fin. & Prof. Regulation,* 430 F.3d 432, 438-39 (7th Cir. 2005); *Muzquiz v. W. A. Foote Memorial Hospital, Inc.,* 70 F.3d 422, 428-29 (6th Cir. 1995). NOCO's motion never cites that rule and presents no Rule 403 analysis.

Moreover, the *Goodman* panel did not "reach the issue of whether the district court abused its discretion by not admitting the affidavits, because any error was harmless." *Goodman,* 430 F.3d at 440. The *Muzquiz* case was a jury trial involving alleged employment discrimination in cardiac catheter certification, and the excluded evidence included subjective opinions regarding racial and ethnic discrimination at the hospital. *See Muzquiz,* 70 F.3d at 429. The procedural posture, the presence of a jury, the nature of the case and the evidence excluded makes *Muzquiz* drastically different from this case, in which NOCO seeks to a sworn declaration at the preliminary injunction stage in an unfair competition case. Neither *Goodman* nor *Muzquiz* support NOCO's contention that the Court should strike the Shi Declaration.

NOCO goes on to argue that the Court should strike the Shi Declaration because its occasional use of the phrase "upon information and belief" allegedly renders the Shi Declaration "unsupported speculation." (ECF 14, 3.) But NOCO's position is unsupported and unpersuasive.

First, NOCO drastically overstates the extent to which the Shi Declaration relies upon information and belief rather than personal knowledge. (*See* ECF 11-1 & Ex. 1.) Second, as discussed above, reviewing the Shi Declaration (particularly in view of the Supplemental Shi Declaration), shows that Ms. Shi has the personal knowledge and experience to discuss, for example, Amazon's Seller Policies, Aukey's communications with Amazon, Aukey's TACKLIFE products, TACKLIFE sales through Amazon, and the impact on Aukey and its suppliers of NOCO's requested injunction. But on certain issues, as stated above and in the

Declarations, Ms. Shi has spoken as a corporate representative of Aukey and its co-Defendants on certain issues beyond the knowledge of any one witness. (*See* Ex. 1, ¶ 5.) As NOCO's counsel must know, this is neither unusual in litigation nor inherently objectionable. *See, e.g.,* Fed. R. Civ. P. 30(b)(6) (corporate depositions).

The cases NOCO cites suggests that its vigorous insistence that all statements in the Shi Declaration must be based on personal knowledge rather than "upon information and belief" derives from Federal Rule of Evidence 56(c)(4), which states: "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Evid. 56(c)(4). (*See* ECF 14, 3.) Yet NOCO's motion never cites that rule for the simple reason that – as noted in one of the very cases NOCO cites -- this standard applies ***at summary judgment***. *See, e.g., Country Fare LLC v. Lucerne Farms*, No. 3:11-cv-722, 2011 WL 2222315, at *9 (D. Conn. June 7, 2011) (requirements of Rule 56(c)(4) are not applicable in the preliminary injunction setting). Moreover, in none of NOCO's cases was the affidavit in question stricken from the record. Instead, those courts noted that statements made "upon information and belief" were not as persuasive as those based upon a demonstrated foundation of personal knowledge. The foundation and evidence supporting each statement affected the weight the courts accorded the evidence, not its admissibility. The same principle applies to the Shi Declaration.

### III. CONCLUSION

In sum, for all the reasons set forth above and in the Supplemental Shi Declaration, and for good cause shown, the Court should deny NOCO's Motion to Strike.

Respectfully submitted,

/s/ *Jay R. Campbell*
Jay R. Campbell (0041293)
David A. Bernstein (0093955)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:  jay.campbell@tuckerellis.com
  david.bernstein@tuckerellis.com


/s/ Peter J. Curtin
Peter J. Curtin (*pro hac vice*)
Yichen Cao, Ph.D.
Yu Di
Diego F. Freire
**ARCH & LAKE LLP**
203 North LaSalle Street, Suite 2100
Chicago, IL 60601
(312) 558-1369
(312) 614-1873 (fax)
pete_curtin@archlakelaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2021 a copy of the foregoing Defendants' Brief in Opposition to NOCO's Motion to Strike was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

*/s/ Jay R. Campbell*
Jay R. Campbell (0041293)

*Attorney for Defendants*