UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE NOCO COMPANY, | ) | Case No.: 1:20 CV 2322 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| AUKEY TECHNOLOGY CO. LTD., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are Plaintiff The NOCO Company's ("NOCO") Motion for Preliminary Injunction (ECF No. 5); Motion for Expedited Discovery (ECF No. 10); Motion to Strike (ECF No. 14) the declaration Defendants submitted with their Response in Opposition to the Motion for Preliminary Injunction; and Omnibus Motion for Leave to Supplement the Record, Order and Hearing to Show Cause, and Leave to Amend Requested Injunctive Relief (ECF No. 20). For the following reasons, the court denies the Motion for Preliminary Injunction, Motion for Expedited Discovery, and Motion to Strike. As for the Omnibus Motion, the court grants NOCO's request to supplement the record but otherwise denies the Motion.

**I. BACKGROUND**

**A.    Facts**

NOCO and Defendant Aukey Technology Co., Ltd. ("Aukey") manufacture competing products, such as battery chargers and jump starters, which they sell on the Amazon Marketplace.

Defendants Shenzhenshi Jaingyun Shangmaoyouxiangongsi ("HuiMing") and Wodeshijikeji Shenzhen Youxiangongsi ("WorldUS") (collectively, the "3P Defendants") are third-party sellers that operate Amazon storefronts selling Aukey's products. Collectively, Aukey and the 3P Defendants are related business entities based in China that share the same address for purposes of service under the Hague Convention.

According to NOCO, Defendants have engaged in a sustained conspiracy "with one another and Amazon Insiders to manipulate the Amazon Marketplace," thereby boosting Defendants' sales and harming NOCO's. (Compl. ¶ 10, ECF No. 1.) NOCO specifically alleges two forms of manipulation. First, that Defendants removed NOCO products from Amazon's search categories, called "Browse Nodes," which hindered consumers' ability to find those products on the Amazon Marketplace and caused NOCO to lose Amazon-awarded accolades marking NOCO's status as a top seller, such as the "Best Seller Badge" and "Amazon's Choice Badge" (the "Browse Node manipulation"). (*Id.* ¶¶ 59–63.) Second, that Defendants manipulated product reviews to make NOCO's products appear unsafe, resulting in lower customer ratings and, in some instances, removal from the Amazon Marketplace (the "Product Review manipulation"). (*Id.* ¶¶ 64–68.)

NOCO asserts that it discovered this manipulation in early 2020 when it "experienc[ed] an unexpected decrease in sales of certain NOCO products on the Amazon Marketplace." (Nook Aff. ¶ 7, ECF No. 5-1.) After its products were repeatedly removed from their designated Browse Nodes, NOCO reported the problem to Amazon and requested an investigation. (*Id.* ¶ 12.) Through its subsequent inquiry, Amazon apparently determined that some of its internal seller teams in China and India were responsible for deleting NOCO products from their Browse Nodes. (*Id.* ¶ 13.) Amazon further concluded that its seller teams took these actions based on requests from

Defendants. (*Id.* ¶ 17.) In response, Amazon directed its employees to stop removing NOCO's products from the Browse Nodes. But NOCO, seeking stronger repercussions, asked Amazon to remove Defendants' products from the Amazon Marketplace. (*Id.* ¶ 19.) Amazon initially declined, explaining that it had referred the matter to its Abuse Team to determine whether further action was appropriate. (*Id.* ¶ 20.) But it appears Amazon has since suspended Aukey's accounts and removed its products from the Amazon Marketplace. (*See* Omnibus Mot. at PageID #274–75, ECF No. 20.)

**B.     Procedural History**

NOCO filed the Complaint in this case on October 13, 2020, asserting four claims: violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Claim One); violations of Ohio's Deceptive Trade Practices Act, O.R.C. § 4165.02 (Claim Two); tortious interference with a business relationship (Claim Three); and civil conspiracy (Claim Four). (Compl. ¶¶ 89–117, ECF No. 1.) The Complaint asserts that Defendants' alleged manipulation has caused NOCO millions of dollars in lost product sales as well as damage to its brand. (*Id.* ¶¶ 68, 80.)

There has been a flurry of filings since then. On November 2, 2020, three weeks after the Complaint, NOCO filed a motion seeking to reassign this case from Judge Pamela Barker to this court. (ECF No. 4.) A month after that, on December 4, 2020, NOCO filed its Motion for Preliminary Injunction. (ECF No. 5.) And a few days later, NOCO filed its Motion for Expedited Discovery. (ECF No. 10.) Defendants filed Responses opposing NOCO's Motion for Preliminary Injunction and Motion for Expedited Discovery on December 18, 2020, and December 22, 2020, respectively. (ECF Nos. 11, 12.) On December 31, 2020, after seeking and receiving an extension of time, NOCO filed Replies as well as a new Motion asking the court to strike the declaration that Defendants attached to their brief opposing the injunction. (ECF Nos. 13, 14, 15.) Defendants

opposed NOCO's Motion to Strike on January 14, 2021, and NOCO filed a Reply on January 21, 2021. (ECF Nos. 16, 17.) Most recently, on May 20, 2021, NOCO filed its Omnibus Motion to note that Amazon suspended Aukey from the Amazon Marketplace, allegedly as part of a crackdown on fraudulent product reviews. (ECF No. 20.) Defendants filed a Response (ECF No. 21) opposing the Omnibus Motion on June 3, 2021, and NOCO filed a Reply (ECF No. 22) on June 10, 2021.

## II. LEGAL STANDARD

A preliminary injunction under Federal Rule of Civil Procedure 65 is an "is an extraordinary and drastic remedy." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). The moving party therefore must show that the circumstances clearly demand it. *Id.* Courts consider four factors when deciding whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Id.* (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). These factors apply in aggregate and must be balanced rather than treated as "prerequisites to be met." *Id.* But while no single factor is controlling, the first two—likelihood of success on the merits and irreparable harm—predominate the preliminary injunction analysis. *See O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015); *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020).

## III. LAW AND ANALYSIS

### A. Service of Process

As an initial matter, the court notes NOCO's admission that it "is in the process of effecting service pursuant to the Hague Convention and has notified Defendants of the lawsuit," but it has not yet completed service of process. (Mot. for Prelim. Inj. at PageID #52, ECF No. 5.) Generally, courts will not entertain a motion for preliminary injunction before service of process. Some courts have made an exception when, as in this case, the defendant is a foreign entity that has received actual notice of the lawsuit and the movant has attempted to complete service under the Hague Convention. *See Midmark Corp. v. Janak Healthcare Priv. Ltd.*, No. 3:14-CV-088, 2014 WL 1513009, at *2 (S.D. Ohio Apr. 16, 2014). Courts also have found it appropriate in limited circumstances to extend a temporary restraining order ("TRO") or to convert a TRO into a preliminary injunction before the completion of service. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, No. 2:11-CV-00742, 2011 WL 4368418, at *2 (E.D. Wis. Sept. 19, 2011). But as Defendants point out, courts typically excise these powers only when necessary to preserve "the status quo pending service of process." (Resp. at PageID #91, ECF No. 11 (quoting *Midmark Corp.*, 2014 WL 1513009, at *2).) And, here, NOCO seeks to do the opposite: upend the status quo with an extraordinary injunction permanently barring Defendants from engaging in commerce on the Amazon Marketplace.[1] Because the court is not convinced of the propriety of such drastic action prior to proper service, the court finds that NOCO's procedural failures constitute an independent basis for denying its Motion for

---

[1] Even assuming Amazon's decision to ban Defendants from the Amazon Marketplace constitutes the new "status quo," as NOCO suggests, (*see* NOCO's Reply in Supp. of Omnibus Mot. at PageID #292–93, ECF No. 22), injunctive relief is not warranted for all the reasons described below.

Preliminary Injunction. But, regardless, even if the court has authority to enter a preliminary injunction at this juncture, the court declines to do so because NOCO's arguments fail on the merits.

**B.     Motion to Strike**

Before turning to these merits, the court briefly addresses NOCO's Motion to Strike. Just as NOCO submitted an affidavit from one of its corporate officers to support its Motion for Preliminary Injunction, (ECF No. 5-1, the "Nook Affidavit"), Defendants submitted a declaration from a company official who oversees Aukey's products on the Amazon Marketplace, (ECF No. 11-1, the "Shi Declaration"). Yet NOCO objects to the Shi Declaration, arguing that it lacks "any factual averments to refute NOCO's claims" and merely offers "a series of conclusory legal statements based solely upon Shi's 'information and belief.'" (Mot. to Strike at PageID #200, ECF No. 14.) In other words, NOCO urges the court to strike the declaration as irrelevant. (*Id.* at PageID #200–01.)

Defendants refute NOCO's claims and maintain that it would be improper to strike the Shi Declaration. First, Defendants argue that NOCO mischaracterizes the nature of the declaration. In an attempt to clarify, Defendants submitted a supplemental declaration from Shi, (ECF No. 16-1, the "Supplemental Declaration"), which bolsters the foundation for Shi's averments and explains that the phrase "upon information and belief" refers to personal knowledge Shi gained through "years of experience working directly with Amazon and supervising Aukey's Amazon sales" and her "communications with peers and colleagues inside the companies to investigate those matters as part of preparing these Declarations on behalf of Aukey." (Suppl. Decl. ¶ 5, ECF No. 16-1.) Second, Defendants argue that even "[i]f the Shi Declaration includes some statements of opinion as well as statements of fact," the appropriate remedy is for "the Court [to] evaluate the entire Declaration and assign each statement the weight it deserves" rather than strike the Shi Declaration from the record.

-6-

(Resp. to Mot. to. Strike at PageID #244, ECF No. 16.)

The court finds Defendants' argument well-taken. Tellingly, in almost every case NOCO cites, the court did precisely what Defendants propose: instead of striking the affidavit or declaration in question, the courts considered the challenged statements, evaluated whether they were relevant and properly supported, and then decided what weight they deserved. The same approach is appropriate in this case. Accordingly, the court denies NOCO's Motion to Strike.

**C.     Omnibus Motion**

Next, the court addresses NOCO's Omnibus Motion, which reports that "Amazon temporarily suspended Aukey's sale of its 'Tacklife' brand jump starters from the Amazon Marketplace, revoked Aukey's 3P sellers HuiMing and WorldUS selling privileges, and removed additional Aukey products and sellers as well." (Omnibus Mot. at PageID #274, ECF No. 20.) NOCO cites these reports as vindication of its claims as well as proof that Defendants' filings have been false and misleading. Accordingly, NOCO asks the court to issue an order to show cause and hold a hearing to determine whether Defendants lied to the court. (*Id.* at PageID #276.) NOCO also seeks leave to supplement the record with evidence of Amazon's ban and to file an amended request for injunctive relief. After reviewing the parties' arguments, the court grants the Omnibus Motion to the extent NOCO seeks to supplement the record. But NOCO's other requests are not well-taken. Amazon's decision to remove Aukey products from the Amazon Marketplace does not establish that Defendants' conduct was unlawful or that Defendants lied when they denied any wrongdoing. Therefore, the court denies NOCO's request for a show-cause order. And in light of the discussion below regarding the lack of irreparable harm, the court denies as moot NOCO's request to amend.

**D.     Preliminary Injunction**

With those antecedent issues out resolved, the court now turns to the merits of NOCO's Motion for Preliminary Injunction. As discussed above, the preliminary injunction inquiry turns on four factors: (1) the movant's likelihood of success on the merits, (2) whether they face irreparable injury, (3) the balance of the equities, and (4) the public interest. In addressing these factors, the court focuses its analysis on NOCO's allegations regarding Browse Node manipulation. While NOCO's Complaint also describes alleged Product Review manipulation, the Motion for Preliminary Injunction largely omits that theory of harm and, curiously, relies almost exclusively on the Browse Node manipulation. Following NOCO's lead, the court confines its analysis accordingly.[2]

1.  Likelihood of Success

When considering the first factor, likelihood of success on the merits, the court must anticipate the outcome of the underlying lawsuit using the substantive law that will be used at trial. The court addresses each of NOCO's claims in turn.

   *i.  False Advertising (Claims 1 and 2)*

NOCO's first and second claims assert violations of federal and state false advertising laws, specifically the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and Ohio's Deceptive Trade Practices Act, O.R.C. § 4165.02. To prevail on its false advertising claims, NOCO must establish that:

---

[2]     Including the Product Review manipulation allegations in the analysis does not change the outcome. While the allegations that Defendants created false and misleading product reviews possibly could satisfy the "dissemination requirement" that the court discusses below, *see Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 801 (6th Cir. 2015), the record does not substantiate NOCO's claims that the alleged product reviews were false or that Defendants are responsible for creating them. Indeed, NOCO merely asserts that it "believes" that Defendants created the negative reviews. (Compl. ¶ 67, ECF No. 1.) That is not a sufficient basis on which to grant the sweeping injunction that NOCO requests.

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff.

*Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019). The same analysis applies to false advertising claims under the Lanham Act claim and Ohio law. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 725 (N.D. Ohio 2009) ("[A]n analysis appropriate for a determination of liability under . . . the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act." (quoting *HER, Inc. v. RE/MAX First Choice, LLC*, 468 F. Supp. 2d 964, 979 (S.D. Ohio 2007))).

NOCO identifies two "false statements" that allegedly support these claims. First, by "illegally removing NOCO products" from their designated Browse Nodes, Defendants "falsely represent to consumers that NOCO products are not of the type specified" because "consumers are misled into believing that NOCO jump starters are not actually within those Browse Nodes." (Mot. for Prelim. Inj. at PageID #55, ECF No. 5.) Second, by "illegally removing NOCO products," Defendants unfairly obtain Amazon's Seller Badges, which "cause[s] a false statement to be made to the consumer" regarding the popularity of Defendants' products. (*Id.* at PageID #56.)

There are several problems with NOCO's arguments. First, the crux of NOCO's position is that "Defendants are coercing Amazon employees to systematically cause NOCO products to be removed from Browse Nodes without authorization." (*Id.* at PageID #49.) That is, NOCO itself acknowledges that *Amazon employees*, not Defendants, are the ones altering the Browse Nodes. (*See* Resp. to Mot. for. Prelim. Inj. at PageID #94, ECF No. 11 ("[I]f anyone removed or transferred

NOCO product listings, it was Amazon.").) Yet neither Amazon nor its allegedly complicit internal sales teams are parties to this lawsuit. NOCO tries to paper over this hole in its theory by asserting that Defendants illegally "coerced" Amazon's employees to remove NOCO products. But the record contains insufficient evidence of that. Second, even if Defendants' complaints to Amazon are responsible for the removal of NOCO's products, it is not clear that those complaints constitute legally actionable "statements" for purposes of the false advertising statutes. To trigger liability under the Lanham Act, Defendants must have engaged in some "commercial advertising or promotion," which entails disseminating information "either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base." *Grubbs*, 807 F.3d at 801. But based on NOCO's allegations, Defendants merely engaged in private conversations with seller teams at Amazon, and NOCO does not explain how those conversations can be construed as "dissemination" of information to consumers. Given NOCO's allegations and arguments, the only "statements" that plausibly could satisfy the dissemination requirement are the delisting of NOCO's product from the Amazon Marketplace and the subsequent loss of Seller Badges. But, again, Amazon employees took those actions. And based on the current record, which consists of NOCO's Nook Affidavit and not much else, the court finds that NOCO has not offered a sufficient factual or legal basis to attribute those actions to Defendants. In sum, NOCO has failed to demonstrate a strong likelihood of prevailing on the merits of its false advertising claims.

### ii. Tortious Interference (Claim 3)

Next, NOCO asserts a common law claim for tortious interference with a business relationship. Under Ohio law, "tortious interference with a business relationship [occurs] when a

person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." *Havensure, L.L.C. v. Prudential Ins. Co. Of Am.*, 595 F.3d 312, 315 (6th Cir. 2010). To prevail on this claim, NOCO must establish the following elements: (1) a business relationship; (2) Defendants' knowledge of the relationship; (3) Defendants' intentional or improper actions taken to breach or terminate the relationship; (4) a lack of privilege; and (5) resulting damages. *Smith v. Nat'l W. Life*, 92 N.E.3d 169, 175 (Ohio Ct. App. 2017).

NOCO alleges that Defendants' manipulative actions have interfered with NOCO's business relationship with Amazon and consumers. Specifically, NOCO complains that Defendants misled consumers and caused them not to purchase NOCO's products and that Defendants harmed "NOCO's relationship with Amazon, as its algorithms consider sales volume and other performance metrics, such as who receives the [Seller Badges] and other Amazon accolades." (Mot. for Prelim. Inj. at PageID #57, ECF No. 5.)

These arguments run into the same problem as NOCO's false advertising claims: the record does not support a finding that Defendants' alleged actions are improper. The Nook Affidavit avers that NOCO's products have been removed from their designated Browse Nodes "on no less than ten (10) occasions." (Nook Aff. ¶ 24, ECF No. 5-1.) It also states that Amazon's investigation revealed that Defendants "requested that Amazon employees remove NOCO products from the Browse Nodes" and that Amazon responded by reinstating NOCO's products to their Browse Nodes and directing the internal seller teams in China and India to stop removing them. (*Id.* ¶¶ 12–17.) And now, as a result of Amazon's investigation and assignment of fault to Defendants, Amazon has taken corrective measures by removing Aukey's products from the Amazon Marketplace. (Omnibus Mot. at PageID #274–75, ECF No. 20.) But as the court discussed earlier, there is nothing in the record

besides the Nook Affidavit to support a finding that Defendants' alleged conversations with Amazon's seller teams were improper or legally actionable. In other words, despite Amazon's determination that Aukey violated the terms and conditions of the Amazon Marketplace, that does not necessarily mean Aukey's conduct was tortious. Without more evidence to substantiate the alleged wrongdoing, and without a stronger justification to attribute it to Defendants as opposed to Amazon's seller teams, the court finds that NOCO has not demonstrated a strong likelihood of prevailing on the merits of its tortious interference claim.

### iii. Civil Conspiracy (Claim 4)

Finally, NOCO asserts a civil conspiracy claim under Ohio law. The Ohio Supreme Court defines a civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995)). To succeed on this claim, NOCO must establish: (1) a malicious combination; (2) of two or more persons; (3) resulting in injury to a person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Id.*

Here, NOCO alleges that Defendants formed a conspiracy among themselves and jointly engaged in malicious acts—"namely the removal of NOCO products from Browse Nodes"—that "cause[d] NOCO to lose sales on the Amazon Marketplace." (Mot. for Prelim. Inj. at PageID #58, ECF No. 5.) But as with its other claims, NOCO's theory hinges on a finding that (1) the removal of its products from the Browse Nodes was unlawful, and (2) the actions of Amazon employees are attributable to Defendants. Because the court finds the record insufficient on these points, NOCO has failed to demonstrate a strong likelihood of prevailing on the merits of its civil conspiracy claim.

2. Irreparable Harm

As to irreparable harm, "[t]o merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *Memphis A. Philip Randolph Inst.*, 978 F.3d at 391 (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)). As a general rule, "a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 957 (6th Cir. 2013) (quoting *Langley v. Prudential Mortg. Capital Co.*, LLC, 554 F.3d 647, 649 (6th Cir.2009)). On the other hand, the Sixth Circuit recognizes that damage to business reputation and loss of customer goodwill can constitute irreparable harm. *See S. Glazer's Distributors*, 860 F.3d at 852 (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)).

The court finds that NOCO's concerns regarding irreparable harm are moot. By removing Aukey's products from the Amazon Marketplace, Amazon effectively granted the relief that NOCO seeks in its Motion for Preliminary Injunction. Of course, NOCO argues that "Amazon may reinstate Defendants at any time," and therefore NOCO urges the court to reinforce Amazon's ban with a court-ordered permanent injunction "prohibiting Defendants from re-entering or attempting to re-enter the Amazon Marketplace in any form, either directly or indirectly through any parties, to sell any products." (Omnibus Mot. at PageID #275, 277, ECF No. 20.) But NOCO's concern that Amazon could reinstate Aukey is merely speculative and theoretical, as are concerns regarding any harm that allegedly would flow from such reinstatement.

Even if Aukey had not been banned, or assuming its products do return to the Amazon Marketplace, the court remains skeptical of the preliminary injunction because NOCO's primary concern seems to be lost sales and revenues due to the Browse Node manipulation. Because those

-13-

losses are fully compensable through money damages, they do not constitute irreparable harm. *Nat'l Viatical*, 716 F.3d at 957. To the extent NOCO also asserts reputational harm stemming from Defendants' action, the court is not convinced that the injury NOCO identifies—the loss of Amazon's Seller Badges—constitutes a legitimate reputational harm. (*See* Mot. for Prelim. Inj. at PageID #59–60, ECF No. 5.) NOCO argues that the loss of these Badges "alters consumers' perception of NOCO products" and undermines "NOCO's reputation as a top seller of jump starters on the Amazon Marketplace." (*Id.*) It stands to reason that losing Seller Badges may lead to a loss of sales due to reduced product visibility on the Amazon Marketplace. But NOCO does not support its claim that losing the Badges not only depresses sales but also diminishes consumers' perceptions of NOCO's reputation and the quality of its products. Because NOCO "has not adequately established the links in this chain, it has not shown irreparable harm." *GrafTech Int'l Holdings, Inc. v. SANGRAF Int'l, Inc.*, No. 1:14-CV-02658, 2015 WL 471778, at *4 (N.D. Ohio Feb. 4, 2015).

Several other factors underscore the court's doubts. First, NOCO's conduct throughout this case undermines its asserted need for emergency relief. From the start, NOCO delayed initiating this lawsuit and seeking a preliminary injunction. (*See* Resp. to Mot. for Prelim. Inj. at PageID #97, ECF No. 11.) Since then, NOCO's litigation choices—whether strategic or not—have slowed the progress of the case. (*See* Resp. to Mot. to Strike at PageID #244, ECF No. 16 (noting that NOCO's actions "added at least three weeks of briefing to this process which, combined with its request for an extension of time, further undercuts NOCO's claim of irreparable harm requiring injunctive relief").) Indeed, in its recent Omnibus Motion, NOCO seeks more briefing, which would postpone the resolution of these issues even further. (*See* Omnibus Mot. at PageID #273, 277–78, ECF No. 20 (requesting leave to amend its proposed injunction); NOCO's Reply in Supp. of Omnibus Mot. at

PageID #292–93, ECF No. 22 (same).) Given the delays occasioned by NOCO's conduct already and the additional slow down it now requests, NOCO's cries of urgency ring hollow. *See NACCO Indus., Inc. v. Applica Inc.*, No. 1:06-CV-3002, 2006 WL 3762090, at *8 (N.D. Ohio Dec. 20, 2006) (finding "Plaintiffs' own delays to be the most convincing evidence that they will not experience irreparable harm"). Second, as the court mentioned earlier, the Product Review manipulation allegations are noticeably absent from NOCO's Motion for Preliminary Injunction. NOCO's failure to mention these allegations in its discussion of irreparable harm—even though they arguably constitute a clearer threat to NOCO's reputation—suggests that preventing reputational damage is not a driving force behind the requested injunctive relief. Finally, the draconian nature of the injunction that NOCO seeks is only tenuously related to the injuries it asserts. NOCO asks the court to permanently bar Defendants from one of America's largest consumer markets, potentially causing them to incur hundreds of millions of dollars in lost sales. But how this would redress NOCO's injuries or prevent future harm, NOCO does not say. This missing link speaks volumes and leads the court to conclude that NOCO's proposed remedy is more punitive than productive.

After weighing all of these considerations, the court finds little threat that NOCO will suffer irreparable harm absent a preliminary injunction.

### 3. Balance of Equities and Public Interest

Given the court's conclusion on the first two factors, an extended analysis of the third and fourth factors is unnecessary. It is sufficient to say that neither the balance of the equities nor the public interest overcomes NOCO's failure to establish likelihood of success on the merits or irreparable harm. Indeed, if anything, the final two factors further support denying the Motion because the sweeping injunction NOCO seeks could cause knock-on effects harming third-parties,

including Amazon and consumers, and it is divorced from the underlying harms NOCO asserts.

**E.     Expedited Discovery**

Finally, the court addresses NOCO's Motion for Expedited Discovery. NOCO premises its request for early discovery on its asserted need to prepare for a preliminary injunction hearing. (*See* Mot. for Expedited Disc. at PageID #80, ECF No. 10.) Consequently, having already denied NOCO's Motion for Preliminary Injunction, the court finds no reason to allow expedited discovery. Accordingly, the court denies the Motion.

### IV.  CONCLUSION

For the foregoing reasons, the court denies the Motion for Preliminary Injunction (ECF No. 5), Motion for Expedited Discovery (ECF No. 10), and Motion to Strike (ECF No. 14). As for the Omnibus Motion (ECF No. 20), the court grants NOCO's request to supplement the record but denies the Motion in all other respects.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

June 23, 2021