AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | |
|---|---|
| THE NOCO COMPANY | ) |
| _Plaintiff_ | ) |
| v. | )  Civil Action No.  1:20-cv-02322 |
| AUKEY TECHNOLOGY CO., LTD., et al., | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Amazon.com, Inc. c/o Corporation Service Company, 300 Deschutes Way, SW, Suite 208; Tumwater, WA 98501

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Please see attached Exhibit A.

| Place: Electronic production preferred via email to: Kyle D. Stroup, kds@kjk.com | Date and Time: 02/02/2022 at 5:30 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  01/11/2022

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | /s/ Jon J. Pinney |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ The NOCO Company , who issues or requests this subpoena, are:

Jon J. Pinney, Kohrman Jackson & Krantz LLP, 1375 East Ninth St., 29th Floor, Cleveland, OH 44114; 216-696-8700; jjp@kjk.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT A**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Print     Save As...     Add Attachment     Reset

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition*.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery*.** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions*.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection*.**
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena*.**
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information*.** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection*.**
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **THE NOCO COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO. 1:20-cv-02322** |
| | ) | |
| v. | ) | |
| | ) | **JUDGE SOLOMON OLIVER, JR.** |
| **AUKEY TECHNOLOGY CO., LTD., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## EXHIBIT A TO SUBPOENA DUCES TECUM TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS PURSUANT TO FED. R. CIV. P. 45

### SCHEDULE OF SUBPOENAED DOCUMENTS

At the outset, it is important to note that if You should require additional identifying or clarifying information, please contact NOCO's counsel, Jon J. Pinney, Korhman Jackson & Krantz LLP, One Cleveland Center, 1375 East Ninth Street, 29th Floor, Cleveland, Ohio 44114, by phone at 216-696-8700 or by email at jjp@kjk.com and additional information will be provided.

### DEFINITIONS

1.      The terms "You," "Your," and "Amazon" mean and refer to Amazon.com, Inc. and its current and former employees, vendors, contractors, representatives, affiliates, and/or anyone acting on its behalf, as well as its current and former agents, associates, attorneys, directors, executives, managers, partners, personnel,

representatives, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

2.    The term "NOCO" means and refers to Plaintiff The NOCO Company and its current and former employees, vendors, contractors, representatives, affiliates, and/or anyone acting on its behalf, as well as its current and former agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

3.    "Aukey" means and refers to Defendant Aukey Technology Co., Ltd. and its current and former employees, vendors, contractors, representatives, affiliates, and/or anyone acting on its behalf, as well as its current and former agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

4.    "HuiMing" means and refers to Defendant Shenzhenshi Jiangyun Shangmaoyouxiangongsi a former third-party seller on the Amazon Marketplace who operated a "Tacklife Auto Store" and "HuiMing" storefront with a unique Amazon Marketplace storefront found at https://www.amazon.com/s?me=AXPPSCJRMAK3H &marketplaceID=ATVPDKIKX0DER. "HuiMing" also includes its current and former employees, vendors, contractors, representatives, affiliates, and/or anyone acting on its behalf, as well as its current and former agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any

2

other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

5.      "WorldUS" means and refers to Defendant Wodeshijikeji Shenzhen Youxiangongsi a former third-party seller on the Amazon Marketplace who operated a "WorldUS" storefront with a unique Amazon Marketplace storefront found at https://www.amazon.com/s?me=A3FT6M013JLBV2&marketplaceID= ATVPDKIKX0DER. "WorldUS" also includes its current and former employees, vendors, contractors, representatives, affiliates, and/or anyone acting on its behalf, as well as its current and former agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

6.      "Defendants" means and refers, collectively, to Aukey, HuiMing, and WorldUS.

7.      "3P Defendants" means and refers, collectively, to HuiMing and WorldUS.

8.      "Amazon Marketplace" means and refers to Your e-commerce platform that is accessible to the public via the internet at the website URL amazon.com. For clarity, the Amazon Marketplace lists items for sale from a seller's account, such as NOCO or 3P Defendants' seller accounts, such that consumers can purchase, view, review, rate, and otherwise interact with the respective product pages listed on the Amazon Marketplace.

3

9.     "Tacklife Trademarks" means and refers to the trademarks registered to Aukey with the United States Patent and Trademark Office, Registration Numbers 6022427, 6005412, 5245543, and 4913016.

10.     "Tacklife Product" and "Tacklife Products" mean and refer to those certain products currently or previously sold by one or more Defendants on the Amazon Marketplace that bear the Tacklife Trademark.

11.     "Action" means the case pending in the United States District Court, Northern District of Ohio, styled *The NOCO Company vs. Aukey Technology Co., Ltd., et al.,* Case No. 1:20-cv-02322.

12.     "Complaint" means and refers to the complaint filed in the Action on October 13, 2020. For reference, the Complaint is attached as **Exhibit 1**.

13.     As used herein, the terms "NOCO Product" or "NOCO Products" mean and refer to any and all items listed for sale or sold by NOCO or You on the Amazon Marketplace during the Relevant Time Period. For illustration, NOCO Products include, without limitation, the items listed for sale on the Amazon Marketplace at https://www.amazon.com/stores/NOCO/page/7428E5DB-99DF-42C9-8687-789F696FFDF3?ref_=ast_bln and the extensions thereto.

14.     "NOCO's Vendor Account" means and refers to NOCO's Amazon account that NOCO uses to list items for sale on the Amazon Marketplace. For clarity, NOCO's Vendor Account is identified internally at Amazon as vendor code NOCAR.

15.     "NOCO's Advertising Account" means and refers to NOCO's Amazon account that NOCO uses to facilitate, create, or otherwise advertise NOCO Products on the Amazon Marketplace. For clarity, NOCO's Advertising Account is identified

internally at Amazon as entity identifications: ENTITY18F4KJA1EEG86, ENTITY2HPDMSU82QNW, and ENTITYG8VWER2CGMFZ.

16.     "Amazon XWiki" means and refers to Your XWiki platform where Your employees, representatives, agents, contractors, and affiliates post information and create and develop content as a collaborative knowledge sharing and documentation platform. "Amazon XWiki" also means and refers to all similar internal collaborative knowledge sharing and documentation platforms You utilized during the Relevant Time Period that may have been held under different names or through different software platforms.

17.     "Browse Nodes" means and refers to the hierarchy of categories, including, but not limited, to branch and leaf nodes, that are used to organize the Amazon Marketplace's product listings for a given category of products. For example and clarity, but without limitation, NOCO Products are placed into certain Browse Nodes such as those Browse Nodes titled "Automotive Replacement Batteries & Accessories," "Automotive Performance Batteries & Accessories," and "Jump Starters."

18.     The term "Best Seller Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a best-selling product in a Browse Node. For example, below the Best Seller Badge is awarded to a product in the "Automotive Replacement Batteries & Accessories" Browse Node.



5

19.    The term "Amazon Choice Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a product chosen by Amazon with distinction. For example, below the Amazon Choice Badge is awarded to a product for the term "jump starter."



20.    "IP Address" is used in the broadest sense possible to include, without limitation, IPv4 and IPv6 addresses of connected devices on the internet of things.

21.    "ASIN" or "ASINs" means and refers to Amazon's standard identification number which is a ten-digit alphanumeric code that You use to identify products sold or listed for sale on the Amazon Marketplace.

22.    As used herein, "The Takedown" means and refers to the action taken by or on behalf of Amazon delist, remove, or otherwise prohibit any one or more of Defendants from selling on the Amazon Marketplace. For clarity, The Takedown is detailed in the following articles:

- *Amazon Fake Reviews Scam Exposed in Data Breach*, SAFETYDETECTIVES, May 6, 2021, https://www.safetydetectives.com/blog/amazon-reviews-leak-report/.

- Imad Khan, *Aukey Kicked Off Amazon Following Fake Reviews Allegations [Update]*, TOM'S GUIDE, May 11, 2021, https://www.tomsguide.com/news/aukey-kicked-off-amazon-following-fake-reviews-allegations.

- *Amazon Suspends Amazon-Native Brands Mpow and Aukey*, MARKETPLACE PULSE, May 11, 2021, https://www.marketplacepulse.com/articles/amazon-suspends-amazon-native-brands-mpow-and-aukey.

6

23.     As used herein, "Data Breach" means and refers to the specific release, finding, or uncovering of data on an ElasticSearch database on or around March 1, 2020, that precipitated or otherwise preceded The Takedown and may have revealed Communications and Documents related to or concerning inauthentic and/or false reviews of products on the Amazon Marketplace as well as violations of Your policies pertaining to the Amazon Marketplace.

24.     The terms "investigation," "audit," "inspection," "examination," or "inquiry" mean and refer to, in addition to their customary and usual meaning, any steps, processes, procedures, or actions taken by or on behalf of Amazon in response to, with regard, or concerning the Browse Nodes, The Takedown, and/or the Data Breach.

25.     "Seller Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Your employees, representatives, contractors, or agents that assist or otherwise support sellers on the Amazon Marketplace, such as NOCO.

26.     "Abuse Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Your employees, representatives, contractors, or agents that research, investigate, audit, or otherwise examine reports, claims, or statements of manipulation, violation, or exploitation of or on the Amazon Marketplace and Your policies.

27.     "Automotive Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Your employees, representatives, contractors, or agents that assist or otherwise support the

7

"Automotive" category of products, including NOCO Products and Tacklife Products, sold or offered for sale on the Amazon Marketplace.

28.     The term "SIM Ticket" means and refers to Your simple issue management system and all other issue management tracking tools, software, or instruments.

29.     "Communication" shall have the broadest definition and scope possible under federal law and includes every manner of means of disclosure, transfer, exchange of information, fact, idea, or inquiry, whether orally or written, whether face-to-face or electronically, or by telephone, telecopies, mail, email, facsimile, personal delivery, overnight delivery, electronic messages, including, but not limited to, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom, or otherwise, including all transfer of information on, across, or through the Amazon XWiki or Your similar collaborative knowledge sharing or documentation platforms. All such Communications in writing shall include, without limitation, printed, typed, handwritten, or other human or machine-readable documents.

30.     The term "Document" or "Documents" includes Electronically Stored Information and Communications and is used in the broadest possible sense and means and refers to, without limitation, all materials discoverable under the applicable Federal Rules of Civil Procedure that are within Your possession, custody, or control, or that of any agent, representative (including, without limitation, attorneys), or other person acting or purporting to act for or on Your behalf or in concert with You. Without limiting the forgoing definition, Documents and Electronically Stored Information

8

include Writings,[1] and Recordings,[2] and Photographs.[3] Examples of these include: drawings; graphs; charts; correspondence; letters; memoranda; facsimiles; records; medical records; summaries of personal conversations or interviews; wires; telegrams; reports; books; transcripts; legal pleadings and papers; summaries or records of telephone conversations (including telephone and mobile telephone billing records); diaries; journals; forecasts; statistical statements; work papers; accounts; account records; bank statements; receipts; automated teller machine receipts or printouts; credit card statements or records; analytical records; agendas, minutes or records of meetings or conferences; consultants' reports; employment records; appraisals; agreements; reports or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; notes; lists; notices; advertising; changelogs; log data; audit trails; audit or investigation summaries; any form of data compilation from which information can be obtained, including for illustrative purposes, but not limited to, all electronic data (including all electronic mail and information about electronic mail, including message contents, header information, and logs of electronic mail system usage, whether sent internally or externally); voice mails; text messages; electronic messages through software, including without limitation, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom; on-line data storage on mainframes,

---

[1] The term "Writings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(a).

[2] The term "Recordings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(b).

[3] The term "Photographs" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(c).

9

minicomputers, personal computers, and laptops; off-line data storage, backups, and archives; floppy disks; zip drives; zip files; tapes; compact disks or diskettes; hand-held devices or personal digital assistants; disconnected hard drives and other removable electronic media; application programs and utilities; and all sound reproductions, however produced or reproduced.

31.     The term "Electronically Stored Information" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained that are in Your possession, custody, or control.

32.     As used herein, "person" means any natural person, or any legal, foreign, or judicial entity, including but not limited to any corporation, limited liability company, business trust, estate, trust, partnership, proprietorship, association, foundation, organization, joint venture, governmental entities, group of persons, or any other entity or form of organization, foreign or domestic.

33.     The terms "and" and "or" shall be construed disjunctively or conjunctively to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

34.     The term "any" shall be construed to include "all" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

35.     The term "each" shall be construed to include "every" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

10

36.     Any word or term in the singular form shall also be construed as plural and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

37.     The masculine form shall also be construed to include the feminine and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

38.     The term "concerning," in addition to its usual and customary meaning, shall have the broadest definition and scope possible under the federal law and shall include, without limitation, constituting, comprising, containing, consisting of, displaying, embodying, including, setting forth, proposing, showing, evidencing, disclosing, describing, discussing, explaining, summarizing, concerning, reflecting, regarding, authorizing, relating to, or referring to, directly or indirectly.

39.     The terms "all" and "each" shall be construed as all and each.

40.     The term "including" means "including but not limited to."

41.     "Evidencing," "relating," "relate to," "relate," or "related," in addition to their usual and customary meanings, shall mean referring to, pertaining to, concerning, describing, discussing, commenting on, constituting, comprising, explaining, showing, analyzing, evidencing, supporting or contracting, directly or indirectly, whether in whole or in part.

42.     Unless otherwise set forth herein, this Subpoena seeks information concerning the period of time between January 1, 2019 through the date of actual production, inclusive of the start and end dates (the "Relevant Time Period"). This

11

subpoena seeks information that refers or relates to the Relevant Time Period, regardless of when the information was prepared.

## INSTRUCTIONS

1.     You are instructed to produce Documents either as they are kept in the usual course of business or to produce Documents organized and labeled to correspond with the categories in this Subpoena.

2.     You are also instructed to produce Documents electronically and no personal appearance is required, if possible, in compliance with relevant local, state, and federal coronavirus disease (COVID-19) outbreak guidelines.

3.     This Subpoena shall be deemed continuing in nature so as to require further supplemental production in the event that You obtain or discover additional information or documents between the time of the initial production and the time of hearing or trial.

4.     Each request for Documents requires the production of all Documents described herein, including drafts and non-identical copies.

5.     Each request for Documents requires the production of all Documents described herein in Your possession, custody, or control.

6.     In the event that any Document called for in this Subpoena has been destroyed, lost, discarded, or otherwise is not capable of being produced by the time Your response to the Subpoena becomes due, You are required to identify such Document; indicate the paragraph(s) of this Subpoena to which such Document is related; and set forth the circumstances under which the Document was destroyed or

discarded or provide an explanation of why the Document is not capable of being produced.

7.     In the event any Document called for in this Subpoena is to be withheld on the basis of a claim of privilege, work product or other ground of non-production, a list is to be furnished at the time that Documents are produced identifying any such Document for which the privilege is claimed specifically by its nature (*e.g.,* letter, memorandum, etc.) together with the following information with respect to any such Document withheld: author(s), recipient(s), sender(s), indicated or blind copies, date, subject matter, basis on which the privilege is claimed, number of pages, and the paragraphs of this Subpoena to which such Document relates.

8.     If a portion of an otherwise responsive Document contains information subject to a claim of privilege, those portions of the Document subject to the claim of privilege shall be redacted from the Document and the rest of the Document shall be produced.

## REQUEST FOR DOCUMENTS

This Subpoena extends to all below-described Documents that pertain to the Relevant Time Period.

1.     All Documents or Communications that concern, relate to, or otherwise evidence the identity, username, legal name, time, geographical location, IP Address, information downloaded, or metadata associated with any person who logged in or on, signed in or on, or otherwise accessed NOCO's Vendor Account or NOCO's Advertising Account.

13

2.      All Documents or Communications that concern, relate to, or otherwise evidence any investigation, audit, inspection, examination, or inquiry into NOCO's Vendor Account or NOCO's Advertising Account, including without limitation any SIM Tickets.

3.      All Documents or Communications You exchanged, shared, or otherwise had with any one or more of Defendants concerning, regarding, or related to the Browse Nodes, the Data Breach, or The Takedown.

4.      All Documents or Communications that concern, relate to, or otherwise evidence any changes, modifications, or alterations of NOCO Products or Tacklife Products concerning or regarding the Browse Nodes, including: (i) the identity, username, legal name, time, date, geographical location, IP Address, or metadata associated with any person who requested, carried out, completed, or executed a change, modification, or alteration; (ii) any justification, basis, or reason for any change, modification, or alteration; or (iii) any method, technique, practice, procedure, or process for such change, modification, or alteration, including, but not limited to, the following dates:

14

- June 4, 2020
- June 6, 2020
- June 9, 2020
- June 13, 2020
- June 14, 2020
- June 17, 2020
- June 24, 200
- July 4, 2020
- July 9, 2020
- July 14, 2020

- July 31, 2020
- August 3, 2020
- August 6, 2020
- August 12, 2020
- August 14, 2020
- August 15, 2020
- August 24, 2020
- September 12, 2020
- September 16, 2020
- September 25, 2020

- November 23, 2020
- November 29, 2020
- November 30, 2020
- December 2, 2020
- December 3, 2020
- January 22, 2021
- January 23, 2021
- January 27, 2021
- January 28, 2021
- February 2, 2021

5.      All Documents or Communications that concern, relate to, or otherwise evidence any investigation, audit, inspection, examination, or inquiry into any alteration, modification, or changes of the Browse Nodes concerning or regarding NOCO Products or Tacklife Products, including: (i) the identities, legal names, usernames, geographical location, date, time, IP Address, or metadata associated with any person who investigated, audited, inspected, examined, or inquired about any change, modification, or alteration; (ii) any justification, basis, or reason for any investigation, audit, inspection, examination, or inquiry regarding or concerning any change, modification, or alteration; or (iii) any method, technique, practice, procedure, or process for such investigation, audit, inspection, examination, or inquiry regarding or concerning such change, modification, or alteration, including, but not limited to, the following dates:

15

- June 4, 2020
- June 6, 2020
- June 9, 2020
- June 13, 2020
- June 14, 2020
- June 17, 2020
- June 24, 200
- July 4, 2020
- July 9, 2020
- July 14, 2020

- July 31, 2020
- August 3, 2020
- August 6, 2020
- August 12, 2020
- August 14, 2020
- August 15, 2020
- August 24, 2020
- September 12, 2020
- September 16, 2020
- September 25, 2020

- November 23, 2020
- November 29, 2020
- November 30, 2020
- December 2, 2020
- December 3, 2020
- January 22, 2021
- January 23, 2021
- January 27, 2021
- January 28, 2021
- February 2, 2021

6.      All Documents or Communications concerning, regarding, or otherwise relating to any investigation, audit, inspection, examination, or inquiry by You, including a Seller Team, an Abuse Team, or an Automotive Team, concerning or regarding NOCO Products or Tacklife Products with respect to the Browse Nodes.

7.      All Documents or Communications concerning, regarding, or otherwise relating to any safeguards, measures, permissions, gating mechanisms, or other implementations related to or concerning NOCO Products or Tacklife Products with respect to the Browse Nodes, including: (i) the identity, username, legal name, time, date, geographical location, IP Address, or metadata associated with any safeguards, measures, permissions, gating mechanisms, or other implementations; (ii) any justification, basis, or reasons for any safeguards, measures, permissions, gating mechanisms, or other implementations; or (iii) any method, technique, practice, procedure, or process for such safeguards, measures, permissions, gating mechanisms, or other implementations.

16

8.     All Documents or Communications that concern, relate to, or otherwise evidence any investigation, audit, inspection, examination, or inquiry by You, including a Seller Team, an Abuse Team, or an Automotive Team, into any alterations, modifications, or changes of the Browse Nodes concerning or regarding NOCO Products.

9.     All Documents or Communications that concern, relate to, or otherwise evidence Your response, processes, procedures, steps, or actions taken, carried out, or implemented concerning, relating to, or evidencing any one or more of Defendants' requests to alter, modify, change, command, inquiry about, or any other correspondence related to a Browse Node with respect to NOCO Products or Tacklife Products.

10.     All Documents or Communications that concern, relate to, or otherwise evidence any change, modification, or alteration of a Browse Node concerning or regarding NOCO Products.

11.     All Documents or Communications that concern, relate to, or otherwise evidence The Takedown or Data Breach concerning or regarding any of the Defendants, Tacklife Products, NOCO Products, or NOCO.

12.     All Documents or Communications that concern, relate to, or otherwise evidence Your investigation, audit, report, or other response to the Takedown or Data Breach concerning or regarding any of Defendants, Tacklife Products, NOCO Products, or NOCO.

13.     All Documents or Communications that concern, relate to, or otherwise evidence any justification, basis, or other reason relied upon, in support of, or otherwise

17

considered by You concerning or regarding The Takedown with respect to any of Defendants, Tacklife Products, NOCO Products, or NOCO.

14.　　All Documents or Communications that concern, relate to, or otherwise evidence the Data Breach or any investigation, audit, inspection, examination, or inquiry related to or concerning the Data Breach with respect to any of Defendants, Tacklife Products, NOCO Products, or NOCO.

15.　　All Documents or Communications that concern, relate to, or otherwise evidence any advertisements, sales, refunds, or returns of any Tacklife Products regarding or concerning the Amazon Marketplace, including, but not limited to, dates of advertisement or sale, itemized advertisement or sales reports, revenues, total sales categorized monthly, categorized by ASIN, and identity of purchaser.

16.　　All Documents or Communications that concern, relate to, or otherwise evidence any advertisements, sales, refunds, or returns of any jump starter or automotive accessory items sold or listed for sale on the Amazon Marketplace by any one or more of Defendants, including, but not limited to, dates of advertisement or sale, itemized advertisement or sales reports, revenues, total sales categorized monthly, categorized by ASIN, and the identity of each purchaser.

17.　　All Documents or Communications that concern, relate to, or otherwise evidence any instance of a Tacklife Product receiving, being awarded, or otherwise displaying the Best Seller Badge or Amazon Choice Badge.

18.　　All Documents or Communications that concern, relate to, or otherwise evidence any investigation, audit, inspection, examination, or inquiry conducted by You

18

into a product review on the Amazon Marketplace appearing on a Tacklife Product or a NOCO Product.

19.     All Documents or Communications that concern, relate to, or otherwise evidence the identity, legal name, username, geographical location, time, date, IP Address, or metadata associated with any author of any product review on the Amazon Marketplace on a Tacklife Product or NOCO Product that was stricken, removed, or otherwise altered.

20.     All Documents or Communications that concern, relate to, or otherwise evidence the identity, legal name, username, geographical location, time, date, IP Address, or metadata associated with any complaint, inquiry, review, or statement related to the safety of a NOCO Product.

21.     All Documents or Communications that concern, relate to, or otherwise evidence any investigation, audit, inspection, examination, or inquiry into the safety of a NOCO Product, including the bases, cause, justification, or reason for any such investigation, audit, inspection, examination, or inquiry.

22.     All Documents or Communications that concern, relate to, or otherwise evidence the process, technology, and algorithm employed, applied, or otherwise utilized by You related to or concerning the Amazon's Choice Badge or Best Seller Badge.

23.     All Documents or Communications that concern, relate to, or otherwise evidence The Takedown related to or concerning any products sold or listed for sale on the Amazon Marketplace by any of Defendants or Tacklife Products with respect to the authenticity of any product reviews, including any evidence, data, or other

19

documentation that serves as a basis, justification, or reason for Your delisting or removal of Tacklife Products from the Amazon Marketplace.

24.     All Documents or Communications that concern, relate to, or otherwise evidence any notice or other correspondence related to The Takedown that You provided to any of Defendants.

25.     All Documents or Communications that concern, relate to, or otherwise evidence the: (i) identity; (ii) username; (iii) legal name; (iv) geographical location; (v) time; (vi) date; (vii) IP Address; (viii) metadata; (ix) substance; (x) product; and (xi) text of any product review that You relied upon or that served as a basis or justification for The Takedown.

26.     All Documents or Communications that You had, shared, or exchanged with any person related to The Takedown or the Data Breach concerning, relating to, or otherwise regarding NOCO Products, NOCO, Tacklife Products, or any one or more of Defendants.

27.     All Documents or Communications that concern, relate to, or otherwise evidence any investigation, audit, inspection, examination, or inquiry concerning or relating to any of Defendants regarding or concerning the Amazon Marketplace.

28.     All Documents or Communications that concern, relate to, or otherwise evidence any basis, justification, or other reason to permit, allow, or otherwise authorize any of Defendants or Defendants' affiliates to continue selling or listing products for sale on the Amazon Marketplace.

29.     All Documents or Communications that concern, relate to, or otherwise evidence any change, modification, or alteration to any search results on the Amazon

Marketplace concerning or relating to any products sold by any one or more of Defendants, NOCO Products, Tacklife Products, or any products sold by NOCO, during the Relevant Time Period.

30.    All Documents or Communications that concern, relate to, or otherwise evidence any investigation, audit, inspection, examination, or inquiry concerning or relating to any up-voting or down-voting on any product review with respect to NOCO Products or Tacklife Products, during the Relevant Time Period.

31.    All Documents or Communications that concern, relate to, or otherwise evidence the: (i) identity, legal name, or username; (ii) geographical location; (iii) IP Address; (iv) date or time; or (v) metadata, associated with any person who clicked, selected, or otherwise interacted with any promotion or advertisement of any NOCO Products by NOCO.

4888-3859-7127, v. 1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **THE NOCO COMPANY,** | ) | |
| 30339 Diamond Parkway #102 | ) | |
| Glenwillow, Ohio 44139, | ) | CASE NO. |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | JUDGE |
|  | ) | |
| **AUKEY TECHNOLOGY CO., LTD.,** | ) | |
| Room 102 | ) | |
| Building P09 | ) | |
| Huanan Dianzi Trading Center Plaza | ) | |
| Shenzhen, 518000 China, | ) | |
|  | ) | |
| **and** | ) | |
|  | ) | |
| **SHENZHENSHI JIANGYUN** | ) | |
| **SHANGMAOYOUXIANGONGSI,** | ) | |
| Room 913, Block B, World Financial Center, | ) | |
| Heping Road, Nanhu street, | ) | |
| Luohu District | ) | |
| Shenzhen, Guangdong, 518000, China, | ) | |
|  | ) | |
| **and** | ) | |
|  | ) | |
| **WODESHIJIKEJI SHENZHEN** | ) | |
| **YOUXIANGONGSI,** | ) | |
| Longgangqu Bujijiedao Buzhonglu 12Hao | ) | |
| Meidulanhuating Czuo 8B | ) | |
| Shenzhen, Guangdong, 518000 China, | ) | |
| Defendants. | ) | |
|  | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES
### (JURY DEMAND ENDORSED HEREON)

Plaintiff The NOCO Company ("***NOCO***"), by and through counsel, for its

Complaint against Defendants states as follows:

## PRELIMINARY STATEMENT

1.      NOCO files this action for injunctive relief and monetary damages because Defendants Aukey Technology Co., Ltd., Shenzhenshi Jiangyun Shangmaoyouxiangongsi, and Wodeshijikeji Shenzhen Youxiangongsi (collectively, "***Defendants***"), have damaged NOCO and unfairly competed with it by manipulating Amazon.com, Inc.'s ("***Amazon***") United States e-commerce platform Amazon.com (the "***Amazon Marketplace***").

2.      Defendants have manipulated the Amazon Marketplace by: (i) removing NOCO from certain browse nodes[1] on the Amazon Marketplace, thereby manipulating who will receive the Amazon Best Seller Badge (the "***Best Seller Badge***"); (ii) manipulating Amazon's algorithms to trigger safety takedowns of NOCO's products, which were premised on untrue and false representations that NOCO's products were unsafe or dangerous; (iii) authoring fake and misleading reviews of NOCO's products on the Amazon Marketplace to decrease NOCO's product rankings; and (iv) otherwise manipulating the Amazon Marketplace to their benefit, and NOCO's detriment.

3.      Defendants engaged in these unlawful activities on a website devoted to selling to consumers in the United States and directed these actions towards NOCO, a United States company, in order to gain market share, divert revenue, and harm NOCO.

---

[1] Browse nodes ("***Browse Nodes***") are Amazon's hierarchical category search functions consumers utilize on the Amazon Marketplace to find products. Generally, consumers use Browse Nodes to search and narrow broad categories to specific product types. The best-selling product in any given Browse Node receives the Best Seller Badge.

## NATURE OF THE ACTION

4.      This is an action for: (i) violations of the Lanham Act, 15 U.S.C. § 1125;

(ii) violations of Ohio's ban on deceptive trade practices, codified at O.R.C. § 4165.02;

(iii) tortious interference with business relationships; and (iv) common law civil

conspiracy.

## PARTIES

5.      NOCO is a privately held corporation formed and existing under the laws

of the State of Ohio with a principal place of business located in Glenwillow, Cuyahoga

County, Ohio.

6.      NOCO is a global leader in consumer electronics for vehicles and is in the

business of designing and manufacturing, among other products, premium battery

chargers, jump starters, and other portable power devices, used primarily in the

automotive aftermarket.

7.      NOCO is the current applicant and registered trademark owner to the

trademark "NOCO" bearing United States serial numbers 88523643 and 87164245 (the

"***NOCO Mark***"). NOCO owns several additional marks related to its products.

8.      Aukey Technology Co., Ltd. ("***Tacklife***") is a Chinese business entity

organized under the laws of and headquartered in China. Tacklife is the owner of the

registered trademark "Tacklife" (the "***Tacklife Mark***").

9.      Defendant Shenzhenshi Jiangyun Shangmaoyouxiangongsi ("***HuiMing***")

is an Amazon Marketplace third-party seller ("***3P Seller***") operating the Amazon

Marketplace Storefront[2] HuiMing, found at https://www.amazon.com/s?me=

AXPPSCJRMAK3H&marketplaceID=ATVPDKIKX0DER.

    10.     HuiMing is organized under the laws of and located in China.

    11.     Defendant Wodeshijikeji Shenzhen Youxiangongsi ("**WorldUS**") is a 3P

Seller operating the Amazon Marketplace Storefront WorldUS, found at https://www.

amazon.com/s?me=A3FT6M013JLBV2&marketplaceID=ATVPDKIKX0DER.

    12.     WorldUS is organized under the laws of and located in China.

    13.     Both WorldUS and HuiMing are 3P Sellers that sell Tacklife jump

starters and other Tacklife products on the Amazon Marketplace, which bear the

Tacklife Mark.

    14.     NOCO understands that Defendants are related entities, engaged in the

business of selling Tacklife products on the Amazon Marketplace.

    15.     NOCO asserts that Defendants conspire, at Tacklife's direction or

otherwise, to manipulate the Amazon Marketplace in order to benefit themselves and

harm NOCO.

    16.     Additionally, upon information and belief, Tacklife has granted WorldUS

and HuiMing permission, either through a formal licensing agreement or otherwise, to

use the Tacklife Mark in the sale of Tacklife products on the Amazon Marketplace.

    17.     Defendants contract or otherwise associate with unknown Amazon

employees and/or agents (the "**Amazon Insiders**") to assist in manipulating the

Amazon Marketplace.

---

[2] An Amazon Marketplace Storefront (each a "**Storefront**") is a 3P Seller's unique
webpage on the Amazon Marketplace where consumers can browse that seller's items it
offers for sale.

## SUBJECT MATTER JURISDICTION

18.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331. Specifically, NOCO brings claims against Defendants for violations of federal unfair competition and trademark law under the Lanham Act, 15 U.S.C. § 1125. This Court, therefore, has supplemental jurisdiction of all state law claims under 28 U.S.C. § 1367.

## PERSONAL JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over all Defendants.

20.     Fed. R. Civ. P. 4(k)(2) subjects all Defendants to this Court's personal jurisdiction.

21.     Because Defendants are Chinese entities, Defendants are not subject to jurisdiction in any state's courts of general jurisdiction.

22.     Exercising jurisdiction over Defendants is consistent with the United States Constitution and laws because Defendants actively target and sell products through interstate commerce to United States consumers.

23.     Defendants market and sell their products to United States consumers through the Amazon Marketplace and therefore direct their deceptive and disparaging Amazon Marketplace activities and anticompetitive conduct to the United States.

24.     NOCO competes with Defendants on the Amazon Marketplace. Further, United States consumers purchase Defendants' products through the Amazon Marketplace.

25.     Defendants intentionally list, market, and sell their products to United States consumers through the Amazon Marketplace.

26.     The domain "Amazon.com," which hosts the Amazon Marketplace, is specific to the United States and is designed and targeted to reach United States consumers.

27.     Listings do not populate on the United States Amazon Marketplace unless sellers actively list products therein.

28.     Amazon acknowledges and warns prospective sellers that listing on the Amazon Marketplace subjects sellers, such as Defendants, to United States tax, legal, and regulatory considerations.

29.     Amazon hosts other web-based marketplaces, *e.g.,* "Amazon.cn" (China), "Amazon.uk" (United Kingdom), "Amazon.br" (Brazil) etc., which do not populate results on the United States-specific Amazon.com Amazon Marketplace.

30.     In these ways, Defendants have targeted and actively sell in the United States market and engaged in tortious and unlawful activity designed to harm NOCO, a United States company.

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (c)(3).

## FACTUAL BACKGROUND

32.     The Amazon Marketplace allows consumers to search for products and hosts Storefronts and product listings.

33.     Product listings allow for consumers to review products, known as product reviews, which provide feedback to other consumers and sellers.

34.     Product reviews affect a product's ranking, which influences, *inter alia*: (i) where the product is displayed in search results; (ii) consumers' purchasing decisions; and (iii) which product receives the Best Seller Badge.

35.     When the Amazon Marketplace is functioning properly, product reviews allow for a continuous loop of feedback from consumer to seller to improve products and influence consumer purchasing decisions.

36.     Amazon's proprietary algorithms consider, *inter alia*, product reviews and product sales in order to determine a product's ranking on the Amazon Marketplace.

37.     It is understood that a positive product review increases a product's ranking while a negative product review decreases a product's ranking.

38.     A product's ranking affects whether or not a product receives certain Amazon accolades, such as the Best Seller Badge or Amazon's Choice Badge, which significantly impact sales.

39.     Product ranking also impacts where a product is displayed in the search result on the Amazon Marketplace when a consumer searches for a product.

40.     When a consumer conducts a product search, a better product ranking results in product listings appearing near the top of the webpage, i.e. above the fold.

### Amazon's Browse Nodes Search Function

41.     Consumers on the Amazon Marketplace use the platform's search functions to discover products and are then directed to a product page.

42.     One search function consumers can use to browse the Amazon Marketplace is Browse Nodes.

43. Browse Nodes are a hierarchy of categories to organize the Amazon Marketplace's product listings for a given category.

44. "Each node represents a collection of items for sale…and not the items themselves." Product Advertising API 5.0 Documentation, *Browse Nodes*, AMAZON WEB SERVICES (Last visited: Sept. 23, 2020), https://webservices.amazon.com/paapi5/documentation/use-cases/organization-of-items-on-amazon/browse-nodes.html.

45. Each Browse Node has a specific and unique identification number ("**Browse Node ID**") that identifies a product category or sub-category. Product Advertising API 5.0 Documentation, *Browse Node Properties*, AMAZON WEB SERVICES (Last visited: Sept. 23, 2020), https://webservices.amazon.com/paapi5/documentation/use-cases/organization-of-items-on-amazon/browse-nodes/browse-node-properties.html.

46. An Amazon seller needs to specify a product's Browse Node ID to publish a product in a certain category.

47. Products can be published in multiple product categories.

48. For example, NOCO publishes its GB40 jump starter in the "Automotive," "Jump Starters," "Automotive Performance Batteries & Accessories," and "Automotive Replacement Batteries & Accessories" Browse Nodes.

49. Consumers searching via Browse Nodes can more easily find the items they are searching for because Browse Nodes are a more specific search function.

50. Products listed within each Browse Node are ranked based on sales performance and Amazon's algorithms, with the top product receiving the Best Seller Badge.

51.     In the Browse Nodes that NOCO places its products, the seller with the Best Seller Badge receives an approximate 40% lift in sales based on information provided by Amazon.

52.     Prior to the Defendant's manipulation, NOCO held the Best Seller Badge within most of its assigned Browse Nodes.

## NOCO Has Become a Target on the Amazon Marketplace

53.     NOCO reported to Amazon that its product listings, product reviews, and accounts were manipulated by its competitors, including Defendants.

54.     NOCO also discovered and reported to Amazon that its products have been removed from certain Browse Nodes on multiple occasions.

55.     When NOCO brought the Browse Node manipulation to Amazon's attention, Amazon conducted an investigation.

56.     In response, Amazon recently confirmed that the certain Browse Nodes that contain NOCO products had been manipulated.

57.     Amazon disclosed that NOCO's assigned Browse Nodes were altered by Amazon 3P Seller assistance teams, consisting of Amazon Insiders, located in China and India.

58.     Amazon further disclosed that Defendants utilized Amazon Insiders to remove NOCO's products from the Browse Nodes, causing Tacklife to receive the Best Seller Badge in several Browse Nodes.

**Defendants Have Manipulated NOCO's Assigned Browse Nodes**

59.     NOCO's superior products earned it the top ranking and Best Seller Badge on a high percentage of its products within a high percentage of its Browse Nodes.

60.     Tacklife typically held the second ranking below NOCO in most instances.

61.     Defendants conspired with one another and Amazon Insiders to manipulate the Amazon Marketplace by moving NOCO's products into different Browse Nodes.

62.     Defendants' removal of NOCO products caused Tacklife to receive the top ranking in certain Browse Nodes and Tacklife received the Best Seller Badge within that respective Browse Node.

63.     Defendants' conspiracy unlawfully boosted Defendants' sales of Tacklife products as well as product ranking on the Amazon Marketplace.

**Defendants Manipulate NOCO's Product Reviews**

64.     NOCO's products received false product reviews for false safety reports.

65.     Specifically, NOCO's product reviews would include words and phrases such as "fire" and "blown up," despite NOCO's products having no such safety defects.

66.     NOCO believes that the false product reviews are a result of Defendants' manipulation of the Amazon Marketplace.

67.     As a result of the false product reviews, NOCO's product rankings decreased and NOCO's product listings were sometimes removed from the Amazon Marketplace.

68. Defendants' Browse Node manipulation and false product reviews has caused NOCO to lose millions of dollars in product sales and damage to its brand.

**Defendants Use Tactics Similar to Other Criminal Defendants**

69. Recently, the United States Department of Justice ("***DoJ***") indicted six individuals for Amazon Marketplace manipulation in *United States v. Ephraim Rosenberg, et al.* Case No. CR20-151 RAJ, U.S. District Court, Western District of Washington (the "***Indictment***").

70. The DoJ alleges that four individuals, acting as Amazon Marketplace third-party consultants, bribed Amazon Insiders to manipulate product listings, Amazon's algorithms, and exceed authorized access to alter seller accounts.

71. The Indictment alleges that the defendants manipulated the Amazon Marketplace's product review feature to harm Amazon Marketplace sellers similar as Defendants have done here. *See* Indictment at 16-17, 21.

72. The Indictment states that the manipulated product reviews resulted in the suspension of seller accounts and inaccurate product rankings. *Id.*

73. The Indictment also states that unscrupulous actors are sabotaging and suspending seller accounts using false documents and fictitious entities. *See* Indictment at 28-31.

74. The victims in the indictment had their Amazon seller accounts deactivated and product listings removed. *Id.*

75. The Indictment alleges further that the six defendants inflicted upwards of $100 million in economic harm to other Amazon Marketplace sellers. *See id.* at 18.

76. Defendants use similar tactics as those described in the Indictment to manipulate NOCO's product listings and product reviews.

77. In fact, NOCO has reported similar manipulation to Amazon in the past.

78. Due to the false product reviews, including the false safety reports, NOCO's products were delisted from the Amazon Marketplace, resulting in lost sales.

79. NOCO's account has been deactivated and its product listings removed similar to what "Victim-1" and "Victim-3" in the Indictment experienced. *See id.* at 28-31.

80. As a result of Defendants' manipulation, NOCO's products fell in Amazon's product rankings, NOCO lost millions of dollars in sales, and NOCO suffered damage to its brand.

### The Acts of the Defendants Significantly Damage NOCO

81. To remain competitive, NOCO needs to be on the Amazon Marketplace.

82. A substantial amount of NOCO's sales are derived from the Amazon Marketplace, amounting to millions of dollars per year.

83. NOCO directly competes with Defendants on the Amazon Marketplace.

84. But because Defendants have manipulated the Amazon Marketplace, NOCO's ability to fairly compete has been hindered and NOCO has been harmed as a result.

85. Defendants abuse and manipulate the Amazon Marketplace such that: (i) NOCO's product rankings decreased so that NOCO's products do not appear above the fold in search results; (ii) Tacklife products receive the Best Seller Badge; and (iii) NOCO's products were removed from the Amazon Marketplace.

86. Defendants removed NOCO's products from certain Browse Nodes to enable Tacklife to receive the Best Seller Badge.

87. As a result of Defendants' manipulation, Defendants diverted consumers away from NOCO products and caused consumers to purchase Defendants' products.

88. Defendants' intentional, deliberate, and unscrupulous manipulation of the Amazon Marketplace stole consumer sales from NOCO.

## CLAIM ONE

### (Violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))

89. NOCO hereby incorporates each and every preceding paragraph as if fully restated herein.

90. NOCO advertises and sells its products to consumers across the United States and does so by, among other means, selling its products on the Amazon Marketplace.

91. Defendants also sell and advertise their products to United States consumers via the Amazon Marketplace.

92. Defendants have manipulated NOCO's product reviews, NOCO's product rankings, and certain Browse Nodes.

93. Due to Defendants' unscrupulous acts, Tacklife's ranking on the Amazon Marketplace is manipulated and artificially inflated.

94. By manipulating certain Browse Nodes, product reviews, and product rankings, Defendants misrepresent the nature, qualities, and characteristics of NOCO's and Defendants' products listed for sale on the Amazon Marketplace.

95.     Product rankings, product reviews, the Best Seller Badge, and where a product appears in a search result are material to a consumer's decision to purchase a product on the Amazon Marketplace.

96.     As a result, consumers are confused and mislead into purchasing Defendants' products.

97.     NOCO has lost a significant amount of sales on the Amazon Marketplace as a result of the Defendants' manipulation of the Amazon Marketplace.

98.     NOCO understands that Defendants are related entities that act in concert, by oral or written agreement, to manipulate the Amazon Marketplace to NOCO's detriment.

99.     As a direct and proximate result of Defendants' acts, NOCO suffered and continues to suffer damages in an amount exceeding $75,000.00.

## CLAIM TWO

### (Violations of Ohio's Unfair Trade Practices Law, O.R.C. § 4165.02)

100.     NOCO hereby incorporates each and every preceding paragraph as if fully restated herein.

101.     By manipulating NOCO's assigned Browse Nodes, NOCO's product rankings, and NOCO's product reviews, Defendants have caused a likelihood of consumer confusion or misunderstanding and made false misrepresentations of fact as to the nature, characteristics, and quality of NOCO's products and Tacklife's products.

102.     By manipulating NOCO's assigned Browse Nodes, NOCO's product rankings, and NOCO's product reviews, Defendants have represented that Defendants' products are of a particular standard, quality, or grade, or that their goods are of a

particular style or model when in fact Defendants' products are not of that particular standard, quality, or grade, or that goods are of a particular style or model.

103.    Because Defendants manipulate NOCO's assigned Browse Nodes, NOCO's product rankings, and NOCO's product reviews, Defendants mislead and deceive the consumer.

104.    Consumers rely on NOCO's assigned Browse Nodes, NOCO's product reviews, NOCO's product ranking, and the Best Seller Badge when making purchasing decisions.

105.    Defendants have removed NOCO's Best Seller Badge by removing NOCO from its assigned Browse Nodes in order for Defendants to receive the Best Seller Badge.

106.    As a direct and proximate result, NOCO has suffered damages and continues to suffer damages in an amount exceeding $75,000.00.

## CLAIM THREE
### (Tortious Interference with a Business Relationship)

107.    NOCO hereby incorporates each and every preceding paragraph as if fully rewritten herein.

108.    NOCO and Amazon were and currently are engaged in a business relationship through, *inter alia*, Amazon sales agreements, such as purchase orders.

109.    Defendants knew of the business relationship and agreements between NOCO and Amazon because they are aware that NOCO actively advertises and sells on the Amazon Marketplace and because Defendants had the opportunity to enter into similar agreements with Amazon.

110.    Despite this knowledge, Defendants intentionally interfered with NOCO

and Amazon's business relationship.

111.    Defendants improperly interfered with NOCO and Amazon's business relationship when they engaged in the above-described conduct, including manipulating NOCO's assigned Browse Nodes.

112.    As a direct and proximate result of Defendants' interference, NOCO has suffered and will continue to suffer damages in an amount exceeding $75,000.00.

## CLAIM FOUR
### (Civil Conspiracy)

113.    NOCO hereby incorporates each and every preceding paragraph as if fully restated herein.

114.    Defendants have entered into a malicious combination—among themselves—in a way not competent for one alone by acting in concert and/or agreeing to manipulate the Amazon Marketplace.

115.    Defendants are either related entities, sharing common ownership, or are obligated to one another through oral or written agreement, such as a trademark licensing arrangement.

116.    Defendants harmed NOCO by, *inter alia*, manipulating NOCO's assigned Browse Nodes to incorrectly result in Defendants' products receiving the Best Seller Badge and decrease NOCO's product rankings such that NOCO's products do not appear above the fold in search results.

117.    As a direct and proximate cause of Defendants' acts, NOCO has suffered and will continue to suffer damages in an amount exceeding $75,000.00.

**WHEREFORE,** NOCO prays for judgment as follows:

A.    A preliminary and permanent injunction;

B.    As to Claim One, compensatory damages, statutory damages, attorneys' fees and costs;

C.    As to Claim Two, compensatory damages, statutory damages, attorneys' fees and costs;

D.    As to Claim Three, compensatory damages and punitive damages;

E.    As to Claim Four, compensatory damages and punitive damages;

F.    Attorneys' fees and costs, as allowed by statute and for Defendants' intentional, willful, and malicious actions; and

G.    Such other relief as this Court deems just and proper.

### JURY DEMAND

NOCO respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Jon J. Pinney*
_____
JON J. PINNEY (0072761)

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*

JON J. PINNEY (0072761)
JON W. GROZA (0083985)
JUSTINE LARA KONICKI (0086277)
KYLE D. STROUP (0099118)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jwg@kjk.com;
        jlk@kjk.com; kds@kjk.com

*Counsel for Plaintiff The NOCO Company*