# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **THE NOCO COMPANY,** | ) | **CASE NO.: 1:20-cv-02322** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAVID A. RUIZ** |
| | ) | |
| v. | ) | |
| | ) | |
| **AUKEY TECHNOLOGY CO., LTD., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## PLAINTIFF THE NOCO COMPANY'S
## NOTICE OF FED. R. CIV. P. 30(B)(6) DEPOSITION OF
## DEFENDANT AUKEY TECHNOLOGY CO., LTD.

---

Pursuant to Fed. R. Civ. Pro. 30(b)(6), please take notice that commencing on XXXX, 2023, at XXXX a.m. eastern, using remote audio-visual conference technology, Plaintiff The NOCO Company ("*NOCO*"), by and through counsel, shall take the oral deposition of Defendant Aukey Technology Co., Ltd. The deposition shall continue from day to day, weekends and holidays excepted, until completed and shall be recorded stenographically and by video.

Defendant Aukey Technology Co., Ltd. shall designate and produce for deposition one or more officers, directors, employees, agents or other persons to testify on its behalf regarding the topics set forth in Schedule A attached hereto.

Defendant Aukey Technology Co., Ltd.is advised that Fed. R. Civ. P. 30(b)(6) requires it to produce one or more witnesses at the stated location and time who are aware of and are prepared to testify about Aukey Technology Co., Ltd.'s knowledge, not just information personally known by the deponent, of the topics described and set forth in Schedule A. If the designated representative(s) do not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary. Aukey Technology Co., Ltd. is further advised that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff and Aukey Technology Co., Ltd. must confer in good faith about the matters for examination.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*
JON J. PINNEY (0072761)
JONATHON W. GROZA (0083985)
NATHAN F. STUDENY (0077864)
KYLE D. STROUP (0099118)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jwg@kjk.com;
nfs@kjk.com; kds@kjk.com

*Counsel for Plaintiff The NOCO Company*

4854-0183-1732, v. 2

## SCHEDULE A

## DEFINITIONS

1.     The terms "NOCO" or "Plaintiff" mean and refer to Plaintiff The NOCO Company and its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

2.     "Aukey" or "You" mean and refer to Defendant Aukey Technology Co., Ltd. and its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

3.     "HuiMing" means and refers to Defendant Shenzhenshi Jiangyun Shangmaoyouxiangongsi a former third-party seller on the Amazon Marketplace who operated a "Tacklife Auto Store" and "HuiMing" storefront with a unique Amazon Marketplace storefront previously found at https://www.amazon.com/s?me=AXPPSCJRMAK3H&marketplaceID=ATVPDKIKX0DER. "HuiMing" also includes its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

3

4.      "WorldUS" means and refers to Defendant Wodeshijikeji Shenzhen Youxiangongsi a former third-party seller on the Amazon Marketplace who operated a "WorldUS" storefront with a unique Amazon Marketplace storefront previously found at https://www.amazon.com/s?me=A3FT6M013JLBV2&marketplaceID=ATVPDKIKX0DER. "WorldUS" also includes its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

5.      The term "Defendants" mean and refer collectively to Aukey, HuiMing, and WorldUS, and their current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on their behalf and their respective predecessors, successors, and assigns.

6.      "3P Defendants" means and refers, collectively, to HuiMing and WorldUS and their current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on their behalf and their respective predecessors, successors, and assigns.

7.      "Amazon" means and refers to Amazon.com, Inc. and its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any

4

other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

8. "Amazon Marketplace" means and refers to Amazon's e-commerce platform that is accessible to the public via the internet at the website URL amazon.com. For clarity, the Amazon Marketplace lists items for sale from a seller's account, such as NOCO or 3P Defendants' seller accounts, such that consumers can purchase, view, review, rate, and otherwise interact with the respective product pages listed on the Amazon Marketplace.

9. "Tacklife Trademarks" means and refers to the trademarks registered to Aukey with the United States Patent and Trademark Office, Registration Numbers 6022427, 6005412, 5245543, and 4913016.

10. "Tacklife Product" and "Tacklife Products" mean and refer to those certain products currently or previously sold by one or more Defendants on the Amazon Marketplace that bear the Tacklife Trademark.

11. "Action" means the case pending in the United States District Court, Northern District of Ohio, styled *The NOCO Company vs. Aukey Technology Co., Ltd., et al.*, Case No. 1:20-cv-02322.

12. "Complaint" means and refers to the complaint filed in the Action on October 13, 2020.

13. NOCO incorporates each and every term defined in the Complaint.

14. As used herein, the terms "NOCO Product" or "NOCO Products" mean and refer to any and all items listed for sale or sold by NOCO or Amazon on the Amazon

5

Marketplace during the Relevant Time Period. For illustration, NOCO Products include, without limitation, the items listed for sale on the Amazon Marketplace at https://www. amazon.com/stores/NOCO/page/7428E5DB-99DF-42C9-8687-789F696FFDF3?ref_=ast_bln and the extensions thereto.

15.    "NOCO's Vendor Account" means and refers to NOCO's Amazon account that NOCO uses to list items for sale on the Amazon Marketplace.

16.    "NOCO's Advertising Account" means and refers to NOCO's Amazon account that NOCO uses to facilitate, create, or otherwise advertise NOCO Products on the Amazon Marketplace.

17.    "Amazon XWiki" means and refers to Amazon's XWiki platform where Amazon's employees, representatives, agents, contractors, and affiliates post information and create and develop content as a collaborative knowledge sharing and documentation platform. "Amazon XWiki" also means and refers to all similar internal collaborative knowledge sharing and documentation platforms Amazon utilized during the Relevant Time Period that may have been held under different names or through different software platforms.

18.    "Your XWiki" means and refers to Aukey, HuiMing, and/or WorldUS's XWiki platform where Defendants' employees, representatives, agents, contractors, and affiliates post information and create and develop content as a collaborative knowledge sharing and documentation platform. "Your XWiki" also means and refers to all similar internal collaborative knowledge sharing and documentation platforms Defendants utilized during

6

the Relevant Time Period that may have been held under different names or through different software platforms.

19.     "Browse Nodes" means and refers to the hierarchy of categories, including, but not limited, to branch and leaf nodes, that are used to organize the Amazon Marketplace's product listings for a given category of products. For example and clarity, but without limitation, NOCO Products are placed into certain Browse Nodes such as those Browse Nodes titled "Automotive Replacement Batteries & Accessories," "Automotive Performance Batteries & Accessories," and "Jump Starters."

20.     The term "Best Seller Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a best-selling product in a Browse Node. For example, below the Best Seller Badge is awarded to a product in the "Automotive Replacement Batteries & Accessories" Browse Node.



21.     The term "Amazon Choice Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a product chosen by Amazon with distinction. For example, below the Amazon Choice Badge is awarded to a product for the term "jump starter."



7

22.     "IP Address" is used in the broadest sense possible to include, without limitation, Ipv4 and Ipv6 addresses of connected devices on the internet of things.

23.     "ASIN" or "ASINs" means and refers to Amazon's standard identification number which is a ten-digit alphanumeric code that Amazon uses to identify products sold or listed for sale on the Amazon Marketplace.

24.     As used herein, "The Takedown" means and refers to the action taken by or on behalf of Amazon to delist, remove, or otherwise prohibit any one or more of Defendants from selling on the Amazon Marketplace. For clarity, The Takedown is detailed in the following articles:

- *Amazon Fake Reviews Scam Exposed in Data Breach*, SAFETYDETECTIVES, May 6, 2021, https://www.safetydetectives.com/blog/amazon-reviews-leak-report/.

- Imad Khan, *Aukey Kicked Off Amazon Following Fake Reviews Allegations [Update]*, TOM'S GUIDE, May 11, 2021, https://www.tomsguide.com/news/aukey-kicked-off-amazon-following-fake-reviews-allegations.

- *Amazon Suspends Amazon-Native Brands Mpow and Aukey*, MARKETPLACE PULSE, May 11, 2021, https://www.marketplacepulse.com/articles/amazon-suspends-amazon-native-brands-mpow-and-aukey.

25.     As used herein, "Data Breach" means and refers to the specific release, finding, or uncovering of data on an ElasticSearch database on or around March 1, 2020, that precipitated or otherwise preceded The Takedown and may have revealed Communications and Documents related to or concerning inauthentic and/or false reviews of products on the

8

Amazon Marketplace as well as violations of Amazon's policies pertaining to the Amazon Marketplace.

26.     The terms "investigation," "audit," "inspection," "examination," or "inquiry" mean and refer to, in addition to their customary and usual meaning, any steps, processes, procedures, or actions taken by or on behalf of Amazon in response to, with regard, or concerning the Browse Nodes, The Takedown, and/or the Data Breach.

27.     "Seller Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that assist or otherwise support sellers on the Amazon Marketplace, such as NOCO.

28.     "Abuse Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that research, investigate, audit, or otherwise examine reports, claims, or statements of manipulation, violation, or exploitation of or on the Amazon Marketplace and Your policies.

29.     "Automotive Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that assist or otherwise support the "Automotive" category of products, including NOCO Products and Tacklife Products, sold or offered for sale on the Amazon Marketplace.

4854-0183-1732, v. 2

30.     "Communication" shall have the broadest definition and scope possible under federal law and includes every manner of means of disclosure, transfer, exchange of information, fact, idea, or inquiry, whether orally or written, whether face-to-face or electronically, or by telephone, telecopies, mail, email, facsimile, personal delivery, overnight delivery, electronic messages, including, but not limited to, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom, or otherwise, including all transfer of information on, across, or through the Amazon XWiki or Your XWiki or similar collaborative knowledge sharing or documentation platforms. All such Communications in writing shall include, without limitation, printed, typed, handwritten, or other human or machine-readable Documents.

31.     The term "Document" or "Documents" includes Electronically Stored Information and Communications and is used in the broadest possible sense and means and refers to, without limitation, all materials discoverable under the applicable Federal Rules of Civil Procedure that are within Your possession, custody, or control, or that of any agent, representative (including, without limitation, attorneys), or other person acting or purporting to act for or on Your behalf or in concert with You. Without limiting the forgoing definition, Documents and Electronically Stored Information include Writings,[1] and Recordings,[2] and

---

[1] The term "Writings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(a).

[2] The term "Recordings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(b).

Photographs.[3] Examples of these include: drawings; graphs; charts; correspondence; letters; memoranda; facsimiles; records; medical records; summaries of personal conversations or interviews; wires; telegrams; reports; books; transcripts; legal pleadings and papers; summaries or records of telephone conversations (including telephone and mobile telephone billing records); diaries; journals; forecasts; statistical statements; work papers; accounts; account records; bank statements; receipts; automated teller machine receipts or printouts; credit card statements or records; analytical records; agendas, minutes or records of meetings or conferences; consultants' reports; employment records; appraisals; agreements; reports or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; notes; lists; notices; advertising; changelogs; log data; audit trails; audit or investigation summaries; any form of data compilation from which information can be obtained, including for illustrative purposes, but not limited to, all electronic data (including all electronic mail and information about electronic mail, including message contents, header information, and logs of electronic mail system usage, whether sent internally or externally); voice mails; text messages; electronic messages through software, including without limitation, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom; on-line data storage on mainframes, minicomputers, personal computers, and laptops; off-line data storage, backups, and archives; floppy disks; zip drives; zip files; tapes; compact disks or diskettes; hand-held devices or personal digital assistants; disconnected hard drives and other removable

---

[3] The term "Photographs" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(c).

electronic media; application programs and utilities; and all sound reproductions, however produced or reproduced.

32.     The term "Electronically Stored Information" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained that are in Your possession, custody, or control.

33.     As used herein, "person" means any natural person, or any legal, foreign, or judicial entity, including but not limited to any corporation, limited liability company, business trust, estate, trust, partnership, proprietorship, association, foundation, organization, joint venture, governmental entities, group of persons, or any other entity or form of organization, foreign or domestic.

34.     The term "identify" with respect to any person, business organization, corporation, or other legal entity, means to state with particularity and include (in addition to any other information specifically requested) its full name, present or last known address, present or last known place of business, its principal place of business, and telephone number(s), and email address(es).

35.     The term "identify" with respect to any Document means to state and/or describe: 1) the date of the Document and the type of the Document (e.g., letter, memorandum, telegram, chart, photograph, sound reproduction, etc.); 2) the person(s) who prepared the Document; 3) the person(s) who signed the Document; 4) the

12

person(s) to whom the Document was sent or delivered; 5) the present location and custodian of the Document; and 6) the contents of the Document.

36.     The term "identify" with respect to any act, occurrence, thing, or event, means to describe, with particularity, everyone involved in the act, occurrence, thing, or event, everything that was done with respect to the act, occurrence, thing, or event, and the date or approximate time period when the act, occurrence, thing, or event occurred.

37.     The terms "and" and "or" shall be construed disjunctively or conjunctively to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

38.     The term "any" shall be construed to include "all" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

39.     The term "each" shall be construed to include "every" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

40.     Where the context makes it appropriate, the present tense must be construed to include the past tense, and the past tense must be construed to include the present tense.

41.     Any word or term in the singular form shall also be construed as plural and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

42.     The masculine form shall also be construed to include the feminine and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

43.     The term "concerning," in addition to its usual and customary meaning, shall have the broadest definition and scope possible under the federal law and shall include, without limitation, constituting, comprising, containing, consisting of, displaying, embodying, including, setting forth, proposing, showing, evidencing, disclosing, describing, discussing, explaining, summarizing, concerning, reflecting, regarding, authorizing, relating to, or referring to, directly or indirectly.

44.     The terms "all" and "each" shall be construed as all and each.

45.     The term "including" means "including but not limited to."

46.     "Evidencing," "pertaining," "with respect to," "relating," "relate to," "relate," or "related," in addition to their usual and customary meanings, shall mean alluding to, analyzing, about, commenting upon, comprising, consisting of, constituting, disclosing, discussing, explaining, mentioning, evidencing, pertaining to, referring to, reflecting, responding to, reporting, relating to and/or regarding, setting forth, showing, summarizing, either directly or indirectly, in whole or in part, the given subject matter.

47.     Unless otherwise set forth herein, the Topics of Examination seek information concerning the period of time between January 1, 2019 through the date of the deposition, inclusive of the start and end dates (the "Relevant Time Period"). The Topics of Examination

14

seek information that refers or relates to the Relevant Time Period, regardless of when the information was prepared.

## TOPICS OF EXAMINATION

Defendant will designate one or more persons able to testify on its behalf with knowledge concerning the following subjects:

1.      Your corporate history at any time.

2.      Your registration of the Tacklife Trademarks.

3.      Your business model, including the design, development, manufacture, purchase, sale, and distribution of the Tacklife Products.

4.      Your accounting records, profit, loss, and daily operations with respect to the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

5.      Your advertisement, promotion, and sale of the Tacklife Products on the Amazon Marketplace, including product descriptions, brands, ASINs, and Browse Nodes under which the products are or were sold.

6.      Your business history with the 3P Defendants at any time.

7.      Your communications with the 3P Defendants regarding the advertisement, promotion, and sale of the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

8.      Your communications with the 3P Defendants regarding competitors of the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace, including, but not limited to, NOCO.

9.      Your collaboration, engagement, contract with, or work with third parties other than the 3P Defendants concerning, relating, or pertaining to the Amazon Marketplace.

10.     Listings of the Tacklife Products in Brows Nodes on the Amazon Marketplace.

11.     Your knowledge of NOCO and NOCO Products, including, but not limited to, advertising, intellectual property, Browse Node listings, and Amazon seller rankings such as the Best Seller Badge and the Amazon Choice Badge.

12.     Your competition with NOCO and its network of authorized distributors and sellers.

13.     Your knowledge of, response to, and/or involvement with the Data Breach.

14.     Your knowledge of, response to, and/or involvement with The Takedown.

15.     Your efforts to sell the Tacklife Products on the Amazon Marketplace following The Takedown.

16.     Your sale of automotive battery chargers, jump starters, and other portable power devices on the Amazon Marketplace under the brand names Hulkman and Fanttik, including product descriptions, brands, ASINs, and Browse Nodes under which the products are sold.

17.     Your use of third-party sellers other than the 3P Defendants to sell automotive battery chargers, jump starters, and other portable power devices on the Amazon Marketplace, including, but not limited to, Fanttik Direct.

18.     Your involvement with "click farms" or other third parties that interact with digital advertisements on the Amazon Marketplace, including, but not limited to, NOCO digital advertisements.

19.     Your involvement with the removal of NOCO products from Browse Nodes.

20.     Your involvement with the creation or issuance of product reviews, product ratings, votes, safety complaints, safety concerns, questions posed, and/or answers to questions posed on the Amazon Marketplace with respect to automotive battery chargers, jump starters, and other portable power devices, including, but not limited to, Tacklife Products, NOCO, and/or NOCO Products.

21.     Your efforts to receive the Best Seller Badge and/or the Amazon Choice Badge for the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

22.     IP Addresses used by You relating to the sale of Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

23.     Investigations, audits, inspections, examinations, or inquires conducted by You regarding the Data Breach or the Takedown.

24.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the Data Breach.

25.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding The Takedown.

26.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the removal of NOCO Products from Browse Nodes.

27.     Your communications with Amazon, including, but not limited to, its  Seller Team, Abuse Team, and/or Automotive Team, regarding the creation or publication of false or misleading product reviews, product ratings, votes, safety complaints, safety concerns, questions posed, and/or answers to questions posed on the Amazon Marketplace with respect to automotive battery chargers, jump starters, and other portable power devices, including, but not limited to, Tacklife Products, NOCO, and/or NOCO Products.

28.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the existence of "click farms" or other third parties that interact with digital advertisements on the Amazon Marketplace, including, but not limited to, NOCO digital advertisements.

29.     Your communications regarding the sale, advertisement, or promotion of Tacklife Products or NOCO Products on the Amazon Marketplace.

4854-0183-1732, v. 2

30.     Your knowledge of any investigation, audit, inspection, examination, or inquiry conducted by Amazon into Your seller activities, profile(s), product(s), advertisement(s), or any other aspect of Your seller page(s) on Amazon.

31.     Your interaction with the Amazon XWiki platform.

32.     Your interaction with NOCO's Vendor Account.

33.      Your interaction with NOCO's Advertisement Account.

34.     The existence of Documents or Electronically Stored Information concerning Your XWiki platform.

35.     Your responses to written discovery requests in this Action.

36.     Your production of Documents or Electronically Stored Information in this Action.

37.     Your interference with NOCO's business relationships.

38.     Your manipulation of the Amazon Marketplace.

4854-0183-1732, v. 2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was sent to all counsel of record via electronic mail on this 10th day of November 2023.

/s/*Jon J. Pinney*
Jon J. Pinney

*Counsel for Plaintiff The NOCO Company*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **THE NOCO COMPANY,** | ) | **CASE NO.: 1:20-cv-02322** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAVID A. RUIZ** |
| | ) | |
| v. | ) | |
| | ) | |
| **AUKEY TECHNOLOGY CO., LTD., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

### PLAINTIFF THE NOCO COMPANY'S
### NOTICE OF FED. R. CIV. P. 30(B)(6) DEPOSITION OF
### DEFENDANT SHENZHENSHI JIANGYUN SHANGMAOYOUXIANGONGSI

---

Pursuant to Fed. R. Civ. Pro. 30(b)(6), please take notice that commencing on XXXX, 2023, at XXXX a.m. eastern, using remote audio-visual conference technology, Plaintiff The NOCO Company ("*NOCO*"), by and through counsel, shall take the oral deposition of Defendant Shenzhenshi Jiangyun Shangmaoyouxiangongsi. The deposition shall continue from day to day, weekends and holidays excepted, until completed and shall be recorded stenographically and by video.

Defendant Shenzhenshi Jiangyun Shangmaoyouxiangongsi shall designate and produce for deposition one or more officers, directors, employees, agents or other persons to testify on its behalf regarding the topics set forth in Schedule A attached hereto.

Defendant Shenzhenshi Jiangyun Shangmaoyouxiangongsi is advised that Fed. R. Civ. P. 30(b)(6) requires it to produce one or more witnesses at the stated location and time who are aware of and are prepared to testify about Shenzhenshi Jiangyun Shangmaoyouxiangongsi's knowledge, not just information personally known by the deponent, of the topics described and set forth in Schedule A. If the designated representative(s) do not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary. Shenzhenshi Jiangyun Shangmaoyouxiangongsi is further advised that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff and Shenzhenshi Jiangyun Shangmaoyouxiangongsi must confer in good faith about the matters for examination.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

/s/ *Jon J. Pinney*

JON J. PINNEY (0072761)
JONATHON W. GROZA (0083985)
NATHAN F. STUDENY (0077864)
KYLE D. STROUP (0099118)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jwg@kjk.com;
kds@kjk.com

*Counsel for Plaintiff The NOCO Company*

2

## SCHEDULE A

## DEFINITIONS

1.      The terms "NOCO" or "Plaintiff" mean and refer to Plaintiff The NOCO Company and its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

2.      "Aukey" means and refers to Defendant Aukey Technology Co., Ltd. and its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

3.      "HuiMing" and "You" mean and refer to Defendant Shenzhenshi Jiangyun Shangmaoyouxiangongsi a former third-party seller on the Amazon Marketplace who operated a "Tacklife Auto Store" and "HuiMing" storefront with a unique Amazon Marketplace storefront previously found at https://www.amazon.com/s?me= AXPPSCJRMAK3H&marketplaceID=ATVPDKIKX0DER. "HuiMing" also includes its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

3

4.     "WorldUS" means and refers to Defendant Wodeshijikeji Shenzhen Youxiangongsi a former third-party seller on the Amazon Marketplace who operated a "WorldUS" storefront with a unique Amazon Marketplace storefront previously found at https://www.amazon.com/s?me=A3FT6M013JLBV2&marketplaceID=ATVPDKIKX0DER. "WorldUS" also includes its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

5.     The term "Defendants" mean and refer collectively to Aukey, HuiMing, and WorldUS, and their current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on their behalf and their respective predecessors, successors, and assigns.

6.     "3P Defendants" means and refers, collectively, to HuiMing and WorldUS and their current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on their behalf and their respective predecessors, successors, and assigns.

7.     "Amazon" means and refers to Amazon.com, Inc. and its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any

4

other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

8.      "Amazon Marketplace" means and refers to Amazon's e-commerce platform that is accessible to the public via the internet at the website URL amazon.com. For clarity, the Amazon Marketplace lists items for sale from a seller's account, such as NOCO or 3P Defendants' seller accounts, such that consumers can purchase, view, review, rate, and otherwise interact with the respective product pages listed on the Amazon Marketplace.

9.      "Tacklife Trademarks" means and refers to the trademarks registered to Aukey with the United States Patent and Trademark Office, Registration Numbers 6022427, 6005412, 5245543, and 4913016.

10.      "Tacklife Product" and "Tacklife Products" mean and refer to those certain products currently or previously sold by one or more Defendants on the Amazon Marketplace that bear the Tacklife Trademark.

11.      "Action" means the case pending in the United States District Court, Northern District of Ohio, styled *The NOCO Company vs. Aukey Technology Co., Ltd., et al.*, Case No. 1:20-cv-02322.

12.      "Complaint" means and refers to the complaint filed in the Action on October 13, 2020.

13.      NOCO incorporates each and every term defined in the Complaint.

14.      As used herein, the terms "NOCO Product" or "NOCO Products" mean and refer to any and all items listed for sale or sold by NOCO or Amazon on the Amazon

5

Marketplace during the Relevant Time Period. For illustration, NOCO Products include, without limitation, the items listed for sale on the Amazon Marketplace at https://www.amazon.com/stores/NOCO/page/7428E5DB-99DF-42C9-8687-789F696FFDF3?ref_=ast_bln and the extensions thereto.

15.    "NOCO's Vendor Account" means and refers to NOCO's Amazon account that NOCO uses to list items for sale on the Amazon Marketplace.

16.    "NOCO's Advertising Account" means and refers to NOCO's Amazon account that NOCO uses to facilitate, create, or otherwise advertise NOCO Products on the Amazon Marketplace.

17.    "Amazon XWiki" means and refers to Amazon's XWiki platform where Amazon's employees, representatives, agents, contractors, and affiliates post information and create and develop content as a collaborative knowledge sharing and documentation platform. "Amazon XWiki" also means and refers to all similar internal collaborative knowledge sharing and documentation platforms Amazon utilized during the Relevant Time Period that may have been held under different names or through different software platforms.

18.    "Your XWiki" means and refers to Aukey, HuiMing, and/or WorldUS's XWiki platform where Defendants' employees, representatives, agents, contractors, and affiliates post information and create and develop content as a collaborative knowledge sharing and documentation platform. "Your XWiki" also means and refers to all similar internal collaborative knowledge sharing and documentation platforms Defendants utilized during

the Relevant Time Period that may have been held under different names or through different software platforms.

19.     "Browse Nodes" means and refers to the hierarchy of categories, including, but not limited, to branch and leaf nodes, that are used to organize the Amazon Marketplace's product listings for a given category of products. For example and clarity, but without limitation, NOCO Products are placed into certain Browse Nodes such as those Browse Nodes titled "Automotive Replacement Batteries & Accessories," "Automotive Performance Batteries & Accessories," and "Jump Starters."

20.     The term "Best Seller Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a best-selling product in a Browse Node. For example, below the Best Seller Badge is awarded to a product in the "Automotive Replacement Batteries & Accessories" Browse Node.



21.     The term "Amazon Choice Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a product chosen by Amazon with distinction. For example, below the Amazon Choice Badge is awarded to a product for the term "jump starter."

⭐⭐⭐⭐⭐ ⌄  5,507 ratings | 284 answered questions

**Amazon's Choice** for "jump starter"

7

22. "IP Address" is used in the broadest sense possible to include, without limitation, Ipv4 and Ipv6 addresses of connected devices on the internet of things.

23. "ASIN" or "ASINs" means and refers to Amazon's standard identification number which is a ten-digit alphanumeric code that Amazon uses to identify products sold or listed for sale on the Amazon Marketplace.

24. As used herein, "The Takedown" means and refers to the action taken by or on behalf of Amazon to delist, remove, or otherwise prohibit any one or more of Defendants from selling on the Amazon Marketplace. For clarity, The Takedown is detailed in the following articles:

- *Amazon Fake Reviews Scam Exposed in Data Breach*, SAFETYDETECTIVES, May 6, 2021, https://www.safetydetectives.com/blog/amazon-reviews-leak-report/.

- Imad Khan, *Aukey Kicked Off Amazon Following Fake Reviews Allegations [Update]*, TOM'S GUIDE, May 11, 2021, https://www.tomsguide.com/news/aukey-kicked-off-amazon-following-fake-reviews-allegations.

- *Amazon Suspends Amazon-Native Brands Mpow and Aukey*, MARKETPLACE PULSE, May 11, 2021, https://www.marketplacepulse.com/articles/amazon-suspends-amazon-native-brands-mpow-and-aukey.

25. As used herein, "Data Breach" means and refers to the specific release, finding, or uncovering of data on an ElasticSearch database on or around March 1, 2020, that precipitated or otherwise preceded The Takedown and may have revealed Communications and Documents related to or concerning inauthentic and/or false reviews of products on the

8

Amazon Marketplace as well as violations of Amazon's policies pertaining to the Amazon Marketplace.

26.     The terms "investigation," "audit," "inspection," "examination," or "inquiry" mean and refer to, in addition to their customary and usual meaning, any steps, processes, procedures, or actions taken by or on behalf of Amazon in response to, with regard, or concerning the Browse Nodes, The Takedown, and/or the Data Breach.

27.     "Seller Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that assist or otherwise support sellers on the Amazon Marketplace, such as NOCO.

28.     "Abuse Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that research, investigate, audit, or otherwise examine reports, claims, or statements of manipulation, violation, or exploitation of or on the Amazon Marketplace and Your policies.

29.     "Automotive Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that assist or otherwise support the "Automotive" category of products, including NOCO Products and Tacklife Products, sold or offered for sale on the Amazon Marketplace.

4880-7183-4164, v. 2

30.     "Communication" shall have the broadest definition and scope possible under federal law and includes every manner of means of disclosure, transfer, exchange of information, fact, idea, or inquiry, whether orally or written, whether face-to-face or electronically, or by telephone, telecopies, mail, email, facsimile, personal delivery, overnight delivery, electronic messages, including, but not limited to, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom, or otherwise, including all transfer of information on, across, or through the Amazon XWiki or Your XWiki or similar collaborative knowledge sharing or documentation platforms. All such Communications in writing shall include, without limitation, printed, typed, handwritten, or other human or machine-readable Documents.

31.     The term "Document" or "Documents" includes Electronically Stored Information and Communications and is used in the broadest possible sense and means and refers to, without limitation, all materials discoverable under the applicable Federal Rules of Civil Procedure that are within Your possession, custody, or control, or that of any agent, representative (including, without limitation, attorneys), or other person acting or purporting to act for or on Your behalf or in concert with You. Without limiting the forgoing definition, Documents and Electronically Stored Information include Writings,[1] and Recordings,[2] and

---

[1] The term "Writings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(a).

[2] The term "Recordings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(b).

4880-7183-4164, v. 2

Photographs.[3] Examples of these include: drawings; graphs; charts; correspondence; letters; memoranda; facsimiles; records; medical records; summaries of personal conversations or interviews; wires; telegrams; reports; books; transcripts; legal pleadings and papers; summaries or records of telephone conversations (including telephone and mobile telephone billing records); diaries; journals; forecasts; statistical statements; work papers; accounts; account records; bank statements; receipts; automated teller machine receipts or printouts; credit card statements or records; analytical records; agendas, minutes or records of meetings or conferences; consultants' reports; employment records; appraisals; agreements; reports or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; notes; lists; notices; advertising; changelogs; log data; audit trails; audit or investigation summaries; any form of data compilation from which information can be obtained, including for illustrative purposes, but not limited to, all electronic data (including all electronic mail and information about electronic mail, including message contents, header information, and logs of electronic mail system usage, whether sent internally or externally); voice mails; text messages; electronic messages through software, including without limitation, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom; on-line data storage on mainframes, minicomputers, personal computers, and laptops; off-line data storage, backups, and archives; floppy disks; zip drives; zip files; tapes; compact disks or diskettes; hand-held devices or personal digital assistants; disconnected hard drives and other removable

---

[3] The term "Photographs" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(c).

11

electronic media; application programs and utilities; and all sound reproductions, however produced or reproduced.

32.     The term "Electronically Stored Information" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained that are in Your possession, custody, or control.

33.     As used herein, "person" means any natural person, or any legal, foreign, or judicial entity, including but not limited to any corporation, limited liability company, business trust, estate, trust, partnership, proprietorship, association, foundation, organization, joint venture, governmental entities, group of persons, or any other entity or form of organization, foreign or domestic.

34.     The term "identify" with respect to any person, business organization, corporation, or other legal entity, means to state with particularity and include (in addition to any other information specifically requested) its full name, present or last known address, present or last known place of business, its principal place of business, and telephone number(s), and email address(es).

35.     The term "identify" with respect to any Document means to state and/or describe: 1) the date of the Document and the type of the Document (e.g., letter, memorandum, telegram, chart, photograph, sound reproduction, etc.); 2) the person(s) who prepared the Document; 3) the person(s) who signed the Document; 4) the

person(s) to whom the Document was sent or delivered; 5) the present location and custodian of the Document; and 6) the contents of the Document.

36.     The term "identify" with respect to any act, occurrence, thing, or event, means to describe, with particularity, everyone involved in the act, occurrence, thing, or event, everything that was done with respect to the act, occurrence, thing, or event, and the date or approximate time period when the act, occurrence, thing, or event occurred.

37.     The terms "and" and "or" shall be construed disjunctively or conjunctively to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

38.     The term "any" shall be construed to include "all" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

39.     The term "each" shall be construed to include "every" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

40.     Where the context makes it appropriate, the present tense must be construed to include the past tense, and the past tense must be construed to include the present tense.

41.     Any word or term in the singular form shall also be construed as plural and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

42.     The masculine form shall also be construed to include the feminine and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

43.     The term "concerning," in addition to its usual and customary meaning, shall have the broadest definition and scope possible under the federal law and shall include, without limitation, constituting, comprising, containing, consisting of, displaying, embodying, including, setting forth, proposing, showing, evidencing, disclosing, describing, discussing, explaining, summarizing, concerning, reflecting, regarding, authorizing, relating to, or referring to, directly or indirectly.

44.     The terms "all" and "each" shall be construed as all and each.

45.     The term "including" means "including but not limited to."

46.     "Evidencing," "pertaining," "with respect to," "relating," "relate to," "relate," or "related," in addition to their usual and customary meanings, shall mean alluding to, analyzing, about, commenting upon, comprising, consisting of, constituting, disclosing, discussing, explaining, mentioning, evidencing, pertaining to, referring to, reflecting, responding to, reporting, relating to and/or regarding, setting forth, showing, summarizing, either directly or indirectly, in whole or in part, the given subject matter.

47.     Unless otherwise set forth herein, the Topics of Examination seek information concerning the period of time between January 1, 2019 through the date of the deposition, inclusive of the start and end dates (the "Relevant Time Period"). The Topics of Examination

14

seek information that refers or relates to the Relevant Time Period, regardless of when the information was prepared.

## TOPICS OF EXAMINATION

Defendant will designate one or more persons able to testify on its behalf with knowledge concerning the following subjects:

1.     Your corporate history at any time.

2.     Your involvement in the registration of the Tacklife Trademarks.

3.     Your business model, including the design, development, manufacture, purchase, sale, and/or distribution of the Tacklife Products.

4.     Your accounting records, profit, loss, and daily operations with respect to the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

5.     Your advertisement, promotion, and sale of the Tacklife Products on the Amazon Marketplace, including product descriptions, brands, ASINs, and Browse Nodes under which the products are or were sold.

6.     Your business history with Aukey and WorldUS at any time.

7.     Your communications with Aukey and WorldUS regarding the advertisement, promotion, and sale of the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

4880-7183-4164, v. 2

8.      Your communications with Aukey and WorldUS regarding competitors of the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace, including, but not limited to, NOCO.

9.      Your collaboration, engagement, contract with, or work with third parties other than Aukey and WorldUS concerning, relating, or pertaining to the Amazon Marketplace.

10.     Listings of the Tacklife Products in Brows Nodes on the Amazon Marketplace.

11.     Your knowledge of NOCO and NOCO Products, including, but not limited to, advertising, intellectual property, Browse Node listings, and Amazon seller rankings such as the Best Seller Badge and the Amazon Choice Badge.

12.     Your competition with NOCO and its network of authorized distributors and sellers.

13.     Your knowledge of, response to, and/or involvement with the Data Breach.

14.     Your knowledge of, response to, and/or involvement with The Takedown.

15.     Your efforts to sell the Tacklife Products on the Amazon Marketplace following The Takedown.

16.     Your sale of automotive battery chargers, jump starters, and other portable power devices on the Amazon Marketplace under the brand names Hulkman and Fanttik, including product descriptions, brands, ASINs, and Browse Nodes under which the products are sold.

16

17.     Your involvement with or use of third-party sellers other than Aukey and WorldUS to sell automotive battery chargers, jump starters, and other portable power devices on the Amazon Marketplace, including, but not limited to, Fanttik Direct.

18.     Your involvement with "click farms" or other third parties that interact with digital advertisements on the Amazon Marketplace, including, but not limited to, NOCO digital advertisements.

19.     Your involvement with the removal of NOCO products from Browse Nodes.

20.     Your involvement with the creation or issuance of product reviews, product ratings, votes, safety complaints, safety concerns, questions posed, and/or answers to questions posed on the Amazon Marketplace with respect to automotive battery chargers, jump starters, and other portable power devices, including, but not limited to, Tacklife Products, NOCO, and/or NOCO Products.

21.     Your efforts to receive the Best Seller Badge and/or the Amazon Choice Badge for the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

22.     IP Addresses used by You relating to the sale of Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

23.     Investigations, audits, inspections, examinations, or inquires conducted by You regarding the Data Breach or the Takedown.

17

24.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the Data Breach.

25.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding The Takedown.

26.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the removal of NOCO Products from Browse Nodes.

27.     Your communications with Amazon, including, but not limited to, its  Seller Team, Abuse Team, and/or Automotive Team, regarding the creation or publication of false or misleading product reviews, product ratings, votes, safety complaints, safety concerns, questions posed, and/or answers to questions posed on the Amazon Marketplace with respect to automotive battery chargers, jump starters, and other portable power devices, including, but not limited to, Tacklife Products, NOCO, and/or NOCO Products.

28.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the existence of "click farms" or other third parties that interact with digital advertisements on the Amazon Marketplace, including, but not limited to, NOCO digital advertisements.

29.     Your communications regarding the sale, advertisement, or promotion of Tacklife Products or NOCO Products on the Amazon Marketplace.

30.     Your knowledge of any investigation, audit, inspection, examination, or inquiry conducted by Amazon into Your seller activities, profile(s), product(s), advertisement(s), or any other aspect of Your seller page(s) on Amazon.

31.     Your interaction with the Amazon XWiki platform.

32.     Your interaction with NOCO's Vendor Account.

33.      Your interaction with NOCO's Advertisement Account.

34.     The existence of Documents or Electronically Stored Information concerning Your XWiki platform.

35.     Your responses to written discovery requests in this Action.

36.     Your production of Documents or Electronically Stored Information in this Action.

37.     Your interference with NOCO's business relationships.

38.     Your manipulation of the Amazon Marketplace.

4880-7183-4164, v. 2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was sent to all counsel of record via electronic mail on this 10th day of November 2023.

<u>/s/Jon J. Pinney</u>
Jon J. Pinney

*Counsel for Plaintiff The NOCO Company*

20

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **THE NOCO COMPANY,** | ) | **CASE NO.: 1:20-cv-02322** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAVID A. RUIZ** |
| | ) | |
| v. | ) | |
| | ) | |
| **AUKEY TECHNOLOGY CO., LTD., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

### PLAINTIFF THE NOCO COMPANY'S
### NOTICE OF FED. R. CIV. P. 30(B)(6) DEPOSITION OF
### DEFENDANT WODESHIJIKEJI SHENZHEN YOUXIANGONGSI

---

Pursuant to Fed. R. Civ. Pro. 30(b)(6), please take notice that commencing on XXXX, 2023, at XXXX a.m. eastern, using remote audio-visual conference technology, Plaintiff The NOCO Company ("***NOCO***"), by and through counsel, shall take the oral deposition of Defendant Wodeshijikeji Shenzhen Youxiangongsi. The deposition shall continue from day to day, weekends and holidays excepted, until completed and shall be recorded stenographically and by video.

Defendant Wodeshijikeji Shenzhen Youxiangongsi shall designate and produce for deposition one or more officers, directors, employees, agents or other persons to testify on its behalf regarding the topics set forth in Schedule A attached hereto.

Defendant Wodeshijikeji Shenzhen Youxiangongsi is advised that Fed. R. Civ. P. 30(b)(6) requires it to produce one or more witnesses at the stated location and time who are aware of and are prepared to testify about Wodeshijikeji Shenzhen Youxiangongsi's knowledge, not just information personally known by the deponent, of the topics described and set forth in Schedule A. If the designated representative(s) do not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary. Wodeshijikeji Shenzhen Youxiangongsi is further advised that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff and Wodeshijikeji Shenzhen Youxiangongsi must confer in good faith about the matters for examination.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

/s/ *Jon J. Pinney*
JON J. PINNEY (0072761)
JONATHON W. GROZA (0083985)
NATHAN F. STUDENY (0077864)
KYLE D. STROUP (0099118)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jwg@kjk.com; nfs@kjk.com; kds@kjk.com

*Counsel for Plaintiff The NOCO Company*

2

## SCHEDULE A

## DEFINITIONS

1.       The terms "NOCO" or "Plaintiff" mean and refer to Plaintiff The NOCO

Company and its current and former employees, vendors, contractors, representatives,

affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel,

representatives, shareholders, and any other person acting or purporting to act on its behalf

and their respective predecessors, successors, and assigns.

2.       "Aukey" means and refers to Defendant Aukey Technology Co., Ltd. and its

current and former employees, vendors, contractors, representatives, affiliates, agents,

associates, attorneys, directors, executives, managers, partners, personnel, representatives,

members, shareholders, and any other person acting or purporting to act on its behalf and

their respective predecessors, successors, and assigns.

3.       "HuiMing" means and refers to Defendant Shenzhenshi Jiangyun

Shangmaoyouxiangongsi a former third-party seller on the Amazon Marketplace who

operated a "Tacklife Auto Store" and "HuiMing" storefront with a unique Amazon

Marketplace storefront previously found at https://www.amazon.com/s?me=

AXPPSCJRMAK3H&marketplaceID=ATVPDKIKX0DER. "HuiMing" also includes its

current and former employees, vendors, contractors, representatives, affiliates, agents,

associates, attorneys, directors, executives, managers, partners, personnel, representatives,

members, shareholders, and any other person acting or purporting to act on its behalf and

their respective predecessors, successors, and assigns.

3

4.      "WorldUS" and "You" mean and refer to Defendant Wodeshijikeji Shenzhen Youxiangongsi a former third-party seller on the Amazon Marketplace who operated a "WorldUS" storefront with a unique Amazon Marketplace storefront previously found at https://www.amazon.com/s?me=A3FT6M013JLBV2&marketplaceID=ATVPDKIKX0DER. "WorldUS" also includes its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

5.      The term "Defendants" mean and refer collectively to Aukey, HuiMing, and WorldUS, and their current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on their behalf and their respective predecessors, successors, and assigns.

6.      "3P Defendants" means and refers, collectively, to HuiMing and WorldUS and their current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, members, shareholders, and any other person acting or purporting to act on their behalf and their respective predecessors, successors, and assigns.

7.      "Amazon" means and refers to Amazon.com, Inc. and its current and former employees, vendors, contractors, representatives, affiliates, agents, associates, attorneys, directors, executives, managers, partners, personnel, representatives, shareholders, and any

4

other person acting or purporting to act on its behalf and their respective predecessors, successors, and assigns.

8.      "Amazon Marketplace" means and refers to Amazon's e-commerce platform that is accessible to the public via the internet at the website URL amazon.com. For clarity, the Amazon Marketplace lists items for sale from a seller's account, such as NOCO or 3P Defendants' seller accounts, such that consumers can purchase, view, review, rate, and otherwise interact with the respective product pages listed on the Amazon Marketplace.

9.      "Tacklife Trademarks" means and refers to the trademarks registered to Aukey with the United States Patent and Trademark Office, Registration Numbers 6022427, 6005412, 5245543, and 4913016.

10.      "Tacklife Product" and "Tacklife Products" mean and refer to those certain products currently or previously sold by one or more Defendants on the Amazon Marketplace that bear the Tacklife Trademark.

11.      "Action" means the case pending in the United States District Court, Northern District of Ohio, styled *The NOCO Company vs. Aukey Technology Co., Ltd., et al.,* Case No. 1:20-cv-02322.

12.      "Complaint" means and refers to the complaint filed in the Action on October 13, 2020.

13.      NOCO incorporates each and every term defined in the Complaint.

14.      As used herein, the terms "NOCO Product" or "NOCO Products" mean and refer to any and all items listed for sale or sold by NOCO or Amazon on the Amazon

4886-5523-5380, v. 3

Marketplace during the Relevant Time Period. For illustration, NOCO Products include, without limitation, the items listed for sale on the Amazon Marketplace at https://www. amazon.com/stores/NOCO/page/7428E5DB-99DF-42C9-8687-789F696FFDF3?ref_=ast_bln and the extensions thereto.

15.     "NOCO's Vendor Account" means and refers to NOCO's Amazon account that NOCO uses to list items for sale on the Amazon Marketplace.

16.     "NOCO's Advertising Account" means and refers to NOCO's Amazon account that NOCO uses to facilitate, create, or otherwise advertise NOCO Products on the Amazon Marketplace.

17.     "Amazon XWiki" means and refers to Amazon's XWiki platform where Amazon's employees, representatives, agents, contractors, and affiliates post information and create and develop content as a collaborative knowledge sharing and documentation platform. "Amazon XWiki" also means and refers to all similar internal collaborative knowledge sharing and documentation platforms Amazon utilized during the Relevant Time Period that may have been held under different names or through different software platforms.

18.     "Your XWiki" means and refers to Aukey, HuiMing, and/or WorldUS's XWiki platform where Defendants' employees, representatives, agents, contractors, and affiliates post information and create and develop content as a collaborative knowledge sharing and documentation platform. "Your XWiki" also means and refers to all similar internal collaborative knowledge sharing and documentation platforms Defendants utilized during

6

the Relevant Time Period that may have been held under different names or through different software platforms.

19.     "Browse Nodes" means and refers to the hierarchy of categories, including, but not limited, to branch and leaf nodes, that are used to organize the Amazon Marketplace's product listings for a given category of products. For example and clarity, but without limitation, NOCO Products are placed into certain Browse Nodes such as those Browse Nodes titled "Automotive Replacement Batteries & Accessories," "Automotive Performance Batteries & Accessories," and "Jump Starters."

20.     The term "Best Seller Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a best-selling product in a Browse Node. For example, below the Best Seller Badge is awarded to a product in the "Automotive Replacement Batteries & Accessories" Browse Node.



21.     The term "Amazon Choice Badge" means and refers to the Amazon Marketplace accolade (pictured below) by which a product receives a notation that it is a product chosen by Amazon with distinction. For example, below the Amazon Choice Badge is awarded to a product for the term "jump starter."



22.     "IP Address" is used in the broadest sense possible to include, without limitation, Ipv4 and Ipv6 addresses of connected devices on the internet of things.

23.     "ASIN" or "ASINs" means and refers to Amazon's standard identification number which is a ten-digit alphanumeric code that Amazon uses to identify products sold or listed for sale on the Amazon Marketplace.

24.     As used herein, "The Takedown" means and refers to the action taken by or on behalf of Amazon to delist, remove, or otherwise prohibit any one or more of Defendants from selling on the Amazon Marketplace. For clarity, The Takedown is detailed in the following articles:

- *Amazon Fake Reviews Scam Exposed in Data Breach*, SAFETYDETECTIVES, May 6, 2021, https://www.safetydetectives.com/blog/amazon-reviews-leak-report/.

- Imad Khan, *Aukey Kicked Off Amazon Following Fake Reviews Allegations [Update]*, TOM'S GUIDE, May 11, 2021, https://www.tomsguide.com/news/aukey-kicked-off-amazon-following-fake-reviews-allegations.

- *Amazon Suspends Amazon-Native Brands Mpow and Aukey*, MARKETPLACE PULSE, May 11, 2021, https://www.marketplacepulse.com/articles/amazon-suspends-amazon-native-brands-mpow-and-aukey.

25.     As used herein, "Data Breach" means and refers to the specific release, finding, or uncovering of data on an ElasticSearch database on or around March 1, 2020, that precipitated or otherwise preceded The Takedown and may have revealed Communications and Documents related to or concerning inauthentic and/or false reviews of products on the

Amazon Marketplace as well as violations of Amazon's policies pertaining to the Amazon Marketplace.

26.     The terms "investigation," "audit," "inspection," "examination," or "inquiry" mean and refer to, in addition to their customary and usual meaning, any steps, processes, procedures, or actions taken by or on behalf of Amazon in response to, with regard, or concerning the Browse Nodes, The Takedown, and/or the Data Breach.

27.     "Seller Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that assist or otherwise support sellers on the Amazon Marketplace, such as NOCO.

28.     "Abuse Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that research, investigate, audit, or otherwise examine reports, claims, or statements of manipulation, violation, or exploitation of or on the Amazon Marketplace and Your policies.

29.     "Automotive Team" means and refers to a group, collective, or team, whether formal or informal, that includes, without limitation, Amazon's employees, representatives, contractors, or agents that assist or otherwise support the "Automotive" category of products, including NOCO Products and Tacklife Products, sold or offered for sale on the Amazon Marketplace.

4886-5523-5380, v. 3

30.     "Communication" shall have the broadest definition and scope possible under federal law and includes every manner of means of disclosure, transfer, exchange of information, fact, idea, or inquiry, whether orally or written, whether face-to-face or electronically, or by telephone, telecopies, mail, email, facsimile, personal delivery, overnight delivery, electronic messages, including, but not limited to, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom, or otherwise, including all transfer of information on, across, or through the Amazon XWiki or Your XWiki or similar collaborative knowledge sharing or documentation platforms. All such Communications in writing shall include, without limitation, printed, typed, handwritten, or other human or machine-readable Documents.

31.     The term "Document" or "Documents" includes Electronically Stored Information and Communications and is used in the broadest possible sense and means and refers to, without limitation, all materials discoverable under the applicable Federal Rules of Civil Procedure that are within Your possession, custody, or control, or that of any agent, representative (including, without limitation, attorneys), or other person acting or purporting to act for or on Your behalf or in concert with You. Without limiting the forgoing definition, Documents and Electronically Stored Information include Writings,[1] and Recordings,[2] and

---

[1] The term "Writings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(a).

[2] The term "Recordings" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(b).

4886-5523-5380, v. 3

Photographs.[3] Examples of these include: drawings; graphs; charts; correspondence; letters; memoranda; facsimiles; records; medical records; summaries of personal conversations or interviews; wires; telegrams; reports; books; transcripts; legal pleadings and papers; summaries or records of telephone conversations (including telephone and mobile telephone billing records); diaries; journals; forecasts; statistical statements; work papers; accounts; account records; bank statements; receipts; automated teller machine receipts or printouts; credit card statements or records; analytical records; agendas, minutes or records of meetings or conferences; consultants' reports; employment records; appraisals; agreements; reports or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; notes; lists; notices; advertising; changelogs; log data; audit trails; audit or investigation summaries; any form of data compilation from which information can be obtained, including for illustrative purposes, but not limited to, all electronic data (including all electronic mail and information about electronic mail, including message contents, header information, and logs of electronic mail system usage, whether sent internally or externally); voice mails; text messages; electronic messages through software, including without limitation, WhatsApp, Microsoft Teams, Slack, Skype, iMessages, and Zoom; on-line data storage on mainframes, minicomputers, personal computers, and laptops; off-line data storage, backups, and archives; floppy disks; zip drives; zip files; tapes; compact disks or diskettes; hand-held devices or personal digital assistants; disconnected hard drives and other removable

---

[3] The term "Photographs" is given the same meaning as the definition contained in Federal Rule of Evidence 1001(c).

electronic media; application programs and utilities; and all sound reproductions, however produced or reproduced.

32.     The term "Electronically Stored Information" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained that are in Your possession, custody, or control.

33.     As used herein, "person" means any natural person, or any legal, foreign, or judicial entity, including but not limited to any corporation, limited liability company, business trust, estate, trust, partnership, proprietorship, association, foundation, organization, joint venture, governmental entities, group of persons, or any other entity or form of organization, foreign or domestic.

34.     The term "identify" with respect to any person, business organization, corporation, or other legal entity, means to state with particularity and include (in addition to any other information specifically requested) its full name, present or last known address, present or last known place of business, its principal place of business, and telephone number(s), and email address(es).

35.     The term "identify" with respect to any Document means to state and/or describe: 1) the date of the Document and the type of the Document (e.g., letter, memorandum, telegram, chart, photograph, sound reproduction, etc.); 2) the person(s) who prepared the Document; 3) the person(s) who signed the Document; 4) the

4886-5523-5380, v. 3

person(s) to whom the Document was sent or delivered; 5) the present location and custodian of the Document; and 6) the contents of the Document.

36.     The term "identify" with respect to any act, occurrence, thing, or event, means to describe, with particularity, everyone involved in the act, occurrence, thing, or event, everything that was done with respect to the act, occurrence, thing, or event, and the date or approximate time period when the act, occurrence, thing, or event occurred.

37.     The terms "and" and "or" shall be construed disjunctively or conjunctively to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

38.     The term "any" shall be construed to include "all" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

39.     The term "each" shall be construed to include "every" and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

40.     Where the context makes it appropriate, the present tense must be construed to include the past tense, and the past tense must be construed to include the present tense.

41.     Any word or term in the singular form shall also be construed as plural and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

42.     The masculine form shall also be construed to include the feminine and vice versa to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

43.     The term "concerning," in addition to its usual and customary meaning, shall have the broadest definition and scope possible under the federal law and shall include, without limitation, constituting, comprising, containing, consisting of, displaying, embodying, including, setting forth, proposing, showing, evidencing, disclosing, describing, discussing, explaining, summarizing, concerning, reflecting, regarding, authorizing, relating to, or referring to, directly or indirectly.

44.     The terms "all" and "each" shall be construed as all and each.

45.     The term "including" means "including but not limited to."

46.     "Evidencing," "pertaining," "with respect to," "relating," "relate to," "relate," or "related," in addition to their usual and customary meanings, shall mean alluding to, analyzing, about, commenting upon, comprising, consisting of, constituting, disclosing, discussing, explaining, mentioning, evidencing, pertaining to, referring to, reflecting, responding to, reporting, relating to and/or regarding, setting forth, showing, summarizing, either directly or indirectly, in whole or in part, the given subject matter.

47.     Unless otherwise set forth herein, the Topics of Examination seek information concerning the period of time between January 1, 2019 through the date of the deposition, inclusive of the start and end dates (the "Relevant Time Period"). The Topics of Examination

14

seek information that refers or relates to the Relevant Time Period, regardless of when the information was prepared.

## **TOPICS OF EXAMINATION**

Defendant will designate one or more persons able to testify on its behalf with knowledge concerning the following subjects:

1.      Your corporate history at any time.

2.      Your involvement in the registration of the Tacklife Trademarks.

3.      Your business model, including the design, development, manufacture, purchase, sale, and/or distribution of the Tacklife Products.

4.      Your accounting records, profit, loss, and daily operations with respect to the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

5.      Your advertisement, promotion, and sale of the Tacklife Products on the Amazon Marketplace, including product descriptions, brands, ASINs, and Browse Nodes under which the products are or were sold.

6.      Your business history with Aukey and HuiMing at any time.

7.      Your communications with Aukey and HuiMing regarding the advertisement, promotion, and sale of the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

15

8.      Your communications with Aukey and HuiMing regarding competitors of the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace, including, but not limited to, NOCO.

9.      Your collaboration, engagement, contract with, or work with third parties other than Aukey and HuiMing concerning, relating, or pertaining to the Amazon Marketplace.

10.      Listings of the Tacklife Products in Brows Nodes on the Amazon Marketplace.

11.      Your knowledge of NOCO and NOCO Products, including, but not limited to, advertising, intellectual property, Browse Node listings, and Amazon seller rankings such as the Best Seller Badge and the Amazon Choice Badge.

12.      Your competition with NOCO and its network of authorized distributors and sellers.

13.      Your knowledge of, response to, and/or involvement with the Data Breach.

14.      Your knowledge of, response to, and/or involvement with The Takedown.

15.      Your efforts to sell the Tacklife Products on the Amazon Marketplace following The Takedown.

16.      Your sale of automotive battery chargers, jump starters, and other portable power devices on the Amazon Marketplace under the brand names Hulkman and Fanttik, including product descriptions, brands, ASINs, and Browse Nodes under which the products are sold.

16

17.     Your involvement with or use of third-party sellers other than Aukey and HuiMing to sell automotive battery chargers, jump starters, and other portable power devices on the Amazon Marketplace, including, but not limited to, Fanttik Direct.

18.     Your involvement with "click farms" or other third parties that interact with digital advertisements on the Amazon Marketplace, including, but not limited to, NOCO digital advertisements.

19.     Your involvement with the removal of NOCO products from Browse Nodes.

20.     Your involvement with the creation or issuance of product reviews, product ratings, votes, safety complaints, safety concerns, questions posed, and/or answers to questions posed on the Amazon Marketplace with respect to automotive battery chargers, jump starters, and other portable power devices, including, but not limited to, Tacklife Products, NOCO, and/or NOCO Products.

21.     Your efforts to receive the Best Seller Badge and/or the Amazon Choice Badge for the Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

22.     IP Addresses used by You relating to the sale of Tacklife Products and/or any other automotive battery charger, automotive jump starter, or automotive portable power device sold or currently being sold by Defendants on the Amazon Marketplace.

23.     Investigations, audits, inspections, examinations, or inquires conducted by You regarding the Data Breach or the Takedown.

24.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the Data Breach.

25.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding The Takedown.

26.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the removal of NOCO Products from Browse Nodes.

27.     Your communications with Amazon, including, but not limited to, its  Seller Team, Abuse Team, and/or Automotive Team, regarding the creation or publication of false or misleading product reviews, product ratings, votes, safety complaints, safety concerns, questions posed, and/or answers to questions posed on the Amazon Marketplace with respect to automotive battery chargers, jump starters, and other portable power devices, including, but not limited to, Tacklife Products, NOCO, and/or NOCO Products.

28.     Your communications with Amazon, including, but not limited to, its Seller Team, Abuse Team, and/or Automotive Team, regarding the existence of "click farms" or other third parties that interact with digital advertisements on the Amazon Marketplace, including, but not limited to, NOCO digital advertisements.

29.     Your communications regarding the sale, advertisement, or promotion of Tacklife Products or NOCO Products on the Amazon Marketplace.

4886-5523-5380, v. 3

30.     Your knowledge of any investigation, audit, inspection, examination, or inquiry conducted by Amazon into Your seller activities, profile(s), product(s), advertisement(s), or any other aspect of Your seller page(s) on Amazon.

31.     Your interaction with the Amazon XWiki platform.

32.     Your interaction with NOCO's Vendor Account.

33.      Your interaction with NOCO's Advertisement Account.

34.     The existence of Documents or Electronically Stored Information concerning Your XWiki platform.

35.     Your responses to written discovery requests in this Action.

36.     Your production of Documents or Electronically Stored Information in this Action.

37.     Your interference with NOCO's business relationships.

38.     Your manipulation of the Amazon Marketplace.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was sent to all counsel of record via electronic mail on this 10th day of November 2023.

/s/*Jon J. Pinney*
Jon J. Pinney

*Counsel for Plaintiff The NOCO Company*